IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **SCOTT VINCENT VAN DYKE** | § | Case No. 21-60052 |
| | § | |
| Debtor. | § | Chapter 11 Case |
| | § | |

___

**MOTION OF EVA ENGELHART, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC., LITTLEMILL LIMITED, PROSPERITY SETTLEMENT FUNDING, INC., ANDREA LORE, INDIVIDUALLY AND IN HER CAPACITIES AS CO-EXECUTOR OF THE ESTATE OF ROBERT M. PRESS, DECEASED AND AS CO-TRUSTEE OF THE LORRAINE PRESS SUPPLEMENTAL CARE TRUST AND ANZAR SETTLEMENT FUNDING CORP.
<u>FOR RELIEF FROM STAY</u>**

**NOTICE PURSUANT TO BLR 4001-1(A)(3)**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON JULY 7, 2021 AT 10:00 A.M. IN COURTROOM 403, 4TH FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

___

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Eva Engelhart ("Engelhart"), as Chapter 7 Trustee of the estate of Anglo-Dutch Petroleum International, Inc. ("ADPI"), on the one hand, and Littlemill Limited, Prosperity Settlement Funding, Inc., Andrea Lore, Individually and In Her Capacities As Co-Executor of the Estate of Robert M. Press, Deceased and As Co-Trustee of the Lorraine Press Supplemental Care Trust and Anzar Settlement Funding Corp. ("Investors," and together with Engelhart, the "Movants"), on the other hand, file this Motion for Relief From Stay (the "Motion"). In support of the Motion, Movants show as follows:

## I.
## PRELIMINARY STATEMENT

1. There is no dispute that the automatic stay is in effect and applies to the Swonke Litigation and the Fraudulent Transfer Litigation, defined and described below. With this Motion, Movants request that the Court lift the automatic stay to allow Movants to continue to prosecute the Fraudulent Transfer Litigation and the Swonke Litigation currently pending in federal district court (but administratively closed because of the subject bankruptcy filing). Dispositive motions for summary judgment have been filed and responded to in the Fraudulent Transfer Litigation and Swonke Litigation and are ripe for ruling once the automatic stay is lifted.

## II.
## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the requested relief is 11 U.S.C. § 362(d), Federal Rule of Bankruptcy Procedure 4001(a)(1) & (3), and Local Bankruptcy Rule 4001.

## III.
## THE BANKRUPTCY FILING

4. On May 25, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing this chapter 11 case with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"). Said bankruptcy filing occurred about a month after Debtor placed his company Anglo-Dutch Energy, L.L.C. ("ADE") into bankruptcy in Case No. 21-60036 (also pending in this Court).[1]

5. On May 26, 2021, the Debtor filed a *Suggestion of Bankruptcy* in the Swonke Litigation and the Fraudulent Transfer Litigation cases.

## IV.
## THE SWONKE LITIGATION

6. The "Swonke Litigation" involves competing claims to over $1.3 million (the "Registry Funds") in the registry of the 61st Judicial District Court of Harris County, Texas (the "State Court") and breach of contract and other claims asserted against Engelhart by the Debtor and ADE. The Swonke Litigation is pending in federal district court and is styled "Case No. 4:19-cv-03101; *Engelhart v. Greenberg Peden, P.C.*; in the United States District Court for the Southern District of Texas."[2]

7. In 2004, Investors brought breach of contract claims against Anglo-Dutch Petroleum International, Inc. ("ADPI") and Anglo-Dutch (Tenge), LLC ("ADT") in Texas state courts. Those claims arose out of investment contracts under which Investors invested money in

---

[1] Movants have also filed a motion to lift the automatic stay in the ADE bankruptcy case. A hearing on the motion is set for July 7, 2021 at 10:00 a.m. Movants request that the hearing in the ADE bankruptcy case be consolidated with a hearing on this Motion, as the evidence and argument largely overlap.

[2] All evidentiary support for the facts set forth herein with respect to the Swonke Litigation may be found in the PACER electronic files for the Swonke Litigation at Dkt. No. 35.

3

ADPI and ADT. Debtor—ADPI and ADT's President and majority owner—solicited Investors (and others) to make those investments so ADPI and ADT could stay in business while litigation with Halliburton was ongoing. Those investments enabled ADPI and ADT to stay in business and negotiate a $51 million settlement with Halliburton.

8. The Halliburton settlement triggered ADPI and ADT's obligations to pay the Investors per their contracts. They have refused to do so. That refusal has spawned seventeen years of litigation. During that time, Investors have obtained long-since final judgments and turnover orders against ADPI and ADT. The judgments are unsatisfied. Investors intervened in State Court because—per Debtor—ADPI and ADT are out of business and have no assets available to satisfy those judgments other than any rights they may have to the Registry Funds.

9. The Swonke Litigation was commenced in State Court when ADPI and ADT sued their lawyer Gerard Swonke ("Swonke") in a fee dispute. Swonke counterclaimed. In 2007, the State Court rendered judgment in favor of Swonke awarding him almost $2,000,000.

10. ADPI and ADT sought to appeal without posting a supersedeas bond. They filed affidavits swearing they had negative net worth. An evidentiary hearing was held. The State Court struck the affidavits, finding them "unreliable and not credible." The State Court also found ADPI, ADE and Debtor were alter egos, and that ADPI fraudulently transferred almost $20,000,000 to ADE and Debtor "with the actual intent to hinder, delay, or defraud."

11. Ultimately, ADPI and ADT deposited almost $2 million into the State Court registry to supersede Swonke's judgment. Debtor and ADE signed insider (and ultimately unenforceable) "loan agreements" with ADPI under which they purportedly loaned those funds to ADPI for deposit into the State Court registry.

4

12. The Texas Supreme Court reversed Swonke's original judgment and remanded the case for trial. Investors intervened after remand. They filed motions arguing that the supersedeas deposits were ripe for disbursement to satisfy their judgments because the judgment they secured was reversed. The Honorable Al Bennett—then-presiding judge of the State Court—instructed Investors to obtain turnover orders from the courts in which they obtained their judgments:

> Why didn't you go back to the original court where you have the judgment, alert them that these funds were in the registry of the court, and say, "Okay. We've located some funds that should be subject to turnover. We want them. We want you to issue an order that when they come back into the possession of the judgment debtor, that they be turned over to us or we get them?"
>
> \*   \*   \*
>
> And then, secondly, if you are, in fact, a judgment creditor with an outstanding judgment entitled to funds that are going to go back into the hands of the judgment debtor, and you are standing in my courthouse door with an order from another court saying, "Give me these funds," so be it. You'll have them.

13. Investors did what Judge Bennett asked them to do. They obtained turnover orders (the "Turnover Orders") providing that "all Registry Funds (i) ordered released or disbursed to ADPI or ADT, (ii) available for release or disbursement to ADPI or ADT or (iii) otherwise released or disbursed to ADPI or ADT shall be 'turned over' or paid" to reduce or secure Investors' judgments. The Turnover Orders are final on appeal, compliant with Texas law and fully enforceable.

14. The State Court rendered a new judgment disposing of the remanded case. The second judgment awarded Swonke less than the first judgment. After all appeals were final, the State Court released $836,004.20 from the supersedeas deposit to pay Swonke's new judgment. That left $1,268,584.03 in the registry. This "excess," which now exceeds $1,300,000.00 because of interest, comprises the funds at issue here (the "Registry Funds").

15. Debtor and ADE also intervened in the State Court case, asserting competing claims to the Registry Funds. Investors, Debtor and ADE agreed to file, and did file, competing motions seeking disbursement of the Registry Funds in State Court. The Honorable Fredericka Phillips granted Investors' motion for turnover and denied Debtor and ADE's motions. Judge Phillips signed a turnover order ordering the Harris County District Clerk to "immediately pay" all Registry Funds to Investors ("Judge Phillips's Turnover Order").

16. Debtor and ADE mounted a multi-pronged attack on Judge Phillips's Turnover Order. First, they asked the Texas district, appellate and supreme courts to freeze the Registry Funds while their "merits" appeal was pending. Those requests for such a freeze ultimately were rejected.

17. Second, on the next business day after the Texas Supreme Court lifted its temporary stay order, ADPI—a party not seeking release of any Registry Funds—filed for bankruptcy. That filing triggered an automatic stay precluding Investors from withdrawing the Registry Funds.

18. Third, Debtor and ADE pursued a "merits" appeal of Judge Phillips's Turnover Order. They argued their due process rights were violated because Texas law does not allow competing claims to registry funds "to be decided in a 30-minute, non-evidentiary hearing rather than a trial." In a nutshell, Debtor and ADE (1) agreed to a procedure to resolve the competing claims to the Registry Funds; (2) filed motions seeking disbursement of those funds to themselves; (3) received adverse rulings; and (4) then claimed that the agreed-to procedure was unfair. The Fourteenth Court of Appeals agreed, reversed Judge Phillips's Turnover Order and remanded the case to the trial court on procedural grounds only and without reaching the merits of the claims:

> Because the trial court lacked authority to adjudicate the competing ownership claims to the funds remaining in the court registry in a turnover proceeding, the trial court abused its discretion in ordering the turnover of those finds in the absence of separate, initial proceedings to adjudicate the claims of the parties and the

6

intervening non-judgment debtors. Accordingly, **we do not reach the merits of Van Dyke and ADE's issues**.

*Van Dyke v. Littlemill Ltd.*, 579 S.W.3d 639, 651 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (internal citation omitted). Importantly, Debtor and ADE did not assert competing ownership claims to the Registry Funds when Investors obtained their turnover orders in 2012.

19. After ADPI filed for bankruptcy, Engelhart was named Chapter 7 Trustee for ADPI's bankruptcy estate. Engelhart and Investors entered into a Settlement Agreement—approved by the Bankruptcy Court—under which Engelhart released ADPI's estate's interest, if any, in the Registry Funds for $50,000.00. Thus, ADPI—the depositor of the Registry Funds (exclusive of post-deposit accrued interest)—is not seeking disbursement of those funds.

20. The Swonke Litigation was set for trial on an unspecified date in July 2021.[3] Movants have filed a motion for summary judgment in the Swonke Litigation that is ripe for resolution by the federal district court.[4]

## V.
## THE FRAUDULENT TRANSFER LITIGATION

21. The "Fraudulent Transfer Litigation" is asserted by Plaintiff Eva S. Engelhart, In Her Capacity As Chapter 7 Trustee of the Estate of Debtor Anglo-Dutch Petroleum International, Inc. and Investors under the Texas Uniform Fraudulent Transfer Act set forth at Chapter 24 of the Texas Business and Commerce Code ("TUFTA"). They assert that approximately $19,539,546.23 was fraudulently transferred from ADPI to Debtor and ADE in violation of TUFTA. The Fraudulent Transfer Litigation is pending in federal district court and is styled "Case No. 4:19-cv-

---

[3] *See* the PACER electronic files for the Swonke Litigation at Dkt. No. 33.
[4] *Id.* at Dkt. No. 35.

7

02894; *Engelhart v. Van Dyke*; In the United States District Court for the Southern District of Texas."[5]

22. ADPI and ADT have not had the money to pay Investors' judgments described above because their funds have been fraudulently transferred to Debtor and ADE. Engelhart and Investors have identified three transfers from ADPI to Debtor or ADE totaling approximately $20,000,000 (the "Transfers") that are fraudulent transfers violative of TUFTA as a matter of law. Each Transfer occurred when ADPI forgave large loans from ADPI to Debtor or ADE.

23. First, as of January 1, 2006, ADE had received $14,324,546.23 from ADPI pursuant to a Revolver Loan Agreement dated March 15, 2001, as amended. On January 2, 2006, ADPI signed a document titled "Forgiveness of Debt" providing that "ADPI hereby forgives and fully discharges the $14,324,546.23 in unpaid principal owed by ADE, and ADPI hereby forgives and fully discharges all of the unpaid interest pursuant to the Revolver Loan Agreement. ADE, its successors and assigns, can fully rely that ADPI has forever forgiven and fully discharged this debt." *Id*. ADPI's controller Frances Barber Buchanan testified almost in real time that:

- ADPI had an asset on its books of $14,324,546.23 as of January 1, 2006;

- Such asset was booked as a loan from ADPI to ADE;

- Such loan or debt was "forgiven" on January 2, 2006;

- ADPI received no consideration for the "forgiveness" of that debt or loan;

- ADPI never received any interest payments from ADE on that loan; and

- This loan is no longer an asset on ADPI's books following its "forgiveness."

24. These actions were done at the direction of Debtor.

---

[5] All evidentiary support for the facts set forth herein with respect to the Fraudulent Transfer Litigation may be found in the PACER electronic files for the Fraudulent Transfer Litigation at Dkt. No. 37.

25. Second, between January 6, 2006 and January 24, 2006, ADE had received an additional $1,415,000 from ADPI pursuant to a Revolver Loan Agreement dated March 15, 2001, as amended. On February 16, 2006, ADPI signed a document titled "Forgiveness of Debt" providing that "ADPI hereby forgives and fully discharges the $1,415,000 in unpaid principal owed by ADE, and ADPI hereby forgives and fully discharges all of the unpaid interest pursuant to the Revolver Loan Agreement. ADE, its successors and assigns, can fully rely that ADPI has forever forgiven and fully discharged this debt." ADPI's controller has testified that:

- ADPI had an asset on its books of $1,415,000 as of February 15, 2006;
- Such asset also was booked as a loan from ADPI to ADE;
- Such loan or debt also was "forgiven" on February 16, 2006;
- ADPI received no consideration for the "forgiveness" of that debt or loan; and
- This loan also is no longer an asset on ADPI's books following its "forgiveness."

26. These actions were done at the direction of Debtor.

27. Third, Debtor and ADPI signed a Promissory Note dated February 11, 2005 under which ADPI "loaned" Debtor $3,800,000. These funds apparently were used by Debtor to purchase a home. On September 28, 2006, Debtor and ADPI signed the document titled "Agreement to Forgive Promissory Note" under which ADPI "agreed" to "forgive and fully discharges all unpaid interest and principal owed by [Debtor] pursuant to the Promissory Note immediately upon receipt of" $400,000 from Debtor. On October 25, 2006, Debtor and ADPI signed the "Forgiveness of Promissory Note" providing that in exchange for a $400,000 advance from Debtor, ADPI "hereby forgives and fully discharges all unpaid interest and principal owed by [Debtor] pursuant to the Promissory Note Van Dyke gave [ADPI] on February 11, 2005." ADPI's controller has testified that:

9

- ADPI had an asset on its books a loan in the amount of $3,800,000 before that loan or debt was "forgiven;"

- Such asset was booked as a loan from ADPI to Debtor;

- Such loan or debt was "forgiven" on September 28, 2006;

- ADPI received the $400,000 advance and no other consideration for the "forgiveness" of that debt or loan; and

- This loan also is no longer an asset on ADPI's books following its "forgiveness."

28. These actions also were done at the direction of Debtor.

29. In 2007, the Transfers were scrutinized by a Texas state court in connection with ADPI's efforts to appeal an adverse judgment without posting a supersedeas bond to secure that judgment while on appeal. Following an evidentiary hearing with live testimony, the Texas state court (the Honorable John Donovan presiding) made these (and other) findings:

The evidence during the hearing established, among other things, that the Judgment ADE had three significant transfers.

a. First, ADPI loaned $14,324,546.23 to Anglo-Dutch Energy ("ADE"). At Mr. Van Dyke's direction, this loan was forgiven by ADPI on January 2, 2006. This loan is no longer booked by ADPI as an asset.

b. Second, in January 2006, ADPI loaned ADE $1,415,000. At Mr. Van Dyke's direction this loan was forgiven by ADPI on February 16, 2006. The loan is no longer booked by ADPI as an asset.

c. Third, in February 2005, ADPI loaned Mr. Van Dyke $3,800,000 to purchase his house. This loan was forgiven by ADPI in exchange for Mr. Van Dyke advancing $400,000 to ADPI. This loan is no longer booked by ADPI as an asset.

\* \* \*

The transfers made from ADPI to ADE were fraudulent transfers.

a. The transfer of $14,324,546.23 from ADPI to ADE which was booked as a loan on the books of ADPI and then subsequently forgiven by ADPI on January 2, 2006, at the direction of Mr. Van Dyke, was made with the actual

10

        intent to hinder, delay, or defraud Mr. Swonke who is a creditor of the debtor.

b.     The transfer of $1,415,000 from January 6, 2006 to January 24, 2006, by ADPI to ADE, at Mr. Van Dyke's direction, was a transfer made with the actual intent to hinder, delay, or defraud Mr. Swonke who is a creditor of the debtor.

c.     The transfer by ADPI to Mr. Van Dyke of $3,800,000 on February 11, 2005 to purchase his house which was subsequently forgiven by ADPI on September 28, 2006, in exchange for Mr. Van Dyke advancing $400,000 to ADPI, is a transfer made with the actual intent to hinder, delay, or defraud Mr. Swonke who is a creditor of the debtor.

30.     During that hearing, Judge Donovan contemplated entering an injunction against ADPI but recognized the futility of doing so because "they've already completely drained [ADPI] of every possible penny they have."

31.     Judge Donovan's 2007 findings are not the only time that a Texas state court judge has found that Debtor and his companies engaged in fraudulent activities. In 2012, three Investors tried their breach of contract/fraudulent inducement claims against ADPI and ADT in a bench trial before the Honorable R.K. Sandill. Judge Sandill concluded:

- ADPI and ADT fraudulently induced Mr. Press, Prosperity and Anzar to each sign a Settlement & Release of Claims Investment Agreement . . . because (a) they made material misrepresentations to each of them, (b) they made such misrepresentations with knowledge of their falsity or made them recklessly without any knowledge of their truth and as a positive assertion, (c) they made such misrepresentations with the intent that they be acted upon by each Plaintiff . . . .

- ADPI and ADT also fraudulently induced Mr. Press, Prosperity and Anzar to each sign a Settlement & Release of Claims Investment Agreement . . . because (a) they failed to disclose material facts within the knowledge of ADPI and ADT to each Plaintiff, (b) they knew that each Plaintiff was ignorant of the undisclosed facts and did not have an equal opportunity to discover the truth, (c) they intended to induce each Plaintiff to take some action by failing to disclose material facts . . . .

32.     Judge Sandill later explained his conclusions, stating "[Debtor] found a way that he could make some money and screw his investors and that's what he did . . . this is a big fraud."

33. The Fraudulent Transfer Litigation is set for trial on an unspecified date in July 2021.[6] Movants have filed a motion for summary judgment in the Fraudulent Transfer Litigation that is ripe for resolution by the federal district court.[7]

## VI.
## ARGUMENT AND AUTHORITIES

**A.    Applicable Standard.**

34.    Sections 362(d)(1) and (2) of the Bankruptcy Code provide:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]

(2)    with respect to a stay of an act against property under subsection (a) of this section, if—

   (A)    the debtor does not have an equity in such property; and

   (B)    such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1) and (2).

35.    When relief from the automatic stay is sought, the party seeking relief has the initial burden to demonstrate cause for relief. *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001) (quoting *In re Bruce*, No. 00-14521DWS, 2000 WL 968777, at *3 (Bankr. E.D. Pa. July 10, 2000)).

36.    Because the Bankruptcy Code does not define "cause" for purposes of determining the circumstances under which it is appropriate to lift the automatic stay, courts have reasoned that whether to lift the automatic stay is within the discretion of the bankruptcy judge and requires a case-by-case determination. *In re Mirant Corp.*, 440 F.3d 238 (5th Cir. 2006); *In re Reitnauer*, 152

---

[6]    *See* the PACER electronic files for the Fraudulent Transfer Litigation at Dkt. No. 33.
[7]    *Id.* at Dkt. No. 35.

F.3d 341, 343 n.4 (5th Cir. 1998); *see also In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734 (6th Cir. 1994); *In re Robbins*, 964 F.2d 342 (4th Cir. 1992); *IBM v. Fernstrom Storage & Van Co.* (*In re Fernstrom Storage & Van Co.*), 938 F. 2d 731, 735 (7th Cir. 1991) (citations omitted); *In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990). "Cause" is an intentionally broad and flexible concept that permits bankruptcy courts, as courts of equity, to respond to inherently fact-sensitive situations. *In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995); *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988).

### B. Cause Exists to Lift the Stay as Requested by Movants.

37. The Fraudulent Transfer Litigation and the Swonke Litigation implicate property of the estate and claims against the estate. Movants seek relief from the automatic stay to continue the Fraudulent Transfer Litigation and the Swonke Litigation in District Court, particularly given the quickly-approaching trial date. Lifting the stay for this purpose will allow the District Court to determine the claims and causes of action in the Fraudulent Transfer Litigation and the Swonke Litigation and to enter judgment on those claims.

38. Further, resolution of the issues in the Fraudulent Transfer Litigation and Swonke Litigation will not impact administration of the estate, but rather will help expedite the liquidation of large claims against the estate, which is in the best interest of all affected parties. Moreover, Debtor has demanded a jury trial in the Fraudulent Transfer Litigation and the Swonke Litigation, which was the basis for ADE's and Debtor's request in the adversary proceedings that the reference be withdrawn to the District Court. *See, e.g.*, *Anglo-Dutch Energy, L.L.C.'s and Scott Van Dyke's Motion to Withdraw the Reference for Adversary Number 19-03547* (Case No. 19-03547, Dkt. No. 5) ("[T]he claims of the removing parties against movants Anglo-Dutch Energy, LLC and Scott Van Dyke cannot be heard by the Bankruptcy Court at trial because movants Anglo-Dutch Energy,

13

LLC and Scott Van Dyke have a constitutional right to a jury trial and do not consent to a jury trial being conducted by the Bankruptcy Court."). The Debtor should not be permitted to use the bankruptcy process to now escape trial in a court expressly requested by the Debtor.

39. Movants likely will prevail in the Fraudulent Transfer Litigation, and Investors and Engelhart likely will prevail on the merits of the Swonke Litigation, including the Disbursement Claims and Debtor and ADE's claims against the estate. "[E]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (Bankr. D. Del. 1993). The Texas district court resolved the Disbursement Claims in the Investors' favor on the merits by signing the Disbursement Order, which was reversed and remanded on procedural grounds only. The same Texas district court also found that ADPI fraudulently transferred approximately $20 million to Debtor and ADE.

40. This Court has much more than the requisite cause necessary to lift the automatic stay. This Court should grant this Motion and lift the stay in its entirety on the Fraudulent Transfer Litigation and the Swonke Litigation to allow those actions to be resolved in the district court.

## VII.
## WAIVER OF 14-DAY DAY STAY UNDER RULE 4001(a)(3)

41. Movants respectfully request waiver of the 14-day stay provided under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. Waiver of the 14-day stay would not prejudice the chapter 11 estate; rather expedited resolution of the Swonke Litigation and the Fraudulent Transfer Litigation is in the best interest of all affected parties.

## VIII.
## CONCLUSION

WHEREFORE, for the reasons set forth herein, Engelhart and Investors respectfully request the Court (i) grant the Motion; (ii) lift the automatic stay to allow Movants to continue prosecuting in the district court their claims and defenses in the Fraudulent Transfer Litigation and the Swonke Litigation to this Court; and (iii) further grant Movants any other relief, at law or in equity, to which they may be entitled.

Dated: June 16, 2021.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　HAGANS MONTGOMERY HAGANS

　　　　　　　　　　　　　　　　　*/s/ William Fred Hagans*
　　　　　　　　　　　　　　　　　William Fred Hagans
　　　　　　　　　　　　　　　　　Texas State Bar No. 08685500
　　　　　　　　　　　　　　　　　fhagans@hagans.law
　　　　　　　　　　　　　　　　　Carl D. Kulhanek, Jr.
　　　　　　　　　　　　　　　　　Texas State Bar No. 11761850
　　　　　　　　　　　　　　　　　ckulhanek@hagans.law
　　　　　　　　　　　　　　　　　3200 Travis, Fourth Floor
　　　　　　　　　　　　　　　　　Houston, Texas 77006
　　　　　　　　　　　　　　　　　Telephone: 713-222-2700
　　　　　　　　　　　　　　　　　Facsimile: 713-547-4950

　　　　　　　　　　　　　　　　　- and –

　　　　　　　　　　　　　　　　　NORTON ROSE FULBRIGHT US LLP

　　　　　　　　　　　　　　　　　William R. Greendyke (SBT 08390450)
　　　　　　　　　　　　　　　　　Julie Goodrich Harrison (SBT 20492434)
　　　　　　　　　　　　　　　　　1301 McKinney Street, Suite 5100
　　　　　　　　　　　　　　　　　Houston, Texas 77010-3095
　　　　　　　　　　　　　　　　　Telephone: (713) 651-5151
　　　　　　　　　　　　　　　　　Facsimile: (713) 651-5246
　　　　　　　　　　　　　　　　　william.greendyke@nortonrosefulbright.com
　　　　　　　　　　　　　　　　　julie.harrison@nortonrosefulbright.com

　　　　　　　　　　　　　　　　　ATTORNEYS FOR EVA S. ENGELHART,
　　　　　　　　　　　　　　　　　CHAPTER 7 TRUSTEE, LITTLEMILL LIMITED,
　　　　　　　　　　　　　　　　　PROSPERITY SETTLEMENT FUNDING INC.,
　　　　　　　　　　　　　　　　　ANDREA LORE, INDIVIDUALLY AND IN HER

CAPACITIES AS CO-EXECUTOR OF THE ESTATE OF ROBERT M. PRESS, DECEASED AND AS CO-TRUSTEE OF THE LORRAINE PRESS SUPPLEMENTAL CARE TRUST AND ANZAR SETTLEMENT FUNDING CORP.

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 16, I attempted to confer with counsel to the Debtor regarding the relief requested in this Motion, but was unable to do so by the time of filing. Continued efforts to confer will be made following the filing of this Motion.

*/s/ William R. Greendyke*
William R. Greendyke

## CERTIFICATE OF ACCURACY

I hereby certify that the facts and circumstances described in the above pleading giving rise to the request for emergency relief are true and correct to the best of my knowledge, information, and belief.

*/s/ William Fred Hagans*
William Fred Hagans

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, a true and correct copy of the foregoing Motion was served upon the counsel and parties of record electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service and on those parties listed below:

| | |
|---|---|
| c/o Scott Van Dyke<br>1515 South Boulevard<br>Houston, TX 77006 | JWilliams@HenkeLawFirm.com<br>Timothy L. Wentworth<br>OKIN ADAMS LLP<br>1113 Vine St., Suite 240 |
| Anglo-Dutch Energy, LLC<br>c/o Scott Van Dyke<br>P.O. Box 22322<br>Houston, TX 77227 | Houston, Texas 77002<br>twentworth@okinadams.com<br><br>Melissa A. Haselden<br>Haselden Farrow PLLC |
| Jett Williams III<br>HENKE, WILLIAMS & BOLL, LLP<br>2929 Allen Parkway, Suite 3900<br>Houston, Texas 77019 | Pennzoil Place<br>700 Milam, Suite 1300<br>Houston, TX 77002 |

Wayne Kitchens
HUGHESWATTERSASKANASE,LLP
1201 Louisiana, 28th Floor
Houston, Texas 77002
wkitchens@hwa.com

Susan Tran Adams
Brendon Singh
TRAN SINGH, LLP
2502 LaBranch St.
Houston, Texas 77004
stran@ts-llp.com
bsingh@ts-llp.com

Jayson B. Ruff
Ha Minh Nguyen
Office of the United States Trustee
515 Rusk St. Ste. 3516

Houston, TX 77002
jayson.b.ruff@usdoj.gov
ha.nguyen@usdoj.gov

David S. Elder
E-mail: dselder@foley.com
Michael Seely
E-mail: mseely@foley.com
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002-2099

Travis C. Badger
Badger Law PLLC
3400 Avenue H, Second Floor
Rosenberg, Texas 77471
bkcy@badgerlawoffice.com


*/s/ Julie Harrison*
Julie Harrison