IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| SCOTT VINCENT VAN DYKE, § | CASE NO. 21-60052 | |
| § | | |
| Debtor § | | |
| § | | |
| § | | |
| MICHAEL L. NOEL and wife SUE NOEL, § | | |
| § | | |
| Plaintiffs § | ADVERSARY PROCEEDING | |
| VS. § | | |
| § | | |
| SCOTT VINCENT VAN DYKE, § | NO. _____ | |
| § | | |
| Defendant § | | |

## COMPLAINT TO DETERMINE
## DISCHARGEABILITY OF DEBT

**Michael L. Noel** and **Sue Noel** (collectively referred to as "Dr. Noel" or the "Plaintiffs") file this *Complaint to Determine Dischargeability of Debt* complaining of **Scott Vincent Van Dyke** ("Van Dyke" or the "Defendant"), and would respectfully show the Court the following:

1.  Plaintiffs are individuals residing in Harris County, Texas.

    Defendant Van Dyke is an individual residing at 1515 South Boulevard, Houston, Texas 77006, where he may be served.

2.  Jurisdiction. The Bankruptcy Court has jurisdiction over this matter pursuant to 11 U.S.C. 523, 28 U.S.C. §§157 and 1334, and FED. R. BANKR. P. 4007 and

-1-

7001(6). This matter is a core proceeding as to which the Court may enter final judgment under 28 U.S.C. §157(b)(2)(I) and (O).

3. <u>Summary</u>. Dr. Noel is a medical doctor who, along with his wife Sue, is deeply religious and philanthropic. Using Christianity as a guise, Van Dyke bilked Dr. Noel and his wife out of more than $2 million. After meeting Dr. Noel in 2010, Van Dyke learned that Dr. Noel and his wife were looking for investment vehicles so that they could continue donating to Christian-based endeavors in their retirement. Van Dyke represented to Dr. Noel and his wife that (i) he was a successful oil and gas businessman, and (ii) the companies that he owned – including Anglo-Dutch Energy, LLC – were quite profitable. Dr. Noel and his wife relied on those representations, but they were materially false. More importantly, Van Dyke failed to disclose material information, including the facts that (i) he had fraudulently transferred of millions of dollars out of the reach of creditors, and (ii) he was being sued by other investors who had never received the amounts to which they were entitled. During 2011–2014, Van Dyke induced Dr. Noel and his wife to make a number of "loans" or "investments" that Van Dyke personally guaranteed. In particular, Van Dyke promised in writing that, in the event that Dr. Noel ever decided that he no longer wished to continue their business relationship, he would "make him whole." Though Van Dyke continued to provide Dr. Noel with written and oral assurances for years, Dr. Noel and his wife have been paid only a small fraction of what Van Dyke had promised. When Dr. Noel finally made demand on Van Dyke to make him whole, the payments stopped altogether. Dr. Noel has obtained a final

judgment against Van Dyke in a state court lawsuit for much of the amount owed, but has recovered nothing on it.

    4.    <u>Transaction History</u>.  The debts owed by Van Dyke to Dr. Noel and his wife were evidenced by a number of documents, specifically including the following:

    a)    <u>$250,000 Term Note</u>.  A $250,000 Term Note and Credit Agreement, dated February 1, 2011, was signed by Anglo-Dutch (Everest) LLC.  This debt was personally guaranteed by Van Dyke and acknowledged by a Statement of Account dated December 31, 2016, prepared by Van Dyke.

    b)    <u>$500,000 Term Note</u>.  A $500,000 Term Note, dated February 1, 2011, was signed by Anglo-Dutch (Everest), LLC. This debt is evidenced by the Personal Guaranty & Undertaking signed by Van Dyke on December 14, 2011, and a Statement of Account dated December 31, 2016, prepared by Van Dyke.

    c)    <u>IWW Participation Agreement</u>.  Anglo-Dutch signed a $350,000 Iowa, Woodlawn & Welsh Participation Agreement (the "IWW Participation Agreement") and accompanying letter agreement dated July 25, 2011 (amended on July 20, 2015), in favor of Sue O. Noel, and personally guaranteed by Van Dyke (the "IWW Letter Agreement").

    d)    <u>Upper Gulf Coast Participation Agreements</u>.  Anglo-Dutch signed Participation Agreements totaling $1,000,000 (collectively referred to as the "Upper Gulf Coast Participation Agreements"), together with accompanying letter agreements in the following amounts, in favor of Dr. Noel and his wife, and personally guaranteed by Van Dyke:

    i.    Upper Gulf Coast - $653,000 Letter Agreement originally dated July 3, 2012, amended on July 24, 2016 and again on December 31, 2016;

    ii.    Upper Gulf Coast - $35,000 Letter Agreement originally dated July 3, 2012, amended on July 24, 2016 and again on December 31, 2016;

      iii. Upper Gulf Coast - $62,000 Letter Agreement originally dated July 3, 2012, amended on July 24, 2016 and again on December 31, 2016; and

      iv. Upper Gulf Coast - $250,000 Letter Agreement originally dated August 4, 2012, amended on July 24, 2016 and again on December 31, 2016.

    e)   Van Dyke effectively guaranteed all of the foregoing obligations – in particular, by personally promising to make Dr. Noel and his wife whole if they later wanted their money back. Van Dyke's personal guaranties were reaffirmed by him, both orally and in writing, on several occasions.

After advancing these funds, Dr. Noel and his wife only received a small fraction of the amounts they were owed. In 2018, Dr. Noel finally made demand on Van Dyke to make him whole; in response, the payments stopped altogether. In a final attempt to recover the money owed to him, Dr. Noel filed suit against Van Dyke and two of his companies in Cause No. 2018-34037, filed in the 127th District Court of Harris County, Texas (the "State Court Lawsuit"), styled *Michael Noel et al. v. Scott Van Dyke, et al*. All supporting pleadings, exhibits, attachments, evidence, and other documents filed (and actions taken) in State Court Lawsuit are incorporated herein by reference.

    5.   Dr. Noel's claims evidenced by the IWW Participation Agreement and the Upper Gulf Coast Participation Agreements were reduced to an *Amended Agreed Final Judgment,* rendered in the State Court Lawsuit on May 13, 2020, a copy of which is attached hereto as Exhibit 1. This *Amended Agreed Final Judgment* is final and non-appealable. As of the date of Van Dyke's bankruptcy filing, the amounts owed on this *Amended Agreed Final Judgment* are calculated as follows:

| Actual Damages: | $1,100,000.00 |
|---|---:|
| Attorneys' Fees | 48,458.16 |
| Prejudgment Interest | 136,701.36 |
| Post-Judgment Interest (to 5/25/2021) | 222,722.47 |
| **Total Owed on Agreed Final Judgment** | **$1,507,881.99** |

6.  Dr. Noel's claim evidenced by the $500,000 Term Note was then evidenced by an *Order Granting Partial Summary Judgment* signed in the State Court Lawsuit on February 14, 2021, a copy of which is attached hereto as Exhibit 2. In accordance with this *Partial Summary Judgment*, the sole remaining issues to be resolved are (i) the dollar amount of attorneys' fees owed by Van Dyke, and (ii) whether the statute of limitations might bar any of the causes of action asserted. As of the date of Van Dyke's bankruptcy filing, the amounts owed on this *Order Granting Partial Summary Judgment* are calculated as follows:

| Actual Damages: | $900,992.08 |
|---|---:|
| Attorneys' Fees | *To be determined* |
| Accountant Fees | 3,225.00 |
| Interest (to 5/25/2021) | 44,214.06 |
| **Total Owed on Partial Summary Judgment** | **$948,431.14** |

7.  The remainder of the amount owed is based on Van Dyke's personal guarantee of the $250,000 Term Note. This guarantee was later acknowledged by Van Dyke in writing. Copies of this $250,000 Term Note, along with some of Van Dyke's acknowledgments of his personal liability, are attached hereto as Exhibit 3. As of the date of this bankruptcy, the unpaid balance of his guarantee of $250,000 Term Note was $353,697.98. As of the date of Van Dyke's bankruptcy filing, the total amount owed on

the *Agreed Final Judgment*, the *Partial Summary Judgment*, and his guarantee of the $250,000 note was $2,810,011.11.

8. <u>Basis for Non-Dischargeability of Debts</u>.  For years, Van Dyke has owned and controlled a number of companies, including several companies that include the name "Anglo-Dutch."  Van Dyke represented to Dr. Noel and his wife that (i) he was a successful oil and gas businessman, and (ii) the companies that he owned – including Anglo-Dutch Energy, LLC – were profitable.  Van Dyke continued to make these same representations for years.  Dr. Noel and his wife reasonably relied on those representations, but they were materially false.  In the very first transaction in which Dr. Noel and his wife advanced money to Anglo-Dutch (Everest) LLC – a company owned and controlled by Van Dyke – the Credit Agreement contained this representation:

> "**Section 4.12** *No Material Misstatements*.  No information, exhibit or report … with respect to the Mortgaged Properties that has been furnished to Noel in connection with the negotiation of the Agreement contained any untrue statement of any material fact or fails or omits to state a material fact necessary to make the statement contained herein or therein not misleading … .  There is no fact known to [Anglo-Dutch (Everest) LLC] or [Anglo-Dutch Energy LLC] that [Anglo-Dutch (Everest) LLC] or [Anglo-Dutch Energy LLC] foresee will have a Material Adverse Effect on the operations, the Mortgaged Property, assets or condition (financial or otherwise) of Anglo-Dutch that have not been disclosed herein or in such other documents, certificates and written statements furnished to Noel … ."

Contrary to this representation (and others), much of what Van Dyke told Dr. Noel and his wife proved to be false.  The documents provided by Van Dyke to Dr. Noel presented a misleading picture of both Van Dyke himself and the companies that he owned and controlled.  Van Dyke knew that these representations were false, and he intended that Dr. Noel and his wife would rely on them.  Dr. Noel and his wife did, in fact, rely on Van

Dyke's representations, and they suffered damages as a direct result thereof.

9. In addition, Van Dyke deliberately failed to disclose material information to Dr. Noel and his wife, especially the facts that (i) Van Dyke had fraudulently transferred of millions of dollars out of the reach of creditors, and (ii) Van Dyke had been sued – successfully – by other investors who had never received the amounts to which they were promised. In particular, Van Dyke's prior misrepresentations (and his material omissions of fact) have been documented in the findings, orders, and transcripts of the following lawsuits:

- In Cause No. 2004-20712, styled *Anglo-Dutch Petroleum International, Inc., et al. v. Greenberg Peden, et al.*, in the 61st District Court of Harris County, Texas, Judge John Donovan issued findings on October 29, 2007 establishing that, in 2006, Anglo-Dutch Petroleum International, Inc. had made three transfers of funds totaling more than $19 million "at the direction of [Scott] Van Dyke … with the actual intent to hinder, delay, or defraud" the creditors of Anglo-Dutch Petroleum International, Inc.

- In Cause No. 2004-23845, styled *Case Funding Network, LP, et al. v. Anglo-Dutch Petroleum International, Inc.*, in the 127th District Court of Harris County, Texas, Judge R. K. Sandhill issued these "Findings of Fact and Conclusions of Law," among many others, on April 25, 2012:

    "Scott Van Dyke (hereinafter "Van Dyke") has been the majority owner of ADPI [Anglo-Dutch Petroleum International, Inc.] and ADT [Anglo-Dutch (Tenge) LLC] since their formation and remains the majority owner of ADPI and ADT today."
    …

    "Van Dyke acted for and on behalf of ADPI [Anglo-Dutch Petroleum International, Inc.] and ADT [Anglo-Dutch (Tenge) LLC] at all times material to this case."
    …

    "ADPI [Anglo-Dutch Petroleum International, Inc.] and ADT [Anglo-Dutch (Tenge) LLC] fraudulently induced Mr. Press, Prosperity and Anzar to each sign a Settlement & Release of Claims Investment Agreement

> agreeing to take less than the amounts due each of them under their respective Claims Investment Agreement(s) because (a) they made material misrepresentations to each of them, (b) they made such misrepresentations with knowledge of their falsity or made them recklessly without knowledge of their truth and as a positive assertion, (c) they made such misrepresentations with the intent that they be acted on by each Plaintiff and (d) such Plaintiff relied on such misrepresentations and thereby suffered injury."
>
> At a subsequent hearing on April 27, 2012, Judge Sandhill stated "This was a way for Mr. Van Dyke to finance a lawsuit and Mr. Van Dyke found a way that he could make some money and screw his investors and that's what he did."

If Dr. Noel and his wife had known that Van Dyke fraudulently transferred millions of dollars and made misrepresentations to investors in his other "Anglo-Dutch" companies, they never would have funded any money to Van Dyke or his companies. Dr. Noel and his wife did not learn of these misrepresentations (and omissions of fact) until years after they had advanced funds to the companies owned and controlled by Van Dyke. Because of Van Dyke's misrepresentations (and omissions of fact), Van Dyke's debts to Dr. Noel and his wife are non-dischargeable in accordance with §§523(a).

10. <u>Request for Relief</u>.  Based upon the forgoing:

- Dr. Noel and his wife are entitled to recover a money judgment against Van Dyke for the principal sum of $2,810,011.11, plus interest and attorneys' fees as allowed by law, and for costs of court; and
- Dr. Noel and his wife are entitled to a determination that their judgment is non-dischargeable pursuant to §§523(a).

Respectfully submitted,

 */s/ Michael Riordan*
Michael Riordan
State Bar No. 24070502
mriodan@foley.com
Mike Seely
State Bar No. 24054148
mseely@foley.com
Jill M. Hale
State Bar No. 24090141
jhale@foley.com
Foley & Lardner LLP
1000 Louisiana, Suite 2000
Houston, Texas  77002-2099
713-276-5500 (*telephone*)
713-276-5555 (*facsimile*)

*ATTORNEYS FOR*
*MICHAEL L. NOEL, PLAINTIFFS*