United States District Court
Southern District of Texas
**ENTERED**
August 27, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re<br><br>ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC.<br><br>Debtor.<br><br>_____<br><br>EVA S. ENGELHART,<br>CHAPTER 7 TRUSTEE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT VAN DYKE, et al.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § | CASE NO. 4:19-CV-2894 |

## ORDER

Pending before the Court is the Bankruptcy Trustee Eva S. Engelhart's Motion for Summary Judgment. (Instrument No. 37).

### I.

#### A.

This case arises from an alleged fraudulent transfer from Debtor Anglo-Dutch Petroleum International, Inc. ("ADPI") and Anglo-Dutch (Tenge), LLC ("ADT"), to Defendants Anglo-Dutch Energy, LLC ("ADE") and Scott Van Dyke in alleged violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). (Instrument No. 37 at 5).

ADPI and ADT are involved in oil and gas production in Kazakhstan. (Instrument No 44 at 6). Scott Van Dyke was the President of ADPI, until its bankruptcy in 2019, and is

**EXHIBIT 1**

currently the Administrative Member of ADT and the President of ADE. (Instrument No. 44 at 6). Scott Van Dyke and his mother, Mary Theresa Van Dyke, (collectively, the "Van Dykes") were the shareholders of ADPI and are members of ADE. *Id.*

### 1.

In 2000, ADPI and ADT sued Ramco Oil & Gas, Ltd., Ramco Energy PLC (collectively, "Ramco") and Halliburton Energy Services, Inc. ("Halliburton") in Texas state court (herein, "Halliburton Lawsuit"). (Instrument No. 44 at 6). ADPI and ADT accepted financing to support its lawsuit against Ramco and Halliburton from 31 individuals and entities. *Id.* These entities included Littlemill Limited ("Littlemill"), Prosperity Settlement Funding, Inc., Robert M. Press, Anzar Settlement Funding Corp., and Forest Hunter Smith (collectively, the "Investors"). Subsequently, Halliburton settled with ADPI and ADT, which triggered their obligations to repay the Investors. *Id.*

Following the settlement with Halliburton, ADPI and ADT renegotiated the repayment amount with several of the investing parties, including Prosperity, Press, and Anzar. (Instrument No. 44 at 7). ADPI tendered payments lower than what was previously renegotiated and Prosperity, Press, and Anzar accepted this lower amount. *Id.* Littlemill did not accept the lower payment. *Id.*

### 2.

In 2004, the Investors brought suits against ADPI and ADT in Texas state courts. *Id.* The parties have engaged in litigation over the course of seventeen years and have obtained final judgments and turnover orders against ADPI and ADT. *Id.* The judgments remain unsatisfied. *Id.*

On May 7, 2004, Prosperity, Press, and Anzar sued ADPI, ADT, and Scott Van Dyke, arguing that they were fraudulently induced to enter into settlement agreements. (Instrument No. 44 at 7-8). In 2012, Press, Prosperity, and Anzar tried their breach of contract and fraudulent

2

inducement claims against ADPI and ADT in a state court bench trial. *See* (Instrument No. 37-4). The state court held that ADPI and ADT fraudulently induced Press, Prosperity, and Anzar to sign a Settlement & Release of Claims Investment Agreement because ADPI and ADT:

- Made material misrepresentations to each of them;
- Made such misrepresentations with knowledge of their falsity or made them recklessly without any knowledge of their truth and as a positive assertion;
- Made such misrepresentations with the intent that they be acted upon by each Plaintiff;
- Failed to disclose material facts within the knowledge of ADPI and ADT to each Plaintiff;
- Knew that each Plaintiff was ignorant of the undisclosed facts and did not have an equal opportunity to discover the truth; and
- Intended to induce each Plaintiff to take some action by failing to disclose material facts.

(Instrument No. 37-4 at 20). On March 6, 2012, the state court entered an amended final judgment against ADPI and ADT, awarding $333,771.76 to the parties. The Court awarded $57,865.93 to Prosperity, $52,513.70 to Press, and $223,392.13 to Anzar. (Instrument No. 44 at 8).

On October 29, 2004, Littlemill sued ADPI and ADT for breach of contract and fraudulent inducement. (Instruments No. 37-5; No. 44 at 8). On June 6, 2006, the Texas trial court granted Littlemill's Motion for Summary Judgment, finding that Littlemill was entitled to recover $440,315 on its breach of contract claim and was entitled to recover $130,641.75 in attorneys' fees. (Instruments No. 37-6; No. 44 at 8). Subsequently, ADPI, ADT, and Van Dyke appealed the judgment. (Instrument No. 44 at 8). On October 20, 2006, ADPI made a cash deposit in the amount of $468,108.29. *Id.* On February 6, 2009, the trial court ordered that the funds be released to Littlemill's counsel. (Instrument No. 44-4). The Fourteenth Court of Appeals remanded the issue of reasonable attorneys' fees and the issue proceeded to trial. (Instrument No. 37-6 at 1). On August 7, 2009, the jury returned a verdict that a reasonable fee

3

for the necessary services of Littlemill's attorneys against ADPI and ADT was $95,000. *Id.* Defendants contend that the only unpaid amount as to debt owed to Littlemill is interest for attorneys' fees. (Instrument No. 44 at 9).

**3.**

There are three transfers from ADPI to ADE and Van Dyke that are at issue (collectively, the "Transfers"). (Instrument No. 37 at 7). The Transfers total to $19,539,546.23. *Id.*

The first transfer was made pursuant to a Revolver Loan Agreement dated March 15, 2001. (Instrument No. 37 at 7). As of January 1, 2006, ADE received $14,324,546.23 from ADPI. *Id.* On January 2, 2006, ADPI signed a "Forgiveness of Debt" document that stated, "ADPI hereby forgives and fully discharges the $14,324,546.23 in unpaid principal owed by ADE, and ADPI hereby forgives and fully discharges all of the unpaid interest pursuant to the Revolver Loan Agreement. ADE, its successors and assigns, can fully rely that ADPI has forever forgiven and fully discharged this debt." *Id.*; (Instrument No. 37-14). ADPI's controller Frances Barber Buchanan testified that ADPI received no consideration for the "forgiveness" of that debt or loan, never received any interest payments from ADE on that loan, and no longer had that asset on its books following the exchange. (Instrument No. 37 at 7).

The second transfer was made pursuant to the same Revolver Loan Agreement dated March 15, 2001. *Id.* Between January 6, 206 to January 24, 2006, ADE received an additional $1,415,000 from ADPI. *Id.* On February 16, 2006, ADPI signed a "Forgiveness of Debt" document, stating "ADPI hereby forgives and fully discharges the $1,415,000 in unpaid principal owed by ADE, and ADPI hereby forgives and fully discharges all of the unpaid interest pursuant to the Revolver Loan Agreement. ADE, its successors and assigns, can fully rely that ADPI has forever forgiven and fully discharged this debt." *Id.* at 7-8; (Instrument No. 37-17).

4

The third transfer was made pursuant to a signed Promissory Note dated February 11, 2005, under which ADPI loaned Van Dyke $3,800,000. *Id.* at 8. On September 28, 2006, Van Dyke and ADPI signed a "Agreement to Forgive Promissory Note," stating that ADPI agreed to "forgive and fully discharges all unpaid interest and principal owed by Van Dyke pursuant to the Promissory Note immediately upon receipt of" $400,000 from Van Dyke." *Id.* On October 25, 2006, Van Dyke and ADPI signed another "Forgiveness of Promissory Note," providing that in exchange for a $400,000 advance from Van Dyke, ADPI "hereby forgives and fully discharges all unpaid interest and principal owed by Van Dyke pursuant to the Promissory Note Van Dyke gave [ADPI] on February 11, 2005." *Id.*; (Instrument No. 37-19).

In 2007, the Texas state court scrutinized the transfers as it related to ADPI's appeal of an adverse judgment without posting a supersedeas bond to secure that judgment while on appeal. (Instrument No. 37 at 9). Judge John Donovan held that the transfers at issue were fraudulent. (Instrument No. 37-15 at 159 [159:4-8]).

## B.

This case is comprised of three adversary proceedings originally removed from Harris County district courts to the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). In the first case, Press, Prosperity, and Anzar filed suit against Defendants ADE, ADT, ADPI, and the Van Dykes (collectively, "Defendants"). *See* Case No. 4:19-CV-3082. In the second case, Smith filed suit against Defendants. *See* Case No. 4:19-CV-3095. In the third case, Littlemill filed suit against Defendants. *See* Case No. 4:19-CV-2894.

On February 11, 2019, the debtor, ADPI, filed the underlying Chapter 7 bankruptcy case. (Instrument No. 1 at 1). Eva S. Engelhart (the "Trustee") was appointed as the Chapter 7 Trustee for the estate of ADPI. (Instrument No. 22 at 3). The Trustee joined this case on behalf of

5

ADPI's bankruptcy estate on the ground that $19,539,546.23 was fraudulently transferred from ADPI to ADE and Van Dyke. (Instrument No. 37 at 5, 11, 18).

On June 24, 2019, the Trustee and Investors filed a Notice of Removal to the Bankruptcy Court. (Instruments No. 1 at 1; No. 22 at 3); Case No. 4:19-CV-3082, (Instrument No. 2-1); Case No. 4:19-CV-3095, (Instrument No. 2-1). On August 2, 2019, the Bankruptcy Court granted the Motion for Withdrawal of Reference. *See generally* (Instrument No. 1). Subsequently, the Bankruptcy Court consolidated all three adversary proceedings into one. *See* Case No. 4:19-CV-3082; Case No. 4:19-CV-3095; Case No. 4:19-CV-2894.

On February 2, 2020, the Trustee and Investors filed an Amended Complaint. (Instrument No. 22). On February 14, 2020, Defendants filed their Answer. (Instrument No. 25).

On January 1, 2021, the Trustee filed her Motion for Summary Judgment. (Instrument No. 37). On February 9, 2021, the Court granted a stipulated dismissal as to Smith. (Instrument No. 43). On February 10, 2021, Defendants filed their Response. (Instrument No. 44). On February 15, 2021, the Trustee filed her Reply. (Instrument No. 47).

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also* Fed. R. Civ. P. 56(a).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

6

non-moving party." *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (internal quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *see also Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition

7

testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *E.E.O.C. v. Chevron Phillips Chem.Co., LP*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas*, 136 F.3d at 458; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### III.

The Trustee asserts a claim for fraudulent transfer in violation of Chapter 24 of the Texas Business and Commerce Code ("TUFTA"). (Instrument No. 37 at 5). Specifically, the Trustee asserts violations of Sections 24.005(a)(1) and 24.006(a). *Id.*

Section 24.005(a) (1) states,

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [] with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Tex. Bus. & Com. Code § 24.005(a)(1). To determine "actual intent," TUFTA enumerates eleven nonexclusive factors, or "badges of fraud," that may be considered. *See id.* § 24.005(b);

8

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). "Evidence of a single 'badge of fraud' does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud." *Janvey*, 487 S.W.3d at 566-67.

Assuming, *arguendo*, the Trustee failed to demonstrate a confluence of several badges of fraud, the Trustee nevertheless demonstrates that the Transfers violate § 24.006(a). A transfer is fraudulent as to a creditor if (1) the creditor's claim arose before the transfer was made; (2) the debtor did not receive reasonably equivalent value for the transfer; and (3) the debtor became insolvent as a result of the transfer. Tex. Bus. & Com. Code § 24.006(a). Here, all three elements of § 24.006(a) are satisfied.

First, the Trustee contends that ADPI breached its contracts with Investors in 2004 and, subsequently, the Investors filed their lawsuits against ADPI in 2004. (Instrument No. 37 at 15). The Trustee proffers Littlemill's petition filed October 29, 2004. (Instrument No. 37-3). The Trustee also proffers Press and Prosperity's petition filed May 7, 2004. (Instrument No. 37-2). Defendants do not contest the Trustee's arguments. *See* (Instrument No. 44 at 19). Thus, the Trustee satisfied the first element.

Second, the Trustee contends that ADPI did not receive reasonably equivalent value for the transfers. (Instrument No. 37 at 15). "Reasonably equivalent value includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Com. Code § 24.004(d).

Here, the record evinces no evidence that ADPI received a reasonably equivalent value for the Transfers. Frances Barber Buchanan ("Buchanan"), the controller for ADPI and ADE, testified that he had no knowledge that ADPI received consideration for the forgiveness of the first loan of $14,324,546.23. (Instrument No. 37-15 at 10 [10:2—8]). Buchanan also testified that he had no knowledge that ADPI received interest payments from ADE related to this first loan.

9

*Id.* at 10 [10:9—12]. Buchanan further testified that ADPI did not receive consideration for the forgiveness of the second transfer of $1,415,000. (Instrument No. 37-15 at 11-12 [11:23—12:14]). Lastly, Buchanan testified that ADPI received $400,000 for forgiveness of the third loan in the amount of $3.8 million. (Instrument No. 37-15 at 17-18 [17:17—18:11]). These amounts—or lack thereof—do not demonstrate a value for which ADDPI would have provided a loan in an arm's length transaction.

Defendants contend that there was consideration. As evidence, Defendants point to loans made by the Van Dykes to ADPI and those loans served as consideration for the loan forgiveness. (Instrument No. 44 at 18). In Scott Van Dyke's declaration, he testified that, prior to the Halliburton lawsuit in 2004, he and his mother loaned ADPI $1,827,246.94. (Instrument No. 44-1 at 5). However, this amount is not provided in any of the agreements that initiated the Transfers or the "Forgiveness of Debt" documents. Defendants' evidence do not create a material fact issue as to whether there was a reasonably equivalent value for the transfers. Thus, the Trustee satisfied the second element.

Last, the Trustee has proffered evidence that ADPI was insolvent following the transfers. Under the Texas Uniform Fraudulent Transfer Act, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Tex. Bus. & Com. § 24.003(a). "Fair value" is determined by "estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions." *Orix Credit Alliance, Inc. v. Harvey*, 40 F.3d 118, 121 (5th Cir. 1994).

Here, the Trustee's expert, Jeff Compton, concluded that ADPI was insolvent as of December 31, 2005, the day before the first transfer. (Instruments No. 37 at 16; No. 37-27). On March 31, 2009, Scott Van Dyke testified in his deposition that ADPI had no assets and could not pay its debts as they became due after the transfers. (Instrument No. 37-12 at 2-3 [71:21—

72:3, 73:5—74:7). Scott Van Dyke testified that ADPI had assets that could have been used to satisfy the judgments against it prior to 2007. (Instrument No. 37-12 at 3 [72:6—9, 17—23]). He also testified that he considered taking ADPI into bankruptcy because "ADPI no longer had any funds available to itself, and so there was a question of whether to continue the company or not." (Instrument No. 37-12 at 4 [73:5-17]). Scott Van Dyke further testified that ADPI did not have the financial ability to pay the debt owed to Smith and Littlemill since 2007. (Instrument No. 37-12 at 2-3 [71:21—72:5]).

Defendants contend that ADPI was not insolvent at the time of the transfers. (Instrument No. 44 at 15). In support of their argument, Defendants proffer analysis from their expert, Mark Rambin, who concluded that, as of December 31, 2005, ADPI had cash and capital sufficient to maintain its operations. (Instruments No. 44 at 15; No. 44-2). Defendants also proffer evidence that ADPI expected an award of $16.2 million from the Halliburton Lawsuit, however, the judgment was overturned on appeal and the appeals court rendered a judgment that ADPI and ADT take nothing. (Instrument No. 44-1 at 7).

While Defendants' evidence might establish a fact issue, it is not a material factual dispute. Defendants only contend that ADPI had enough access to capital to maintain its operations. On its own, this evidence is not material to assessing ADPI's insolvency. Defendants do not demonstrate that the sum of ADPI's debts were not greater than its assets. Defendants' issue with the $16.2 million judgment further indicates that Defendants did not have sufficient funds to outweigh its debts. Thus, Defendants have failed to demonstrate a material fact issue as to the third element and, consequently, the Trustee has satisfied the third element.

Because all three elements have been satisfied, the Trustee has demonstrated that the Transfers violate § 24.006(a). Accordingly, the Trustee's Motion for Summary Judgment is GRANTED. (Instrument No. 37).

11

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Trustee's Motion for Summary Judgment is **GRANTED. (Instruments No. 37).**

**IT IS FURTHER ORDERED** that the Trustee has ten (10) days to file her Motion for Attorneys' Fees. Defendants have ten (10) days to file their Response.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on the 27th day of August, 2021, at Houston, Texas.

_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**
