**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: | § |
| | §   Subchapter V |
| Scott Vincent Van Dyke | § |
| | §   Case No. 21-60052 |
| Debtor. | §   **Christopher M. Lopez** |

**AMENDED PLAN OF REORGANIZATION**

**THIS AMENDED PLAN OF REORGANIZATION IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR SCOTT VAN DYKE ENTITLED TO VOTE ON THE SUBCHAPTER V PLAN OF REORGANIZATION SUBMITTED BY SCOTT VAN DYKE AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN.  ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE PLAN CAREFULLY.**

**SCOTT VAN DYKE'S AMENDED PLAN OF REORGANIZATION HAS BEEN SET FOR CONFIRMATION _____, 2021 AT __:____ P.M., IN COURTROOM 401, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002.**

**CREDITORS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE COMPLETED BALLOT IN THE ACCOMPANYING ENVELOPE ADDRESSED TO TRAN SINGH LLP ATTN: SUSAN TRAN ADAMS, 2502 LA BRANCH STREET, HOUSTON, TEXAS, 77004, NOT LATER THAN _____ 2021.  VOTES WILL BE TABULATED WITH RESPECT TO THE DEBTOR'S PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN, TO THE EXTENT THE DEBTOR DOES NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF HIS PLAN, THE PLAN MAY BE WITHDRAWN.**

# TABLE OF CONTENTS

1.1.   General Information ............................................................................................ 5

1.2.   Frequently Asked Questions ............................................................................. 5

    1.2.1.   What is Chapter 11 Bankruptcy? ................................................................ 5

    1.2.2   Has the Bankruptcy Court approved this Disclosure Statement? ............................. 5

    1.2.3.   How do I know how my Claim or Interest is classified? ................................ 5

    1.2.4.   How does the Plan get confirmed? ............................................................. 5

    1.2.5.   When is the deadline to return my ballot? ................................................. 6

    1.2.6.   When and where is the hearing to confirm the Plan? ................................. 6

    1.2.7.   When is the deadline to file an objection to confirmation of the Plan? ................. 6

II.  BACKGROUND ...................................................................................................... 6

2.1.   History of the Debtor & Events Leading to Chapter 11 Filing. ....................... 6

2.3.   Significant Events During the Bankruptcy Case. ............................................. 8

2.4.   Reorganization versus Liquidation ................................................................... 9

2.5.   Assets of the Estate. .......................................................................................... 9

2.6.   Liabilities and Claims against Van Dyke. ...................................................... 11

    2.6.1.   Secured Claims. ........................................................................................ 11

    2.6.2.   General Unsecured Claims. ...................................................................... 11

2.7.   Executory Contracts and Unexpired Leases ................................................... 12

2.8.   Projected Recovery of Avoidable Transfers and Other Claims. ..................... 12

2.9.   Claim Objections ............................................................................................ 12

III.  PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ............................................................................................................. 13

3.1.   Definitions. ..................................................................................................... 13

3.2.   Unclassified Claims. ....................................................................................... 18

    3.2.1   Administrative Claims. ............................................................................. 18

    3.2.2.   Classes of Claims. .................................................................................... 19

IV.   IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES ...... 19

4.1.   Impaired Classes entitled to vote. .................................................................. 19

4.2.   Unimpaired Claims. ........................................................................................ 19

4.3.   Claim Controversies. ...................................................................................... 19

V.   TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS .................................. 20

5.1.   Treatment of Impaired Classes of Claims. ..................................................... 20

5.1.1. Secured Claims (Class 1). .............................................................................. 20

    5.1.2.   Treatment of Ad Valorem Claims (Class 2). ............................................ 20

5.1.3.   Treatment of Secured Claims (Class 3). ................................................ 21

5.1.3.   Treatment of Unsecured General Claims (Class 4). ............................ 21

5.2.   Treatment of Unimpaired Classes of Claims. ............................................ 22

VI.   IMPLEMENTATION OF PLAN & POSTCONFIRMATION  MATTERS ................. 22

6.1.   Source of Payments. ...................................................................................... 22

6.2.   Post-confirmation Management. ................................................................... 23

6.3.   Risk Factors. .................................................................................................. 23

6.4.   Tax Consequences of Plan. ........................................................................... 24

6.4.1.   Taxation Generally ............................................................................ 24

VII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................. 24

VIII.   CAUSES OF ACTION ........................................................................................ 25

8.1.   Preferences. .................................................................................................... 25

8.2.   Fraudulent Transfers. .................................................................................... 25

IX.   CONFIRMATION REQUIREMENTS AND PROCEDURES ............................... 25

X.   VOTING PROCEDURES ................................................................................... 28

10.1   Ballots and Deadline to Vote. ....................................................................... 28

10.2.   Creditors Entitled to Vote. ............................................................................ 28

10.3.   Vote Required for Accepting Classes. .......................................................... 29

10.4.   Cramdown and Withdrawal of the Plan. ...................................................... 29

XI.   EFFECT OF CONFIRMATION OF THE PLAN ................................................. 29

11.1.   Discharge of Debtor, Injunction, and Vesting of Property of the Estate. ..... 29

11.1.1.   Discharge [if under § 1191(a)]. ...................................................... 29

11.1.2.   Discharge [if under § 1191(b)]........................................................ 29

11.2.   Modification of Plan......................................................................................... 30

11.4.   Legally Binding Effect. .................................................................................. 30

11.5.   Limited Protection of Certain Parties............................................................ 30

11.6.   Anti-Discrimination Provisions of Bankruptcy Code. .................................. 31

11.7.   Preservation of Claims and Rights. .............................................................. 31

11.8.   Retention of Jurisdiction by Bankruptcy Court ............................................ 31

XII.   CONFIRMATION OF THE PLAN...................................................................... 32

12.1   Confirmation Hearing. ................................................................................... 32

12.2.   Post-Confirmation Disbursements. .............................................................. 32

XIII.   CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS ................................................. 33

XIV.   GENERAL PROVISIONS................................................................................... 35

14.1.   Bar Date and Objections to Administrative Claims. ....................................................... 35

14.2.   Professional Claims. ........................................................................................................ 35

14.3.   Amendment of the Plan. ................................................................................................... 35

14.4.   Reservation of Claims. ..................................................................................................... 35

14.5.   Calculation of Dates. ....................................................................................................... 35

14.6.   Governing Law. ............................................................................................................... 35

14.7.   Conflict. ........................................................................................................................... 36

14.8.   Setoffs. ............................................................................................................................. 36

14.9.   Alternative Means to Confirmation ................................................................................. 36

14.10.  Alternative Plans of Reorganization. .............................................................................. 36

14.11.  Liquidation under Chapter 7. .......................................................................................... 36

## I. INTRODUCTION

### 1.1. General Information

This is the Amended Chapter 11 Plan (the "Plan") in the chapter 11 case proceeding under the Subchapter V Small Business Reorganization Act of Scott Van Dyke (hereinafter "Van Dyke "), the Debtor and Debtor-in-Possession (the "Debtor"). ***Your rights may be affected. You should read the Plan carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

### 1.2. Frequently Asked Questions

### 1.2.1. What is Chapter 11 Bankruptcy?

Financially distressed companies or individuals reorganize their debts or liquidate their assets under Chapter 11 of the United States Bankruptcy Code. Commencement of a case under Chapter 11 creates an "estate" which contains all legal and equitable interest of the debtor as of the date of filing. During a Subchapter V bankruptcy case, the debtor remains in possession of its assets and a Subchapter V Trustee is appointed to assist with confirmation of the debtor's plan and administration of the debtor's estate. Melissa Haselden was appointed Subchapter V Trustee in this bankruptcy case.

### 1.2.2   Has the Bankruptcy Court approved this Disclosure Statement?

No. The Debtor filed its Chapter 11 bankruptcy as a Subchapter V small business case and is not required to file a Disclosure Statement pursuant to 11 U.S.C. § 1181.

### 1.2.3. How do I know how my Claim or Interest is classified?

In order to determine the classification of your Claim or Interest, you must determine the nature of your Claim or Interest. Under the Plan, Claims and Interests are classified into a series of classes and the relevant articles.

### 1.2.4. How does the Plan get confirmed?

Under the Bankruptcy Code, if all provisions of 11 U.S.C. § 1129 are met, aside from paragraphs (8), (10), and (15) of section 1129, the court shall confirm a plan as long as the plan does not discriminate unfairly, is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan

These requirements and statutory tests are designed to protect the interests of the holders of the impaired claims or interests who do not vote to accept the plan but who will be bound by the Plan's provisions if the Plan is confirmed by the Bankruptcy Court. If one or more classes vote to reject the Plan, the Debtor may still request that the Bankruptcy Court confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1191 and § 1129(a) of the Code.  The Bankruptcy Code provides the following requirements in order for a plan to be fair and equitable as to non-accepting classes:

(1) holders of secured claims retain the liens securing their claims, to the extent of the allowed claim and each holder of the claim receive on account of their claim, deferred cash payments totaling at least the allowed amount of the claim, as of the effective date of the plan.

(2) As of the effective date of the plan, the plan provides for all of the projected disposable income of the debtor received in the three year or longer period not to exceed five years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan or the value of the property to be distributed is not less than the disposable income of the debtor.

### 1.2.5.   When is the deadline to return my ballot?

The Bankruptcy Court has directed that your ballot must be received by 5:00 p.m. CST on _____, 2021 and returned in the enclosed envelope to Tran Singh LLP, ATTN: Susan Tran Adams, 2502 La Branch Street, Houston, Texas, 77004.

### 1.2.6.   When and where is the hearing to confirm the Plan?

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ 2021 at ___:___ p.m., in courtroom 401, at 515 Rusk, Houston, Texas, 77002 in front of the Honorable Judge Christopher M. Lopez.

### 1.2.7.   When is the deadline to file an objection to confirmation of the Plan?

Objections to confirmation of the Plan must be filed with the Court and served upon Tran Singh LLP, ATTN: Susan Tran Adams, 2502 La Branch Street, Houston, Texas, 77004 by 5:00 p.m. CST on _____, 2021.

## II.  BACKGROUND

### 2.1.   History of the Debtor & Events Leading to Chapter 11 Filing.

Mr. Scott Van Dyke is an individual residing in Houston, Texas, and has been in the business of oil and gas exploration for almost 40 years.  Mr. Van Dyke has a Bachelors' Degree in Commerce from Washington & Lee University and a Bachelors' Degree in Geology from the University of Northern Colorado.  Mr. Van Dyke owns and/or has owned an ownership interest in several companies engaged in oil and gas exploration and development:  Anglo-Dutch Energy LLC ("ADE"), Anglo-Dutch (Tenge) LLC ("ADT"), Anglo-Dutch (Everest) LLC, Anglo-Dutch (Neftenge) LLC, American Oil & Gas LLC, Trepador Energy LLC, Potomac Assets LLC, Texas

Petroleum Operations LLC ("TPO"), Anglo-Dutch Petroleum International, Inc. ("ADPI"), and Burgoyne Investments LLC (the "Van Dyke Entities").

Mr. Van Dyke entered the oil and gas exploration and development business in 1983 by working for his family's oil company, Van Dyke Energy Company, exploring in The Netherlands' sector of the North Sea. Van Dyke Energy was one of the first companies to explore The Netherlands' offshore (starting in the early 1970s), and was successful in discovering some of The Netherlands' largest North Sea oil fields. In 1990, Mr. Van Dyke started his own oil company, ADPI. In 1992, soon after the breakup of the Soviet Union, ADPI was the second oil company to be awarded a field development contract by the newly established Republic of Kazakhstan. ADPI started to develop the Tenge field with proved reserves exceeding 165 million barrels of oil and 1.85 trillion cubic feet of gas. ADPI's field was capitalized in part by Chinese Petroleum Corp., the national oil company of Taiwan, and Naphtha Israel Petroleum Corp., the former Israeli national oil company. The Tenge field was sold in 2000, at which time Mr. Van Dyke formed ADE to start oil and gas exploration in the U.S.

ADE drilled its first well in the U.S. in 2005. The well was drilled to a depth of 11,838 feet in Jefferson Davis Parish, Louisiana. ADE only had a small 7 square mile 3D seismic survey that covered the prospect, and the hydrocarbons could not be detected by standard attribute technologies. But ADE mapped the prospect, drilled the well and put the well into production with its own funds at a cost of about $4 million. The well paid out in 4 months, and continued to produce for the next 11 years - paying ADE over $18 million in net revenue. ADE has since drilled 16 other conventional wells along the gulf coasts of Texas and Louisiana. ADE has a 70% discovery rate. ADE notably made significant discoveries in areas that were heavily drilled by some of the major oil companies as some of ADE's prospects were overlooked by the major oil companies. For example, ADE discovered the Wilbert 1 well in Plaquemine Parish, Louisiana, in a field once owned for over 60 years by Shell. The Wilbert 1 well has sold more than $40 million in oil and gas sales. In total, ADE has sold over $114 million in oil and gas sales from 2005 through 2020 from its wells.

While the Van Dyke Entities enjoyed commercial success in previous years, however, largely due to plummeting oil and gas prices resulting from the COVID-19 pandemic and due to an interruption in markets, and due to some litigation, the Van Dyke Entities have struggled to maintain profitability.

Pre-petition Litigation

*The Fraudulent Transfer Litigation*. Intra-related transfers by Van Dyke Entities became subject of litigation commenced by several investors of the Van Dyke Entities. Robert M. Press, Prosperity Settlement Funding, Inc., and Anzar Settlement Funding, Corp. filed suits against ADE, ADT, ADPI. and Mr. Van Dyke, case number 4:19-cv-3082 in the Southern District of Texas. Smith filed suit against Mr. Van Dyke and ADE, ADT, and ADPI in the Southern District of Texas, case number 4:19-cv-3095. Littlemill Limited, another investor, filed suit against Mr. Van Dyke and ADE, ADT, and ADPI in the Southern District of Texas case number 4:19-cv-2894. All these matters have been removed from Harris County District Courts upon the filing for bankruptcy

relief of ADPI in the Southern District of Texas where Trustee Eva Engelhart was appointed Chapter 7 Trustee.

*State Court Registry Litigation.* Years prior to the bankruptcy filing, two of the Van Dyke Entities sued Halliburton and subsequently entered into a settlement agreement in 2004, causing the demand for repayment by several of the investors of the Van Dyke Entities. Concurrent with lawsuits demanding repayment, the Van Dyke Entities filed suit against one of their previous counsel in their suit against Halliburton for overcharging, who in turn countersued them and prevailed. The Van Dyke Entities subsequently appealed and deposited approximately $1.85 million dollars into the state court registry for a supersedes bond. After over 10 years of litigation, the Court determined the correct amount which was paid to the Van Dyke Entities's previous counsel, leaving roughly $1.3 million dollars in the registry of the 61st Judicial District of Harris County, Texas, and the disposition of these funds is still unresolved. The pending matter was before the District Court in the Southern District of Texas case number 4:19-cv-03101 styled *Engelhart v. Greenberg Peden, P.C.* (the "State Court Registry Litigation").

Both the Fraudulent Transfer Litigation and the State Court Registry Litigation were before Judge Vanessa Gilmore in the Southern District of Texas. Due to the filing of Mr. Van Dyke's bankruptcy, both matters were stayed.

Aside from further diminished profitability of the Van Dyke Entities caused by COVID-19, the mounting litigation costs of defending the Fraudulent Transfer Litigation and State Court Registry Litigation further depleted Mr. Van Dyke's financial resources causing him to seek bankruptcy relief on May 25, 2021.

## 2.3.    Significant Events During the Bankruptcy Case.

Scott Van Dyke filed his petition under Chapter 11 on May 25, 2021 as a small business case with a Subchapter V designation. Due to the emergency nature of his bankruptcy filing, Mr. Van Dyke filed his Emergency Motion to Extend Time to File Schedules, Statement of Financial Affairs, and List of Largest 20 Creditors (Dkt. No. 8) which was granted through June 30, 2021. The Bankruptcy Court conducted a preliminary status conference on June 4, 2021 and Subchapter V Status Conference on July 22, 2021.

Case Summary

Mr. Van Dyke filed his Application to Employ Tran Singh LLP as general bankruptcy counsel (Dkt. No. 20) which was granted on July 1, 2021. An Emergency Motion for Order (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services and (II) Establishing Procedures for Determining Requests for Additional Adequate Assurance (Dkt. No. 19) was filed by Mr. Van Dyke and granted June 29, 2021 after notice and hearing.

Mr. Van Dyke's Schedules and Statement of Financial affairs (Dkt. No. 27) were filed on June 30, 2021. Schedules A/B and the Statement of Financial Affairs were amended on August 5, 2021 (Dkt No. 48).

The meeting of creditors was held and concluded on July 19, 2021.

Bankruptcy Litigation

On June 16, 2021, Trustee Eva Engelhart, filed a motion seeking relief from the automatic stay as to the Fraudulent Transfer Litigation and Registry Funds Litigation (Dkt. 16). The Bankruptcy Court conducted a preliminary hearing on the Trustee Engelhart's motion on July 7, 2021 and granted the motion for the limited purpose of permitting the District Court to proceed with its ruling. The District Court then entered its order on the pending motions for summary judgment in both the Fraudulent Transfer Litigation and State Court Registry Litigation (Dkt. Nos. 58 and 59, respectively). Based upon the order of the District Court, The State Court Registry Litigation has been remanded to the Judicial District of Harris County, Texas and Trustee Engelhart on behalf of the investors of the Van Dyke Entities, were awarded monetary damages in the amount of three million four hundred thousand dollars.

The Bankruptcy Court, at a status conference hearing in the bankruptcy case of ADE, lifted the automatic stay as to the Fraudulent Transfer Litigation and the State Court Registry Funds Litigation (Dkt. No. 62). Mr. Van Dyke retained the law firm of Henke, Williams, & Boll, LLP as special counsel to represent the interests of the estate in the State Court Registry Funds Litigation (Dkt. No. 57) on a contingency fee basis.

Michael Noel ("Noel"), creditor of the estate, filed a motion to lift the automatic stay in order to proceed with a breach of contract suit filed in the 127th Judicial District of Harris County, Texas, styled *Michael Noel et al. v. Scott Van Dyke, et al.*, case number 2018-34037. The hearing on Noe's motion to lift the automatic stay is currently set for November 2, 2021. Noel also filed a complaint to except his debt from discharge on August 23, 2021, Adv. Case number 21-06008; Mr. Van Dyke filed his answer to the complaint on September 24, 2021.

## 2.4.    Reorganization versus Liquidation.

Pursuant to a liquidation analysis, the unsecured creditors would receive a higher recovery through reorganization than liquidation. Mr. Van Dyke proposes to assign his interests in virtually all of his non-exempt assets in addition to cash payments to unsecured creditors. Attached as **Exhibit 1** is the Liquidation Analysis prepared by Mr. Van Dyke.

## 2.5.    Assets of the Estate.

Mr. Van Dyke filed his Schedules on June 30, 2021 which are hereby incorporated by reference to this Subchapter V Plan. Complete copies of the schedules are available from the Clerk of the Court. As of the Petition Date, Mr. Van Dyke's interest in ADE and Trepador once had tremendous value due to their interests in ADM White Castle LLC (whose primary assets were wells located in Iberville Parish, Louisiana (the "White Castle Wells")) but now the entities have virtually no value due to the lawsuit surrounding ADM White Castle LLC and subsequent foreclosure of its assets. On October 20, 2021 a sheriff's sale (related to the lawsuit of *Hawkeye Stratigraphic, Inc. v. ADM White Castle LLC, suit 79915*) of the White Castle Wells took place where some oil was sold at auction. Through the date of this Amended Plan, a continued auction of assets and equipment related to the White Castle Wells is scheduled for January. The estate has

an indirect interest in ADM White Castle LLC and the White Castle Wells through Mr. Van Dyke's interest in the Van Dyke Entities. Attached as **Exhibit 2** is a diagram of the corporate structures of the Van Dyke Entities demonstsrating Mr. Van Dyke's interest in the White Castle Wells. Attached to this Plan as **Exhibit 3** are the notices related to the auction of the White Castle Wells and the litigation concerning the White Castle Wells.

On December 7, 2021, Mr. Van Dyke's mother passed away suddenly, and Mr. Van Dyke and his family members will begin the process of probating her estate. Mr. Van Dyke does not believe that his estate will have any meaningful interest in his mother's estate but to the extent that Mr. Van Dyke is entitled to a distribution in his mother's estate he shall modify the plan to provide additional payment to creditors of the estate for any after acquired property pursuant to 11 U.S.C. §§ 1115 and 1191.

The primary assets of the bankruptcy estate on the Petition Date, its estimated values and current values are:

| Description of Asset | Market Value as of Petition Date | Current Market Value | Value Available to Estate[1] |
|---|---|---|---|
| 2013 Chevrolet Tahoe | $5,300.00 | $5,300.00 | $5300.00 |
| Frost Bank Account | $1,000.00 | $1,000.00 | $1,000.00 |
| Anglo-Dutch Energy, LLC | $6,898,108.75 | Unknown[2] | |
| Anglo-Dutch (Tenge) LLC | $260.00 | $260.00 | $400.00 |
| Anglo-Dutch (Everest) LLC | $81,250.00 | $400.00* | $400.00 |
| Anglo-Dutch Energy Partners IV LLC | $260.00 | $260.00 | $260.00 |
| American Oil & Gas LLC | $400.00 | $400.00 | $400.00 |
| Trepador Energy LLC | $46,500,000.00 | $50,000.00[3] | $50,000.00 |
| Potomac Assets LLC | $400.00 | $400.00 | $400.00 |
| Texas Petroleum Operations, LLC | -$500,000.00 | -$500,000.00 | $0.00 |
| Burgoyne Investments LLC | $400.00 | $400.00 | $400.00 |
| Funds held in State Court Registry (61st Judicial | $907,233.26 | $907,233.26 | unknown |

---

[1] Not assuming liquidating values.

[2] Debtor scheduled a value of $6,898,108.75 as ADE had an interest in a well located in ADM White Castle but has now been foreclosed. Due to the foreclosure, the Debtor's interest in ADE has diminished substantially.

[3] Trepador, LLC had an interest in a well located in ADM White Castle but has now been foreclosed and Trepador has no other assets other than its ownership of some office equipment and geologic data.

| Description of Asset | Market Value as of Petition Date | Current Market Value | Value Available to Estate[1] |
|---|---|---|---|
| District of Harris County) owed to ADE | | | |
| Money loaned to Anglo-Dutch Energy LLC | $244,188.25 | $244,188.25 | $244,188.25 |
| Funds held in State Court Registry (61st Judicial District of Harris County) owed to Scott Van Dyke | $422,750.85 | $422,750.85 | $422,750.85 |
| Estate of Mary Theresa Van Dyke | Unknown | Unknown | Unknown |

**2.6.    Liabilities and Claims against Van Dyke.**

**2.6.1.  Secured Claims.**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim.

The following table sets forth the potential secured claims in Mr. Van Dyke 's case:

| Secured Claim | Scheduled or Filed Claim | Collateral |
|---|---|---|
| Big Tex Storage | $2,070.00 | Items in storage |
| Cadence Bank | $1,888,210.00 | 1515 S. Boulevard, Houston, Texas, 77006 |
| Harris County et al | $259,420.38 | 1515 S. Boulevard, Houston, Texas, 77006 |
| Titlemax of Texas | $12,124.19 | 2013 Chevrolet Tahoe |
| Wells Fargo Bank, N.A. | $10,014.50 | 2016 Chevrolet Silverado |

**2.6.2.  General Unsecured Claims.**

Below are the unsecured claims that were scheduled by the Debtor or claims asserted by the filing of proofs of claim filed by unsecured claimants:

| Unsecured Claim | Scheduled Claim | Filed Claim |
|---|---|---|

| | | |
|---|---|---|
| Andrea Lore, co-executor of Robert M. Press | | $218,929.02 |
| Anzar Settlement Funding Corp. | | $924,733.02 |
| AT&T U-verse | $295.00 | |
| Bank of America | $46,074.00 | |
| Builders West, Inc. | $9,750.00 | $1,062,002.90 |
| Centerpoint Energy | $135.00 | |
| Central Portfolio Control | $3,675.00 | |
| Chase Card Services | $45,559.03 | |
| City of Houston – Water Department | $140.00 | $165.13 |
| Echelon Analytics, LLC | | $19,125.00 |
| Eva Engelhart | | $41,475,496.41 |
| Henke, Williams, & Boll, LLP | $520,672.03 | $520,672.03 |
| Johns & Hebert, PLLC | $86,010.61 | $86,010.61 |
| Laurence Foster Wilkerson | $200,000.00 | |
| Libertas Funding LLC | | $904,067.59 |
| Littlemill Limited | | $269,007.52 |
| Michael Noel | $900,992.08 | $2,810,011.11 |
| Philadelphia Indemnity Insurance Company | | $400,000.00 |
| Phoenix Financial Services, LLC | $770.00 | |
| Prosperity Settlement Funding, Inc. | | $237,336.87 |
| Stephen Jacobe | $100,000.00 | |
| Victor and Diane Vacek | $200,000.00 | |

## 2.7. Executory Contracts and Unexpired Leases.

Mr. Van Dyke is unaware of any executory contracts or unexpired leases to which he is a party.

## 2.8. Projected Recovery of Avoidable Transfers and Other Claims.

The Debtor is unaware of any potential avoidable transfers at this time.

## 2.9. Claim Objections.

Mr. Van Dyke intends on filing objections to the proofs of claims of Harris County, Eva Engelhart, and Michael Noel.

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

## III.  PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 3.1.  Definitions.

#### 3.1.1.  Administrative Claim.

Any cost of expense of administration of the Chapter 11 case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including but not limited to, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries, or commissions for services rendered after the commence of the Chapter 11 case, certain taxes, fines, and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate. With respect to Administrative Claims allowed pursuant to sections 503(b)(2)-(b)(9), there shall be an Administrative Claim against the Debtor only to the extent upon entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

#### 3.1.2.  Administrative Claim Bar Date.

Aside from Professional Fee claims, including Subchapter V fee and expense claims, applications for the allowance of an Administrative Claim shall be made thirty (30) days after the Effective Date unless otherwise provided by a Final Order.

#### 3.1.3.  Allowed Administrative Claim.

An Administrative Claim to the extent it is or becomes an Allowed Claim.

#### 3.1.4.  Allowed Amount.

The amount of an Allowed Claim.

#### 3.1.5.  Allowed Claim.

An Allowed Claim is any Claim which has been

    (1) scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and

        (a) not scheduled as disputed, contingent, or unliquidated,

        (b) as to which no Proof of Claim has been filed, and

        (c) where no objection to such scheduled Claim has been filed;

    (2) where a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; or

(3) a Claim allowed by a Final Order.

### 3.1.6.   Allowed General Unsecured Claim.
A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.7.   Allowed Secured Claim.
A Secured Claim to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not avoided pursuant to the Bankruptcy Code.

### 3.1.8.   Allowed Unsecured Claim.
An Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.9.   Avoidance Action.
Any and all rights, claims, causes of action, arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, or 724 of the Bankruptcy Code.

### 3.1.10. Bankruptcy Code.
Title 11 of the United States Code as effective on the Confirmation Date.

### 3.1.11. Bankruptcy Court.
The United States District Court for the Southern District of Texas, Victoria Division, having jurisdiction over this Chapter 11 case, or any appellate or other court that is competent to exercise jurisdiction over confirmation of this Plan.

### 2.1.1.   Bar Date.
September 20, 2021 as the deadline to file proofs of claim and January 18, 2022 as the deadline for Governmental Units to file proofs of claim.

### 2.1.2.   Cash.
United States dollars.

### 2.1.3.   Cause of Action.
Any Claim or cause of action, legal or equitable, whether arising under contract or tort, federal or state law, including Avoidance Actions, now owned or after acquired by the Debtor, whether such Claim or cause of action is commenced prior to or after the Petition Date.

### 2.1.4.   Chapter 11 Case.
Case number 21-60052-H4 filed under Chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

### 2.1.5.   Claim.
Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

### 2.1.6.   Claimant.

Any person or entity asserting a Claim against the Debtor, his property, or his Estate.

### 2.1.7.   Collateral.

Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Court or otherwise invalid under the Bankruptcy Code or applicable state law.

### 2.1.8.   Confirmation Date.

The date upon which the Bankruptcy Court enters the Confirmation Order.

### 2.1.9.   Confirmation Hearing.

The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

### 2.1.10. Confirmation Order.

The Order of the Bankruptcy Court approving and confirming the Chapter 11 Plan in accordance with the Bankruptcy Code.

### 2.1.11. Creditor.

Any person or entity that holds a Claim against the Debtor that arose or is deemed to have arisen on or prior to the Petition Date, including an Allowed Claim against the Debtor's Estate of any kind as provided by sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### 2.1.12. Debtor.

The Debtor is Scott Vincent Van Dyke.

### 2.1.13. Debtor in Possession.

The Debtor in his capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### 2.1.14. Disputed Claim.

A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled, or otherwise resolved by Final Order.

### 2.1.15. Distribution.

The Cash or other property required by the Plan to be distributed to the holders of Allowed Claims.

### 2.1.16. Distribution Date.

The date on which distributions are made pursuant to the terms of the Plan to Holders of Allowed Claims.

### 2.1.17. District Court.

The United States Court for the Southern District of Texas.

**2.1.18. Effective Date.**

The date in which the Confirmation Order becomes a Final Order.

**2.1.19. Estate.**

The estate created upon the filing of the Chapter 11 case pursuant to section 541 of the Bankruptcy Code, along with all rights, claims, and interests of the Debtor that arose prior to the Petition Date.

**2.1.20. Final Order.**

An order or judgment which has not been reversed, vacated, or stayed and as to which the time to appeal or move for new trial or rehearing has expired.

**2.1.21. General Unsecured Claim.**

A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

**2.1.22. Governmental Unit.**

The term "Governmental Unit" shall have the same meaning as provided in section 101(27) of the Bankruptcy Code.

**2.1.23. Interest Holder.**

Any holder or owner of an Equity Interest.

**2.1.24. Lien.**

A charge against or interest in property to secure payment of a debt or performance on an obligation which has not been avoided under the Bankruptcy Court or applicable state law.

**2.1.25.    Notice of Default.**

Notice to be transmitted to Debtor at 1515 South Boulevard, Houston, Texas, 77006.

**2.1.26.    Petition Date.**

May 25, 2021.

**2.1.27.    Plan.**

This Subchapter V Plan of Reorganization, as may be amended or modified from time to time.

**2.1.28.    Plan Ballot.**

The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

**2.1.29.    Plan Documents.**

Any and all documents contemplated to be executed in connection with this Plan.

### 2.1.30.    Plan Payment Schedule.

**Debtor's proposed schedule of payments under the Plan attached as Exhibit 4**.

### 2.1.31. Pro Rata.

The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

### 2.1.32. Professional Fee Claims.

Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses, and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of a Professional Fee Claim.

### 2.1.33. Professional Fees.

All fees, costs, and expenses incurred in this Chapter 11 case by any professional person (within the meaning of sections 327, 328, or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to sections 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs, and expenses which have been allowed pursuant to this Plan or by Final Order by the Bankruptcy Court.

### 2.1.34. Protected Persons.

As defined in Section 11.3 of this Plan.

### 2.1.35. Reorganized Debtor.

As of the Effective Date of the Plan, the Debtor as reorganized under the terms of the Plan.

### 2.1.36. Rights of Action.

Any avoidance, recovery, subordination, or other action of the Debtor, the Estate, or the Reorganized Debtor, any Cause of Action of the Debtor, the Estate, or Reorganized Debtor, or any objection to a Claim.

### 2.1.37. Schedules.

The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521 of the Bankruptcy Code.

### 2.1.38. Secured Claim.

A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, of any interest in property of the Estate securing such Claim, or any Claim to the extent that it is subject to setoff pursuant to section 533 of the Bankruptcy Code.  To the extent the value of such interest is less than the Claim amount, such Claim is a Deficiency Claim.

### 2.1.39. Subchapter V Trustee.

Melissa Haselden was appointed by the United States Trustee pursuant to 11 U.S.C. § 1183 to serve as the Subchapter V Trustee in this case.

**2.1.40. Unsecured Claim.**

A Claim not secured by a charge, mortgage, or lien against or interest in the Estate, including by not limited to any Deficiency Claim or any claim for damages resulting from rejection of an executory contract or lease.

## 3.2.    Unclassified Claims.

As required by the United States Bankruptcy Code ("Code"), the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interest is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.  Certain types of claims automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if in their view their treatment under the Plan does not comply with that required by the Code.

### 3.2.1    Administrative Claims.

Administrative expenses are costs or expenses of administrating the Debtor's Chapter 11 case which are allowed under 11 U.S.C. 507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article.  These unclassified Claims are treated as follows:

The Debtor shall file monthly operating reports and post confirmation quarterly reports through the date this case is closed.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|------------------------|---------------------|
| Professional Fees for Debtor's Counsel | $7,500.00[4] | Debtor proposes to pay the remaining Professional Fees according to the proposed Plan Payment Schedule. |
| Professional Fees and Expenses for Subchapter V Trustee | $5,500.00 | Debtor proposes to pay according to the proposed Plan Payment Schedule and 14.2 of the Plan. |

---

[4] Counsel for Debtor has not yet submitted a Fee Application but will file one shortly thereafter.

### 3.2.2.  Classes of Claims.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

        **3.2.2.1**     **Class 1 – Secured Claims.**  Class 1 is comprised of the secured claim held by Cadence Bank.

        **3.2.2.2.**     **Class 2 – Ad Valorem Claims.**  Class 2 is comprised of claims held by Harris County *et al*.

        **3.2.2.3.**     **Class 3 – Secured Claims.**  Class 3 is comprised of the secured claims of Titlemax of Texas and Wells Fargo Bank, N.A.

        **3.2.3.4 .**     **Class 4 – General Unsecured Claims.**  Class 4 is comprised of all Allowed Unsecured Claims.

    **3.2.3.5 .**     **Class 5 – TPO Guaranties.**  Class 5 is comprised of TPO lenders claims personally guaranteed by Mr. Van Dyke for which no default exists.

## IV.  IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES

### 4.1.  Impaired Classes entitled to vote.

Only holders of Claims which are in impaired Classes may vote on the Plan.  The following Classes of Claims and Interests are impaired and entitled to vote under the Plan:

Class 1 – Secured Claims.
Class 2 – Ad Valorem Claims.
Class 4 – Secured Claims.
Class 3 – General Unsecured Claims.

### 4.2.  Unimpaired Claims.

**Holders of unimpaired claims are deemed to have accepted the proposed Plan and are not entitled to vote on the Plan.  The following are unimpaired classes:**

**Class 5 – TPO Guaranties.**

### 4.3.  Claim Controversies.

Should a controversy or dispute arise relating to the classification, impairment, or voting rights of any Creditor or Interest Holder under the Plan, prior to confirmation, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  The Bankruptcy Court may estimate, for voting purposes, the amount of any contingent or unliquidated claim, or fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11

bankruptcy.  The Bankruptcy court may conduct a valuation hearing pursuant to section 506(b) of the Bankruptcy Code to determine the Allowed Amount of any Secured Claim.

## V.      TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS

### 5.1.    Treatment of Impaired Classes of Claims.

#### 5.1.1. Secured Claims (Class 1).

As provided in the underlying contractual agreement, Cadence Bank shall receive regular ongoing payments due and payable according to the terms of its promissory note for the term of sixty months commencing the first of the month following thirty days after the Effective Date[5], without any penalty for pre-payment of its obligations under the Plan.  Cadence Bank shall receive Pro Rata Cash payments of its pre-petition arrearage claim ($114,269.72) with payments commencing the first day of the month, following thirty days after the Effective Date for a term of sixty (60) months. Cadence Bank shall receive Pro Rata Cash payments of its post-petition arrearage claim ($112,051.55) commencing the first day of the month, following thirty days after the Effective Date for a term of twelve (12) months.

In the event of any failure of the Reorganized Debtor to timely make its required plan payments to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to Cadence Bank, it shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, Cadence Bank may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Cadence Bank is only required to send four(4) notices of default, and upon the third event of default, it may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

### 5.1.2.    Treatment of Ad Valorem Claims (Class 2).

Holders of Secured Claims in Class 2 (Harris County *et al*) shall receive sixty (60) monthly Cash payments[6] commencing thirty (30) days from the Effective Date[7] with payments calculated on a five (5) year amortization of the Claims from the Petition Date, plus post-petition interest, charges, and attorneys' fees[8], and with interest bearing on the respective Claims per applicable statutory non-bankruptcy law and/or the underlying contractual agreement, whichever is applicable.  Holders of Allowed Claims in Class 2 shall retain all liens it currently holds or will hold under applicable non-bankruptcy law, whether for pre-petition tax years or for the current tax year or for post-petition tax years, on any property of the Debtor until it receives payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished.   The Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2022 and subsequent tax years) owing to Harris County *et al* in the ordinary course of business as such tax debt comes due and prior to said ad valorem tax becoming

---

[5] If occurrence of the Effective Date is November 20, 2021, the first payment due to Class 1 is on January 1, 2022
[6] If occurrence of the Effective Date is November 20, 2021, the first payment due to Class 2 is on January 1, 2022
[7] or when Claimant's Claim becomes due under applicable state law
[8] To the extent applicable under the underlying loan document or applicable state law

delinquent without the need of Harris County to file an administrative expense claim and/or request for payment.

In the event of any failure of the Reorganized Debtor to timely make its required plan payments, or subsequent ad valorem taxes in the ordinary course to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Holders of Claims in Class 2 are only required to send three (3) notices of default, and upon the third event of default, the Claimants may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

### 5.1.3.   Treatment of Secured Claims (Class 3).

Holders of Allowed Secured Claims in Class 3 (Titlemax of Texas and Wells Fargo Bank, N.A.) shall receive equal monthly Cash Payments[9] of their allowed secured claims amortized over a term of sixty (60) months with interest bearing on their respective allowed secured claims at the rate of four and a half percent (4.5%) per annum.  Payments shall commence the 1st day of the month following thirty days after the Effective Date.

In the event of any failure of the Reorganized Debtor to timely make its required plan payments to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  The holders of claims in Class 3 are only required to send four (4) notices of default, and upon the third event of default, the holders of claims in Class 3 may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

### 5.1.3.   Treatment of Unsecured General Claims (Class 4).

In full satisfaction, Holders of Allowed General Unsecured Claims in this Class are assigned the Debtor's interest and proceeds in the State Court Registry Funds Litigation, after the payment of attorneys fees and expenses, including but not limited to, the Debtor's funds held in the registry of the court for the 61st Judicial District of Harris County.  In addition, Holders of Allowed General Unsecured Claims are assigned the Debtor's claim for repayment of his loan to ADE.

Further, Holders of General Unsecured Claims shall receive Pro Rata Cash Payments as follows with payments[10] commencing the 1st day of the month following thirty (30) days after the Effective Date:

---

[9] If occurrence of the Effective Date is November 20, 2021, the first payment due to Class 3 is on January 1, 2022
[10] If occurrence of the Effective Date is November 20, 2021, the first payment due to Class 4 is on January 1, 2022

a. Consecutive monthly payments of $5,000.00 for a term of twelve (12) months (Months 1-12);
b. Consecutive monthly payments of $10,000.00 for a term of twelve (12) months (Months 13-24);
c. Consecutive monthly payments of $20,000.00 for a term of twelve (12) months (Months 25-36);
d. Consecutive monthly payments of $10,000.00 for a term of twelve (12) months (Months 37-48); and
e. Consecutive monthly payments of $5,000.00 for a term of twelve (12) months (Months 49-60).

In the event of any failure of the Reorganized Debtor to timely make its required plan payments to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The holders of claims in Class 4 are only required to send four (4) notices of default, and upon the third event of default, the holders of claims in Class 4 may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

All disputed Claims shall be treated in accordance with <u>Section XII</u> of this Plan.

**5.2.    Treatment of Unimpaired Classes of Claims.**

As provided in the underlying contractual agreements, Holders of Claims in Class 5 shall receive regular ongoing payments due and payable pursuant to the terms of their respective agreements from TPO. Holders of Claims in Class 5 include the claims held by Stephen Jacobe, Victor and Diane Vacek, and Laurence Foster Wilkerson.

## VI.    IMPLEMENTATION OF PLAN & POSTCONFIRMATION MATTERS

**6.1.    Source of Payments.**

Payments and distributions under the Plan will be funded from Mr. Van Dyke's disposable income by his salary from TPO. Mr. Van Dyke intends for TPO to move forward with drilling oil and gas prospects, with the first oil and gas prospect being located near Victoria, Texas (the "<u>Adams Prospect</u>"). The Adams Prospect is expected to yield sufficient income to maintain operations of TPO including Mr. Van Dyke's salary.

The Adams Prospect is a directly offsetting extension to an existing oil and gas field. The calculated recoverable reserves are 50.5 billion cubic feet of gas and 881,000 barrels of oil from the Wilcox sands. The Adams Prospect is located on dry farm land. The first well will be drilled to a depth of 12,350 feet as a conventional straight hole.

TPO will be acquiring oil and gas mineral leases on about 1,700 acres.  Mr. Van Dyke expects to sell the Adams Prospect to operators in March 2022, at which time, he expects TPO to be fully reimbursed for its oil and gas mineral lease expense, and to be paid a fee of at least $250,000.  Mr. Van Dyke plans for the operators to carry TPO for a 10% working interest in all wells, which would not require the infusion of capital from TPO or Mr. Van Dyke.  Mr. Van Dyke also plans to be able to sell 25% of TPO's carried working interest for $500,000; TPO would use these proceeds to help pay Mr. Van Dyke's salary and operational expenses until the wells start to provide TPO with revenue.

Mr. Van Dyke anticipates being able to start drilling the first well in early April 2022.  He has been advised it will take about 34 days to drill.  Mr. Van Dyke has also been advised that it should cost $5,742,000 to drill, test and put into production each well on the Adams Prospect. The Adams Prospect is close to intrastate gas with spare capacity.  Mr. Van Dyke has been advised that it should cost $750,000 to lay a pipeline from the field to one of the intrastate gas pipelines. If the first well is deemed to be a commercial discovery, then Mr. Van Dyke is planning to move the drilling rig to another location on the Adams Prospects so a second well could be drilled.  The expectation is that the second well would be start drilling in May 2022.

Assuming the wells are deemed commercial, Mr. Van Dyke expects the first well would be put into production in August 2022, and expects TPO would receive its first revenue from that well in September 2022.  Mr. Van Dyke expects the second well would be put into production in September 2022, and expects TPO would receive its first revenue from that well in October 2022.

Due to the expected size of the Adams Prospect, Mr. Van Dyke anticipate a total of four wells will be required to fully drain the oil and gas reserves.  Mr. Van Dyke expects the third well would start drilling in November 2023, with first revenue from that well being received by TPO in March 2024.  Mr. Van Dyke expects the fourth well would start drilling May 2025, with first revenue from that well being received by TPO in September 2025.

The projections from the Adams Prospect are attached to this Plan as **Exhibit 4**.  Attached as **Exhibit 5** are Mr. Van Dyke's personal projections in support of confirmation of his Plan.

The Subchapter V Trustee shall distribute payment under the Plan following confirmation of the Plan.

## 6.2.    Post-confirmation Management.

The Post-Confirmation Management of the Debtor's affairs shall remain with Scott Van Dyke.

## 6.3.    Risk Factors.

The major risk factor of the Plan is whether the Adams Prospect will produce sufficient revenue to pay Mr. Van Dyke's salary.  Given Mr. Van Dyke's numerous years in oil and gas exploration and production and given the demand for conventional methods of exploration, Mr.

Van Dyke believes that financial projections of the Adams Prospect are relatively conservative and are likely to occur. The projections are based on the oil and gas commodity prices forecast by the New York Mercantile Exchange as reported on October 19, 2021 by the Wall Street Journal. The risks that could affect the Plan include, but are not limited to: the inability to acquire oil and gas mineral leases, lower than expected oil and gas prices, drilling one or more non-commercial wells, flow rates of wells and/or total reserves may not meet calculated values, the inability to sell the Adams Prospect to operators, unplanned operational or environmental issues, unexpected costs, and unexpected timing delays.

**6.4.   Tax Consequences of Plan.**

**Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

**6.4.1.   Taxation Generally.**

This discussion is for informational purposes and does not constitute tax advice. The federal income tax consequence of implementation of the Plan to a holder of a Claim will depend on (i) whether the Claim constitutes a debt or security for federal income tax purposes, (ii) whether the holder of the Claim receives consideration in more than one tax year, (ii) whether the holder of the Claim is a resident of the United States, (iv) whether the consideration received by the holder of the Claim is part of an integrated transaction, (v) whether the holder of the Claim utilizes an accrual or cash method of accounting, and (iv) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The federal, state, and foreign tax consequences of the Plan are complex and in many areas, uncertain, therefore you are urged to consult a Tax Professional. The Estate of the Debtor may incur a capital gain or loss due to the implementation of the Plan. The Debtor will not recognize any income to the extent of forgiveness of debt under this Plan

**VII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

To the best of Mr. Van Dyke's knowledge, he is not a party to any lease agreements and executory contracts; to the extent that he is a party to a lease agreement or executory contract, they are hereby rejected.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## VIII.   CAUSES OF ACTION

### 8.1.   Preferences.

Pursuant to the Bankruptcy Code, the Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of the petition with respect to pre-existing debts, to the extend the transferee received more than it would have in respect to the pre-existing debt had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code.  In the case of "insiders," the Bankruptcy Code provides for a one-year look back preference period.  There are certain defenses these actions such as transfers made in the ordinary course of the Debtor's business.  Additionally, a defense may exist if the transferee extended credit after the transfer.

### 8.2.   Fraudulent Transfers.

Under the Bankruptcy Code and state law, Mr. Van Dyke may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered it insolvent.  Mr. Van Dyke has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  All avoidance actions and rights pursuant to sections 506(c), 510, 542, 544, 545, 549 of the Bankruptcy Code.

## IX.  CONFIRMATION REQUIREMENTS AND PROCEDURES

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1191 and § 1129(a) of the Code.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.  The Bankruptcy Code provides the following requirements in order for a plan to be fair and equitable as to non-accepting classes:

(1) holders of secured claims retain the liens securing their claims, to the extent of the allowed claim and each holder of the claim receive on account of their claim, deferred cash payments totaling at least the allowed amount of the claim, as of the effective date of the plan.

(2) As of the effective date of the plan, the plan provides for all of the projected disposable income of the debtor received in the three year or longer period not to exceed five years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan or the value of the property to be distributed is not less than the disposable income of the debtor.

A.  <u>Who May Vote or Object.</u>

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements of confirmation are not met.  Any insider's vote will not be counted.

Many parties in interest, however, are not entitled to vote or accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if the creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

### 1.   *What is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2.   *What is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.   *Who is NOT Entitled to Vote.*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- Holders of claims and equity interests that have been disallowed by an order of the court;
- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- Holders of claims or equity interests of unimpaired classes;
- Holders of claims entitled to priority pursuant to § 507(a)(2) and (a)(8) of the Code;
- Holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- Administrative expenses.

**Even if you are not entitled to vote on the Plan, you have the right to object to confirmation of the Plan.**

### 4.   *Who can vote in more than one class.*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.   Votes Necessary to Confirm the Plan.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section XIII of the Plan.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements of consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.   Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

Notwithstanding any provision in this plan to the contrary, Mr. Van Dyke commits to make payments of a value not less than required by the preceding paragraph. Mr. Van Dyke proposes to assign to general unsecured creditors his recovery in following financial assets: funds held in State Court Registry, claim against ADE, and his interest in ADE. Holders of General Unsecured Claims will receive significant recoveries under a liquidating high value assumption and no distribution under a low value assumption. Under this Plan, Mr. Van Dyke proposes that Holders of General Unsecured Claims will receive his interest in the significant assets of the estate (totaling $1,331,827.98 utilizing a high value assumption) and also proposes payment totaling $600,000.00 from his future income.

D.   Feasibility.

The Court must find that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.   *Availability to initially fund Plan.*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  If not, Debtor intends to enter into an agreement with the administrative claimants for deferred payments.

> *2. Ability to make future plan payments and operate without further reorganization.*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

Debtor's means for implementation of its Plan is derived from its anticipated income from future operation.

***You should consult with your accountant or other financial advisors if you have any questions pertaining to these projections.***

## X.   VOTING PROCEDURES

### 10.1   Ballots and Deadline to Vote.

A ballot to be used to vote to accept or reject the Plan is enclosed and a creditor entitled to vote must (i) carefully review the ballot and instructions, ii) complete and execute the ballot, (iii) return the executed ballot to the address indicated by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has ordered that in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor no later than _____, 2021 at 5:00 p.m.

### 10.2.   Creditors Entitled to Vote.

Any Creditor whose Claim is impaired under the Plan is entitled to vote if the claim is (i) not scheduled as disputed, contingent or unliquidated, or (ii) the proof of claim was filed before the last date set by the Bankruptcy Court for filing Proofs of Claims and no objection has been filed to the Claim.

Holders of Disputed Claims are not entitled to vote on the Plan.  Any Claim to which an objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor holding the Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan.

Classes of Claims that are not impaired are deemed to have accepted the Plan per section 1126(f) of the Bankruptcy Code and are not entitled to vote.  Only classes of claims or interests that are "impaired" are entitled to vote on a plan; generally, a claim is impaired under a plan of

reorganization if the plan alters the legal, equitable, or contractual rights to which the holder of such claim is entitled.

**10.3.    Vote Required for Accepting Classes.**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests of the class, who vote, casts their votes to accept the Plan.

**10.4.    Cramdown and Withdrawal of the Plan.**

The Debtor reserves the right to withdraw the Plan if the Plan is not accepted by all classes of impaired Creditors.  If the Plan is accepted by one or more Classes of impaired Creditors, the Debtor reserves the right to request the Bankruptcy Court to approve the Plan per section 1129(b) of the Bankruptcy Code.

## XI.    EFFECT OF CONFIRMATION OF THE PLAN

**11.1.    Discharge of Debtor, Injunction, and Vesting of Property of the Estate.**

### 11.1.1. Discharge [if under § 1191(a)].

If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 11.1.2. Discharge [if under § 1191(b)].

If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.  The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Except as expressly provided in the Plan or Confirmation Order, all persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined on or after the Effective Date from (i) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, or its property, with respect to any such Claim, aside from those matters which the Bankruptcy Court specifically lifted the automatic stay[11] (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property with respect to such claim, (iv) asserting any right of subrogation of any kind against any objection due to the Debtor or its property with respect to any such claim, and (v) asserting any right of setoff or recoupment against the Debtor kind against the Debtor.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to section 106, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## 11.2.    Modification of Plan.

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  If the Plan is confirmed under 1191(a), the Debtor may modify the plan at any time after confirmation and before substantial consummation of the plan and in accordance with section 1193 of the Bankruptcy Code.  If the Plan is confirmed under 1191(b), the Debtor may modify the plan at any time within 3 years or longer, not to exceed 5 years, if circumstances warrant such modification after notice and hearing.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## 11.4.    Legally Binding Effect.

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan.  On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## 11.5.    Limited Protection of Certain Parties.

Neither (a) the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtor or (b) each Professional of the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons

---

[11] *See* Dkt. No. 62

employed by any of them (hereinafter, collectively the "Protected Parties"), shall have or incur any liability to any person or entity under any theory of liability for any act or omission occurring on or before the Petition Date in connection or related to the Debtor, or the Debtor's estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including solicitation of acceptances or rejections thereof); or (ii) any contract, instrument, release, or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Parties shall be entitled to rely on good faith upon the advice of counsel.  In any action, suit or proceeding by any person contesting any action or non-action by any Protected Party as constituting willful misconduct, gross negligence or *ultra vires* activity, or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in  the event they fail to prevail.

### 11.6.    Anti-Discrimination Provisions of Bankruptcy Code.

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Debtor or another person with whom the Debtor has been or are associated or affiliated solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor.

### 11.7.    Preservation of Claims and Rights.

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation specifically and unambiguously provide so.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

### 11.8.    Retention of Jurisdiction by Bankruptcy Court.

The Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent as provided by law for the following purposes subsequent to Confirmation of the Debtor's Plan: (i) to determine any and all objections to the allowance and classification of Claims or Interests; (ii) to determine the validity and priority of any Lien; (iii) to determine the Allowed Amount of any Claim, whether secured or unsecured; (iv) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to

determine any and all applications or motions pending before the Court on the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to issue orders in aid of the execution and implementation of the Plan and Confirmation Order; and (ix) to hear and determine matters concerning federal or local taxes.

## XII.   CONFIRMATION OF THE PLAN

### 12.1   Confirmation Hearing.

11 U.S.C. § 1129(a) requires the Bankruptcy Court to hold a hearing on confirmation of the Plan (the "Confirmation Hearing").   The Confirmation Hearing has been scheduled for _____ 2021 at ___:___ ___.m. before the Honorable Christopher M. Lopez in courtroom 401, 515 Rusk, Houston, Texas, 77002.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan; however, an impaired Creditor, who votes to accept the plan, may not have standing to object to the Plan.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and the Local Rules of the Bankruptcy Court. The deadline for filing objections to confirmation of the Plan is _____ p.m. on _____, . Objections to confirmation must be filed with the Clerk of the Court.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

### 12.2.   Post-Confirmation Disbursements.

(a) The Subchapter V Trustee or (their) successor shall act as the Disbursing Agent. The Disbursing Agent shall pay the Allowed Claims under Classes as defined in Paragraph 3.2.2 of the Plan from Disposable Income. Until such time as Allowed Claims under Classes 1-4 are paid in full, Mr. Van Dyke shall remit to the Disbursing Agent monthly all Disposable Income generated for the previous month along with an accounting of how he calculated Disposable Income.

(b) The Disbursing Agent shall then calculate the payments required under the Plan to members of Classes 1-4 holding Allowed Claims and make such distributions accordingly.

(c) The calculations required by the Plan to determine the amount of the distributions to the holders of Allowed Claims and to be reserved for disputed claims shall be made as if all disputed claims were Allowed Claims in the full amount claimed by the holders of Allowed Claims. No payment or distribution shall be made with respect to any claim

to the extent it is a disputed claim unless and until such disputed claim becomes an Allowed Claim.

(d) At such time as any disputed claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the Disputed Claims Reserve account and distributed to other creditors with Allowed Claims pursuant to their pro rata share or, if all Allowed Claims have been paid in full, the funds on reserve on account of a disputed claim that is determined not to be an Allowed Claim shall be returned to the Reorganized Debtor.. The Disbursing Agent shall not be required to withhold funds, designate reserves, or make other provisions for the payment of any claims that have been disallowed by a final non-appealable order.

(e) At such time as a disputed claim becomes an Allowed Claim, the distributions due on account of such Allowed Claim and accumulated in the Disputed Claims Reserve account shall be released and paid to the holder of such Allowed Claim.

(f) The Disbursing Agent shall be compensated for their post-confirmation duties at their normal hourly rate and shall be paid from the quarterly Disposable Income. The amount of Disposable Income distributed or reserved to creditors will be net of the Disposable Income remitted by Mr. Van Dyke to the Disbursing Agent. The Disbursing Agent's fees and expenses shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Disbursing Agent's fees and expenses disclosed therein. If no objection is received, the Disbursing Agent may disburse his fees and expenses from the Disposable Income without further order of the Court.

## XIII.   CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS

### 13.1   Objection Process.

Unless otherwise provided by the Bankruptcy Court, the Debtor shall file and serve all objections to Claims and Equity Interests the later of (i) ninety (90) days after the Effective Date; (ii) the date on which a proof of claim, proof of interest, or request for payment is filed with the Bankruptcy Court; or (iii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

### 13.2   Filing of Claims and Causes of Action.

Debtor reserves the exclusive right to prosecute any and all Claims and Causes of Action of the Debtor and the Estate.

### 13.3   Disputed Claim Reserve.

A Disputed Claims Reserve shall be established by the Debtor for treatment of Disputed Claims and held in a separate bank account from all other funds.  Debtor will deposit into the Disputed Claims Reserve an amount equal to the Pro Rata share of Distribution allocable to such Disputed Claims, in accordance with the distributions as provided for in the Plan, as if such Claims

were Allowed Claims pending a determination of their entitled under the terms of the Plan.  Once the Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Debtor is authorized to pay the Allowed Amount of such Claim from the Disputed Claim Reserve.

**13.4     Distribution to Holders of Disputed Claims.**

Within twenty (20) Business Days after a Disputed Claim is deemed an Allowed Claim , any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  In the event that the Disputed Claim is disallowed in its entirety or reduced in portion, the disallowed or reduced portion of the shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims without further approval.

**13.5     Disallowance of Late Filed Proofs of Claims.**

Except as otherwise provided in the Plan, any proof of claim filed after the Bar Date is hereby disallowed.

**13.6     Distribution Process.**

**13.6.1  Record Date for Claims.**

Record date for Distributions to Allowed Claims under this Plan shall be the date the Bankruptcy Court enters its Order confirming the Plan and Debtor will rely on the claims docket maintain by the Clerk for proof of claims filed in this case.

**13.7.1     Distributions to Holders of Allowed Claims.**

Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or the last known address if no proof of claim was filed, unless Debtor received written notification of a change in address.  If the holder's Distribution is returned undeliverable, it will be treated as a disallowed Disputed Claim as provided in <u>Section 8.4.</u>

**13.8.1     Unclaimed Distributions.**

Debtor will file a notice of undeliverable Distribution with the Bankruptcy Court within thirty (30) days of the returned Distribution.  All claims for undeliverable Distributions must be made no later than forty-five (45) days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims per <u>Section 2.4</u> and the remaining Claim of the holder of the undeliverable Distribution will be discharged and forever barred.

**13.9.1     Undeposited Checks.**

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance.  Distributions with respect to un-negotiated checks will treated per <u>Section 2.4</u> and the remaining Claim of the holder of the unnegotiated check will be discharged and forever barred.

## XIV.   GENERAL PROVISIONS

### 14.1.   Bar Date and Objections to Administrative Claims.

No Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail.  Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtor shall have no liability for payment of any such Administrative Claim.

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the twenty-first (21st) day following the date on which the application was filed.  Any objections will be considered by the Bankruptcy Court.

### 14.2.   Professional Claims.

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash as provided in the Plan Payment Schedule after Bankruptcy Court's approval of the Professional Fee.

### 14.3.   Amendment of the Plan.

The Plan may be amended or modified by the Debtor after the Effective Date but only as appropriate under section 1193 of the Bankruptcy Code.

### 14.4.   Reservation of Claims.

The Debtor reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, to any and all Claims and Causes of Action for relief that the Debtor may have against any director, officer, any insurer under any insurance policy, or any other person or entity. Entry of the Confirmation Order shall not constitute *res judicata* or any bar, estoppel, or inhibit any actions by the Debtor relating to any Claims or Causes of Action.

### 14.5.   Calculation of Dates.

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referred to in the Plan.

### 14.6.   Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law.

### 14.7.   Conflict.

Except as provided for in the Plan, to the extent there are any inconsistencies between the Confirmation Order and the Plan, any other agreement entered into by the Debtor and any third parties, the Plan controls and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

### 14.8.   Setoffs.

The Debtor may but shall not be required to set off against any Claims and payments to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature that the Estate may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor of any such claims it may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Debtor.

### 14.9.   Alternative Means to Confirmation.

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders.  If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11.

### 14.10.   Alternative Plans of Reorganization.

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans.  However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets.  Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

### 14.11.   Liquidation under Chapter 7.

The Debtor does not believe that liquidation under Chapter 7 would be in the best interest of the creditors and the conversion of the case to a case under Chapter 7 would result in the loss of the going concern value of the Debtor as well as the additional administrative expenses attributable to the statutory trustee fees and professional fees for the trustee's professionals.

Dated: December 10, 2021

By:   */s/Scott Vincent Van Dyke*
       Scott Vincent Van Dyke

**TRAN SINGH, LLP**

By:   */s/Susan Tran Adams*
     Susan Tran | TBN: 24075648
     Brendon Singh | TBN: 24075646
     2502 La Branch Street
     Houston Texas 77004
     Ph: (832) 975-7300
     Fax: (832) 975-7301
     STran@ts-llp.com

**ATTORNEYS FOR**
**SCOTT VINCENT VAN DYKE**