## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | Subchapter V |
| Scott Vincent Van Dyke, | Case No. 21-60052 |
| | Christopher M. Lopez |
| Debtor. | |

**BUILDERS WEST, INC.'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11**

[Relates to Doc. No. 86]

TO THE HON. CHRISTOPHER M. LOPEZ
U.S. BANKRUPTCY JUDGE:

Builders West, Inc. ("Builders West"), by and through its undersigned counsel, hereby files this *Objection to the Debtor's Amended Plan of Reorganization under Subchapter V of Chapter 11* (hereinafter, the "Objection"). In support hereof, Builders West respectfully submits the following:

### BACKGROUND

1. On May 25, 2021 (the "Petition Date"), Mr. Scott Vincent Van Dyke (hereinafter "Van Dyke" or "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), with a Subchapter V election. The Debtor's above-styled bankruptcy case ("Case") is pending before the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Court").

2. On September 20, 2021, Builders West timely filed its proof of claim against the Debtor in the amount of $1,062,002.90 ("Claim Amount"). *See* Claim No. 12. The Claim Amount is based on a judgment that was entered in favor of Builders West and against the Debtor, prior to the Petition Date, in Cause No. 2011-54019, *Builders West, Inc. v. Scott Van Dyke* in the 113th

Judicial District Court, Harris County, Texas (the "Lawsuit"). The Lawsuit was based upon the Debtor's breach of his contract with Builders West. The judgment in favor of Builders West was signed by the court on June 9, 2016. *See* Claim No. 12, at Exhibit 1 to Addendum B.

3. On October 29, 2021, the Debtor submitted its proposed *Plan of Reorganization* [Doc No. 66].

4. On December 11, 2021, the Debtor then filed its proposed *Amended Plan of Reorganization* [Doc. No. 86] (the "Plan").[1]

5. As of the date hereof, and pursuant to the *Stipulation Extending Plan Confirmation Deadlines* [Doc. No. 85], the deadline to file an objection to the confirmation of the Plan is December 13, 2021, at 5:00 pm (prevailing Central Time). Additionally, the Court will also conduct a telephonic and video hearing to consider confirmation of the Plan on December 15, 2021, at 1:00 pm (prevailing Central Time).

## OBJECTION

6. The Debtor bears the burden of proving that the Plan satisfies the confirmation requirements contained in Section 1129(a), and, as applicable, the "cramdown" provisions of Section 1129(b). *See, e.g.*, *In re Cypresswood Land Partners, Inc.*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied."). The Plan must be fair and equitable. *In re MCorp Financial, Inc.*, 137 B.R. 219, 225 (Bankr. S.D. Tex. 1992). The Plan must not discriminate unfairly. 11. U.S.C. § 1129(b). The Plan must be in the best interests of creditors. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole

---

[1] All capitalized but undefined terms herein shall have the same meaning as ascribed to in the Plan.

votes to accept the plan."). The Debtor must also show that the Plan is proposed in good faith. *See In re Sandy Ridge Development Corp.,* 881 F.2d 1346, 1353 (5th Cir. 1989). As set forth herein, the Debtor has failed to carry its burden.

### A. The Plan "unfairly discriminates" against General Unsecured Creditors in Class 4 of the Plan, in violation of Sections 1129(b) and 1191(b) of the Bankruptcy Code.

7. While there is no absolute priority rule in a subchapter V case, the Debtor has unfairly discriminated against Class 4 of the Plan under sections 1129(b) and 1191(b) of the Bankruptcy Code. Here, both Class 4 (General Unsecured Creditors) and Class 5 (TPO Guarantees)[2] are both general unsecured creditor classes. However, the classes are being treated differently. Class 5 creditors appear to be receiving 100% of its claim (i.e., being classified as an "unimpaired class"); whereas, Class 4 creditors are receiving pennies to the dollar.

8. Because both classes are similarly situated, there is no reason that Class 4 and Class 5 should be treated differently. For these reasons, the Plan unfairly discriminates against Class 4 and, therefore, should not be confirmed.

### B. The Plan is not "fair and equitable" and, therefore, violates Section 1191(b) of the Bankruptcy Code.

9. In a subchapter V case, a nonconsensual plan cannot be confirmed if it is not fair and equitable. *See In re Pearl Resources LLC*, 622 B.R. 236, 265 (S.D. Tex. 2020) (citing 11 U.S.C. § 1191(b)). For unsecured claims, section 1191 "does not state a 'fair and equitable' rule," but instead "imposes a **projected disposable income requirement**…, which requires a feasibility finding and requires that the plan provide **appropriate remedies** if payments are not made." *See In re Pearl Resources LLC*, 622 B.R. at 265 (emphasis added) (citing 11 U.S.C. § 1191(c)); *see*

---

[2] *See* PLAN, at 19 ("'Class 5 is comprised of TPO lenders claims personally guaranteed by Mr. Van Dyke for which no default exists."). To be clear, "TPO" refers to Texas Petroleum Operations LLC.

Page **3** of **9**

*also* 11 U.S.C. § 1191(d) (defining "disposable income" to mean "the income that is received by the debtor and that is not reasonably necessary to be expended (1) for—(A) the maintenance or support of the debtor or a dependent of the debtor; or (B) a domestic support obligation that first becomes payable after the date of the filing of the petition . . . .").

10. Here, the Debtor has provided a five-year financial projection for both TPO's and his personal income and expenses. According to the Plan, the Debtor anticipates that TPO will drill four wells in connection with the Adams Prospect during course of the five year Plan, in addition to acquiring oil and gas mineral leases on about 1,700 acres. *See* PLAN, at 22-23 ("Sources of Payments"). With the addition of each productive well, the Debtor's source of funds (and presumably Debtor's salary) would naturally increase with time, not decrease.

11. However, despite adding productive wells to the Adams Prospect, TPO's sources of funds and his salary[3] both inexplicably decrease in years four and five. The Debtor, therefore, appears to have failed to commit all of his disposable income to his payment plan as required by Section 1191(c)(2)(B) of the Bankruptcy Code.

12. Due to the defects in the proposed Plan, Builders West further objects to the Plan to the extent that it fails to provide sufficient remedies under the Plan. *See* 11 U.S.C. §

---

[3] The Plan fails to explain the decrease in Debtor's annual salary for the last two years of the Plan. According to the Debtor's 5-Year Projection, the Debtor's annual salary is the following:

| Year | Debtor's Annual Salary |
|---|---|
| 2022 | $ 720,000.00 |
| 2023 | $ 720,000.00 |
| 2024 | $ 840,000.00 |
| 2025 | $ 720,000.00 |
| 2026 | $ 600,000.00 |

1129(c)(3)(B) ("[T]he plan provides appropriate remedies . . . to protect the holders of claims or interests in the event that the payments are not made"). Specifically, the Plan appears to provide a discharge to the debtor "on the completion of all payments due **within the first 3 years** of this Plan or as otherwise provided in § 1192 of the Bankruptcy Code." PLAN, at 23 (emphasis added). Accordingly, and to the extent that Debtor is seeking a discharge after year 3 of the plan, the Plan should be amended so that discharge is not granted until after the last payment in year 5. If the Debtor defaults in year 4, for example, then creditors should be entitled to seek remedies against the Debtor –and a discharge would preclude them from doing so.

**C.  The Plan is not "feasible" as required by Sections 1129(a)(11) and 1191(c)(3)(A)(ii) and, therefore, cannot be confirmed.**

13. Based on the information provided in the proposed Plan (or lack thereof), the Plan is not feasible as required by Sections 1129(a)(11) and 1191(c)(3)(A)(ii) and, therefore, cannot be confirmed. *See* 11 U.S.C. §§ 1129(a)(11) (setting out "feasibility" requirement to confirmation), and 1191(c)(3)(A)(ii) ("[T]here is reasonable likelihood that the debtor will be able to make all payments under the plan"); s*ee also In re Pearl Resources LLC*, 622 B.R. 236, 263 (Bankr. S.D. Tex. 2020) ("Under the feasibility standard, a debtor [in a subchapter v case] must demonstrate that its plan offers a reasonable possibility of success by a preponderance of the evidence. The court need not require a guarantee of success.")). Without more information, Builders West cannot determine if the proposed Plan will be feasible during its projected 5-year plan.

**i.  The Plan fails to adequately explain the "Treatment of Unsecured General Claims (Class 4)."**

14. Builders West objects to the Plan's "Treatment of Unsecured General Claims (Class 4)" because—while the Plan identifies certain interests and proceeds that are assigned to claimholders in Class 4 (*i.e.*, "State Court Registry Funds Litigation . . . . including but not limited

to, the Debtor's funds held in the registry of the Court for the 6st Judicial District of Harris County [and] Debtor's claim for repayment of his loan to ADE")[4]—the Plan fails to explain *when* and *how* such assigned assets will be assigned and liquidated, and *who* will liquidate and make these distributions to Class 4 claimholders. This information is vital as these assigned assets appear to be substantial (i.e., "$1,331,827.98 utilizing a high value assumption").[5]

15. Builders West further objects to the "Pro Rata Cash Payments" to General Unsecured Creditors to the extent that the payments inexplicably decrease in years 4 and 5 of the Plan and therefore, all of the Debtors' disposable income is not being committed to the Plan:

| Months | Monthly Payment |
|---|---|
| Mos 1 - 12 | $ 5,000.00 |
| Mos 13 - 24 | $ 10,000.00 |
| Mos 25 - 36 | $ 20,000.00 |
| Mos 37 - 48 | $ 10,000.00 |
| Mos 49 - 60 | $ 5,000.00 |

*See* PLAN, at 21. The Debtor has failed to explain why payments to General Unsecured Creditors need to decrease for the last two years of the Plan.

16. Without more information, creditors are left to guess at the Plan's feasibility. For these reasons, Builders West requests that additional information be added to the Plan, in order for Class 4 creditors to properly determine if the Plan is feasible.

---

[4] *See* PLAN, at 21.

[5] *See* PLAN, at 27 ("Mr. Van Dyke proposes to assign to general unsecured creditors his recovery in following financial assets: funds held in State Court Registry, claim against ADE, and his interest in ADE. Holders of General Unsecured Claims will receive significant recoveries under a liquidating high value assumption and no distribution under a low value assumption. Under this Plan, Mr. Van Dyke proposes that Holders of General Unsecured Claims will receive his interest in the significant assets of the estate (totaling $1,331,827.98 utilizing a high value assumption) and also proposes payment totaling $600,000.00 from his future income.").

### ii. The Plan fails to adequately explain how the Debtor will handle Class 5 Claims.

17. The Plan also fails to explain how the Debtor will handle the Class 5 claims in the event that TPO defaults on its contractual agreements, and if Class 5 Holders seek to enforce Van Dyke's personal guarantees. Without more information, creditors are left to guess whether the Plan will be feasible in the event that the Debtor must pay these personal guarantees.

18. Without more information, the Plan is not feasible because it does not provide how Class 5 creditors will be paid and, therefore, the Plan cannot be confirmed.

### iii. The Plan fails to adequately explain how the 5-Year Financial Projections.

19. As discussed above, the Debtor has provided a five-year financial projection for both TPO's and his personal income and expenses. Debtor has failed to explain why TPO's sources of funds (despite adding productive wells to the Adams Prospect) and his salary decrease in years four and five. In fact, Debtor has failed to provide sufficient information for creditors to determine whether these amounts are properly supported, except to say that these projections are "Mr. Van Dyke's personal projections." PLAN, at 23.

20. Without more information, creditors are unable to determine whether the Plan complies with the Bankruptcy Code. For these reasons, Builders West requests that additional information be added to the Plan as it relates to TPO's and the Debtor's personal projections, in order for creditors to properly determine whether they are being treated fairly and equitably under the Plan, and if the Plan is feasible.

[*Remainder of Page Left Blank Intentionally*.]

## **CONCLUSION**

**WHEREFORE**, Builders West respectfully requests that the Court deny confirmation of the Plan, and order any such other and just relief to which Builders West may be entitled to receive.

Dated:	December 13, 2021

Respectfully submitted:

*/s/ Dale R. Mellencamp*
DALE R. MELLENCAMP
State Bar No. 13920250
Federal Bar No. 7718
14711 Pebble Bend Drive
Houston, Texas 77068
mellencamp@bairhilty.com
Telephone: (713)862-5599
Facsimile: (713)868-9444

ATTORNEY FOR BUILDERS WEST, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the December 13, 2021, a copy of the foregoing instrument was served on the parties entitled to receive notices through the Court's electronic notification system as permitted by the Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

/s/ *Dale R. Mellencamp*
DALE R. MELLENCAMP

12288383.1