IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| In re:<br><br>Scott Vincent Van Dyke<br><br>Debtor. | §<br>§   Subchapter V<br>§<br>§   Case No. 21-60052<br>§<br>§   **Christopher M. Lopez** |

### DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 7

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THIS MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THAT THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED; IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**To the Honorable Christopher M. Lopez:**

Mr. Scott Vincent Van Dyke (hereinafter "Van Dyke" or "Debtor"), Debtor-in-Possession, by and through his counsel, who hereby files this motion (the "Motion") to convert his Chapter 11 Subchapter V bankruptcy to Chapter 7. In support thereof, Mr. Van Dyke would show as follows:

### SECTION I
### JURISDICTION & VENUE

1.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. Section 157 and Section 1334. This Motion is a core proceeding pursuant to 28 U.S.C. Section 157(b). Venue is proper pursuant to 28 U.S.C. Section 1408 and 1409.

## SECTION II
## STATEMENT OF THE CASE

2. Van Dyke filed a voluntary petition for relief on May 25, 2021 (the "Petition Date") under Chapter 11 of Title 11, United States Code 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") with a Subchapter V election. The Debtor's case is pending before the United States Bankruptcy Court for the Southern District of Texas, Victoria Division.

3. Melissa Haselden was appointed Subchapter V Trustee.

4. The meeting of creditors was concluded on June 22, 2021.

5. Mr. Van Dyke filed his amended Subchapter V plan (the "Plan") on December 11, 2021 which is currently set for confirmation on January 31, 2022. Several creditors of the estate, Michael Noel, Builder's West, Inc., and Eva Engelhart, Chapter 7 Trustee for Anglo-Dutch Petroleum International, Inc., on behalf of creditors Littlemill Limited, Andrea Lore, Prosperity Settlement Funding, Inc. (collectively, the "Creditors"), filed objections to confirmation of the Plan on December 13, 2021.

## SECTION III
## BACKGROUND

### A. Limited Income During Pendency of Bankruptcy

6. As of the Petition Date, Mr. Van Dyke was employed and continues to be employed as the chief executive officer of his company, Texas Petroleum Operations, LLC ("TPO"). Mr. Van Dyke been engaged in the business of oil and gas exploration for over 25 years and has held ownership interests in several businesses whose primary focus has been oil and gas exploration and production. Mr. Van Dyke scheduled anticipated income from TPO and another entity which he held a majority ownership interest in, Anglo-Dutch Energy, LLC ("ADE"), and family support. *See* Dkt. No. 27, p. 53-54. Specifically, income of $1,650.00 per month was anticipated by Mr. Van Dyke from ADE, $34,415.00 per month from TPO, and family support payments of

$17,850.00. *See Id*. The income that Mr. Van Dyke anticipated through the pendency of his case did not come to fruition and Mr. Van Dyke has had to rely solely on family support; ADE had also filed for Chapter 11 Subchapter V on April 23, 2021, case number 21-60036 in the Southern District of Texas, Victoria Division, and eventually converted to Chapter 7 as it lost a majority of its value through the foreclosure of its interest in several wells in Iberville Parish, Louisiana. Additionally, Mr. Van Dyke anticipated generating income from TPO from oil and gas exploration and production but that income was never realized.

7. The monthly operating reports filed by Mr. Van Dyke demonstrate the sporadic and lack of income generated. The disbursements made by the estate also demonstrate the inability of Mr. Van Dyke to pay necessary living expenses and post-petition obligations of the estate.

| Reporting Month | Income from All Sources | Disbursements |
|---|---|---|
| May & June 2021 | $31,500.00 | $27,915.11 |
| July 2021 | $2,000.00 | $5,602.06 |
| August 2021 | $564.93 | $865.91 |
| September 2021 | $2,584.28 | $2,644.16 |
| October 2021 | $24,000.00 | $22,950.18 |
| November 2021 | $600.00 | $1,387.55 |
| December 2021 | $1,300.00 | $892.74 |

B. **Cash Projections and Operational Contingencies**

8. Mr. Van Dyke been engaged in the business of oil and gas exploration for over 25 years and has held ownership interests in several businesses whose primary focus has been oil and gas exploration and production prospecting and drilling. Since the Petition Date, Mr. Van Dyke

has been diligently working researching and analyzing an oil and gas prospect near the prospect of drilling a field located in Victoria, Texas (the "Adams Prospect"). The Adams Prospect is located on dry ranch land. Based on Mr. Van Dyke's analysis, the Adams Prospect is expected to yield 50.5 billion cubic feet of gas and 881,000 barrels of oil through the drilling of four wells. Mr. Van Dyke intends on exploring the Adams Prospect through his entity, Texas Petroleum Operations, LLC ("TPO"). The primary source of funds to implement the Plan was Mr. Van Dyke's salary through his entity, Texas Petroleum Operations, LLC, as oil and gas operator for the Adams Prospect.  Attached to the Plan was the five-year projections of TPO which includes income exclusively projected from oil and gas production from the Adams Prospect. Mr. Van Dyke originally estimated that the gross income to TPO would total $7,474,515.40 over five years, and estimated that during the five years it will cost $7,402,843.36 to run TPO and to pay Mr. Van Dyke's salary so he can make the payments under the Plan. Several contingencies exist in order for Mr. Van Dyke to put the Adams Prospect into production, many of which were discussed in the objections to confirmation filed by the Creditors.

9.     The success of the Adams Prospect relies on several financial contingencies which include raising roughly $300,000 to procure oil and gas mineral leases, and raising approximately $6,500,000 to drill, test, complete, and put into production the first well on the Adams Prospect. Mr. Van Dyke expects three more wells will be necessary to fully produce the Adams Prospect. The three additional wells are estimated to costs $5,742,000 each to drill and put into production. To raise the required capital (being approximately $24,026,000) from investors or oil companies to lease, drill 4 wells, and to put the Adams Prospect into full production, Mr. Van Dyke would be willing for TPO to be carried for a 10% working interest in all of the wells. With a 10% carried interest in all of the wells, Mr. Van Dyke would avoid having to infuse additional capital.

However, through the date of this Motion, Mr. Van Dyke has been unable to obtain financial commitments from potential investors or oil companies to provide capital towards the Adams Prospect.

10. The two other obvious contingencies of the Plan are whether the Adams Prospect will yield sufficient oil and gas from the drilling of the four wells and the future prices for oil and gas. If the first well does not produce sufficient income or if it is a dry hole, Mr. Van Dyke will be unable to fulfill the remaining terms of the Plan. The success of the Plan is contingent upon the commercial success of all four wells; the drilling of each subsequent well is contingent upon the commerciality of each previous well. The five-year TPO projections in the Plan are based upon the NYMEX oil and gas futures forecast dated October 21, 2021, attached as **Exhibit 1**. However, since October 21, 2021, oil and gas prices have fallen. Based on the NYMEX forecast dated December 30, 2021, the lower oil and gas prices significantly reduce the five-year income forecast for TPO. Based on the December 30, 2021 NYMEX oil and gas forecast, the projected income for each of the last 24 months of the Plan will be insufficient to pay both TPO's monthly operating costs and to pay Mr. Van Dyke a salary sufficient for him to make the payments due under the Plan. Attached as **Exhibit 2** are the revised five-year TPO projections utilizing the NYMEX oil and gas forecast as of December 30, 2021.

C. **Status of Litigation Matters**

11. *The Fraudulent Transfer Litigation*. Intra-related transfers by several entities owned by Mr. Van Dyke became subject of litigation commenced by investors, Robert M. Press, Prosperity Settlement Funding, Inc., and Anzar Settlement Funding, Corp. (the "Hagans Creditors"). The Hagans Creditors brought breach of contract claims against Mr. Van Dyke's entities and Mr. Van Dyke arising from investments contracts in which the Hagans Creditors

invested funds while several of Mr. Van Dyke's entities were involved in litigation with Haliburton; these claims were initially brought in state court but later removed to the United States Bankruptcy Court for the Southern District of Texas based on the bankruptcy filing of one of the entities, Anglo Dutch Petroleum International, Inc ("ADPI"). Eva Engelhart was appointed Chapter 7 Trustee for the ADPI estate and has asserted these claims against Mr. Van Dyke and ADE. The Fraudulent Litigation matter was later removed from bankruptcy court to the United States District Court for the Southern District of Texas before Judge Vanessa Gilmore, case number 4:19-cv-02894. On July 7, 2021, this Court lifted the automatic stay in order for the Fraudulent Transfer Litigation to proceed where Judge Gilmore granted the motion for summary judgment of Trustee Engelhart, on behalf of the Hagans Creditors (*See* Dkt. No. 58 Notice of Entry of Order on Summary Judgment). In sum, Judge Gilmore found that all the transfers violated §24.006(a) of the Texas Business and Commerce Code and granted the motion for summary judgment seeking monetary damages in the amount of $31,665,957.83 jointly and severally against Mr. Van Dyke, ADE and Anglo-Dutch (Tenge) LLC. Attached as **Exhibit 3** is the Motion for Summary Judgment filed by Trustee Engelhart in 4:19-cv-02894 and attached **Exhibit 4** is the judgment entered by Judge Gilmore.

12. *State Court Registry Funds Litigation.* The Hagans Creditors initially filed suit against Mr. Van Dyke and several of his entities demanding the repayment of their investments triggered by the settlement payment by Halliburton. Concurrent with the lawsuit demanding repayment, Mr. Van Dyke's entities filed suit against one of their previous counsel related to the Halliburton lawsuit who in turn counter sued and initially prevailed, but eventually was overturned when the Texas Supreme Court ruled in favor of Mr. Van Dyke's entities. Mr. Van Dyke's entities subsequently appealed and Mr. Van Dyke and his entities deposited approximately $1.85 million

dollars in the state court registry for the 61st Judicial District of Harris County for a supersedeas bond. This matter was removed to the United States District Court for the Southern District of Texas based upon the bankruptcy filing of ADPI before Judge Vanessa Gilmore, case number 4:19-cv-2894. As of February 10, 2021, $1,329,320.87 remain in the registry of the 61st Judicial District of Harris County and the primary dispute is ownership to these remaining funds. As this Court lifted the automatic stay[1] in order for this litigation to proceed, Judge Gilmore has entered a judgment invoking the doctrine of abstention and remanded the matter to the 61st Judicial District of Harris County. Attached as **Exhibit 5** judgment remanding the State Court Registry Litigation to state court. A status conference is currently scheduled in the 61st Judicial District of Harris County for January 13, 2022.

13. *Noel Breach of Contract*. Michael Noel ("Noel"), creditor of the estate, filed a motion to lift the automatic stay in order to proceed with a breach of contract suit filed in the 127th Judicial District of Harris County, Texas, styled *Michael Noel et al. v. Scott Van Dyke, et al.*, case number 2018-34037 (the "Noel Lawsuit"). Noel and Mr. Van Dyke were able to reach an agreement as to the claims related to the Noel Lawsuit by allowing Noel's claim of $998,413.14 on account of a $500,000.00 promissory note, representing unpaid principal, interest, and attorneys' fees. Noel also filed a complaint to except his debt from discharge on August 23, 2021, Adv. Case number 21-06008; Mr. Van Dyke filed his answer to the complaint on September 24, 2021.

## SECTION IV
## RELIEF SOUGHT & LEGAL AUTHORITIES

14. Based on the lack of income and drop in oil and gas prices, Mr. Van Dyke requests the voluntary conversion of his Chapter 11 Subchapter V case to Chapter 7 as he does not believe

---

[1] *See* Docket No. 34

7

it is possible for him to reorganize under the Plan. A debtor may convert a case to a case under Chapter 7 unless (1) the debtor is not a debtor in possession; (2) the case was originally commenced as an involuntary case; or (3) the case was converted to a case under Chapter 11 other than on the debtor's request. 11 U.S.C. § 1112(a). The Bankruptcy Code identifies sixteen non-exclusive examples of cause to convert a case. 11 U.S.C. § 1112(b)(4). Cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *Id.* A loss is "substantial" if it is "sufficiently large given the financial circumstances of the debtor as to materially negatively impact the bankruptcy estate and interests of creditors. *In re TMT Procurement Corp.*, 534 B.R. 912, 919 (Bankr S.D. Tex. 2015). A substantial loss may be satisfied by "demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the order for relief." *Id.* At 918. Since the Petition Date, Mr. Van Dyke's estate has experienced negative cash flow due to the lack of operations of ADE and TPO. Although Mr. Van Dyke has been working towards putting the Adams Prospect into motion, he has been unable to secure contracts and investments to commence the project in order to bring money into the estate. Based on the prevailing market prices of oil and gas, even if Mr. Van Dyke were able to obtain funding to drill and produce the Adams Prospect, the anticipated income will not be enough to pay Mr. Van Dyke's a salary sufficient to fund the Plan.

### *Conversion versus Dismissal is Appropriate.*

15.   Creditors of the estate will benefit from conversion of this case versus dismissal of the case. Courts consider multiple factors in assessing whether the interests of the debtor and creditors would be better served by conversion. *In re Tx. ECM Mgmt.,* 2012 WL 627844, at *3 (Bankr S.D. Tex. Feb. 24, 20212). Such factors include (1) the economy and efficiency of

administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors are able to work out a more cost effective out of court arrangement; (6) whether state law insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start a new process in bankruptcy; and (7) the purpose for which bankruptcy jurisdiction has been sought. *Id.* In applying these factors, conversion versus dismissal is more appropriate. While conversion is not an absolute right, cause exists to convert Mr. Van Dyke's case to Chapter 7 and it is in the best interest of his estate. *See Monroe Bank & Trust v. Pinnock,* 349 B.R. 493 (Bankr. E.D. Mich. 2006). Administration of Mr. Van Dyke's estate through a Chapter 7 liquidation would be economical and efficient to provide distributions to the estate's creditors. Although Mr. Van Dyke does not current regular income in order to confirm a feasible Chapter 11 Plan, Mr. Van Dyke does have interests in several entities and his interest in the funds deposited in the registry of the 61st Judicial District of Harris County that creditors will receive distributions from the sale of these assets. *See In re Brogdon Inv. Co.*, 22 B.R. 546 (Bankr.. N.D. Ga. 1982) (Chapter 11 case will be converted to Chapter 7 where there are substantial assets that the trustee may be able to uncover and recover assets to which the creditors may be entitled being in the best interest of the estate).

16. Virtually all litigation matters involving Mr. Van Dyke's estate have been reduced to judgment or settlement. The remaining litigation involves the estate's claim to the funds held in the registry of the 61st judicial district of Harris County, Texas, which Mr. Van Dyke agreed to assign for the benefit of unsecured creditors of the estate through the Plan, to the extent that he is entitled to the registry funds. If Mr. Van Dyke were to prevail in the State Court Registry Funds

9

case, upon conversion of the case to Chapter 7, *all* unsecured creditors of the estate would entitled to distributions from the State Court Registry Funds Litigation and if the case is dismissed, only the Hagans Creditors would receive payment.

17. The primary purpose of seeking bankruptcy relief was to reorganize the financial affairs of Mr. Van Dyke and as the ability to reorganize has proved to be virtually impossible, Mr. Van Dyke seeks to liquidate through Chapter 7 in order to achieve a fresh start. A central purpose of the Bankruptcy Code is to provide a procedure by which "certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (citing *Local Loan Co. v. Hunt,* 292, 244 U.S. (1934)). Mr. Van Dyke has compiled with all applicable provisions of the Bankruptcy Code and all duties as a debtor in possession and has filed this case in good faith, however, based on the overwhelming challenges before him, he believes it is in the best interest of his estate to convert his case to Chapter 7.

Wherefore, Scott Vincent Van Dyke, respectfully requests that this Court convert his Subchapter V case to one under Chapter 7 and for all other equitable relief to which he may be entitled.

Dated: January 11, 2022

**TRAN SINGH, LLP**

By: */s/Susan Tran Adams*
Susan Tran | TBN: 24075648
Brendon Singh | TBN: 24075646
2502 La Branch Street
Houston Texas 77004
Ph: (832) 975-7300
Fax: (832) 975-7301
STran@ts-llp.com

10

## CERTIFICATE OF SERVICE

      I hereby certify that on January 11, 2022, the following parties on the attached Service List were served a true and correct copy of the foregoing via U.S. First Class Mail.

                                            */s/Susan Tran Adams*
                                            Susan Tran Adams