IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTT VINCENT VAN DYKE | § | Case No. 21-60052 |
| | § | |
| Debtor. | § | Chapter 7 Case |
| | § | |

**MOTION TO CONFIRM ABSENCE OF THE AUTOMATIC STAY**

> **This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule. Represented parties should act through their attorney. There will be a hearing on this matter on June 21, 2022 at 10:00 a.m. in 312 S. Main, Victoria, TX 77901.**

Eva S. Engelhart ("Engelhart"), in her capacity as Chapter 7 Trustee of Anglo-Dutch Petroleum International, Inc. ("ADPI"), files this *Motion To Confirm Absence of the Automatic Stay* (the "Motion"). In support of the Motion, Engelhart shows as follows:

### I. Background

1. On May 25, 2021 (the "Petition Date"), Scott Vincent Van Dyke ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing a chapter 11 case with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"). Said bankruptcy filing occurred about one month after the Debtor placed his company Anglo-Dutch Energy, L.L.C. ("ADE") into bankruptcy in Case No. 21-60036 (also pending in this Court). However, these most recent filings and related litigation are not the first time Debtor and his related entities have faced or been involved in judicial proceedings.

### A.  The Texas State Court Breach of Contract and Registry Funds Litigation

2. In 2004, Littlemill Limited, Prosperity Settlement Funding, Inc., Robert M. Press[1] and Anzar Settlement Funding Corp. ("Investors") brought breach of contract claims in Texas state court against ADPI and another Debtor-related entity, Anglo-Dutch (Tenge), LLC ("ADT"). Those claims arose out of investment contracts under which Investors invested money in ADPI and ADT. Debtor—ADPI and ADT's President and majority owner—solicited Investors (and others) to make those investments so ADPI and ADT could stay in business while litigation with Halliburton Energy Services, Inc. ("Halliburton") was ongoing. Those investments enabled ADPI and ADT to stay in business and negotiate a $51 million settlement with Halliburton.

3. The Halliburton settlement triggered ADPI's and ADT's obligations to pay the Investors per their contracts. They have refused to do so. That refusal has spawned eighteen years of litigation. During that time, Investors have obtained long-since final judgments and turnover orders against ADPI and ADT.

4. Also in 2004, ADPI and ADT sued their lawyer Gerard Swonke ("Mr. Swonke") in a Texas state court (the "Texas State Court") in a fee dispute (the "Swonke Litigation"). Mr. Swonke counterclaimed. In 2007, the Texas State Court rendered judgment in favor of Mr. Swonke awarding him almost $2,000,000.

5. ADPI and ADT sought to appeal the Texas State Court judgment without posting a supersedeas bond. They filed affidavits swearing they had negative net worth. An evidentiary hearing was held. The Texas State Court struck the affidavits, finding them "unreliable and not credible." That Court also found ADPI, ADE and Debtor were alter egos, and that ADPI

---

[1] Mr. Press has since passed away. Andrea Lore, Individually and In Her Capacities As Co-Executor of the Estate of Robert M. Press, Deceased and As Co-Trustee of the Lorraine Press Supplemental Care Trust, was substituted as a Plaintiff in place of Mr. Press.

2

fraudulently transferred almost $20,000,000 to ADE and Debtor "with the actual intent to hinder, delay, or defraud."

6. Ultimately, ADPI and ADT deposited almost $2 million into the Texas State Court's registry to supersede Mr. Swonke's judgment (the "Registry Funds"). ADE and Debtor, the recipients of the fraudulent transfers, signed insider (and ultimately unenforceable) "loan agreements" with ADPI under which they purportedly loaned those funds to ADPI for deposit into the Texas State Court's registry.

7. The Texas Supreme Court reversed Mr. Swonke's judgment and remanded the case for trial. Investors intervened after remand. They filed motions arguing that the supersedeas deposits or Registry Funds were ripe for disbursement to satisfy Investors' judgments because Mr. Swonke's judgment had been reversed. The Honorable Al Bennett—then-presiding judge of the Texas State Court—instructed Investors to obtain turnover orders from the courts in which they obtained their judgments:

> Why didn't you go back to the original court where you have the judgment, alert them that these funds were in the registry of the court, and say, "Okay. We've located some funds that should be subject to turnover. We want them. We want you to issue an order that when they come back into the possession of the judgment debtor [ADPI and ADT], that they be turned over to us or we get them?"
>
> \*     \*     \*
>
> And then, secondly, if you are, in fact, a judgment creditor with an outstanding judgment entitled to funds that are going to go back into the hands of the judgment debtor [ADPI and ADT], and you are standing in my courthouse door with an order from another court saying, "Give me these funds," so be it. You'll have them.

8. Investors did as Judge Bennett instructed. They obtained turnover orders (the "Turnover Orders") providing that "all Registry Funds (i) ordered released or disbursed to ADPI or ADT, (ii) available for release or disbursement to ADPI or ADT or (iii) otherwise released or

3

disbursed to ADPI or ADT shall be 'turned over' or paid" to reduce or secure Investors' judgments. The Turnover Orders are final on appeal, compliant with Texas law and fully enforceable.

9. Thereafter, the Texas State Court rendered a new judgment disposing of Mr. Swonke's case. The second judgment awarded Mr. Swonke less than the first judgment. After all appeals were final, the Texas State Court released $836,004.20 from the supersedeas deposit to pay Mr. Swonke's new judgment. That left $1,268,584.03 in the registry.

10. On February 11, 2019, Debtor—presumably to trigger an automatic stay to preclude the remaining Registry Funds from being released to Investors as ordered by the Texas State Court—filed for Chapter 7 bankruptcy protection on behalf of ADPI. After ADPI filed for bankruptcy, Eva S. Engelhart ("Engelhart") was named Chapter 7 Trustee for ADPI's bankruptcy estate.

11. On June 24, 2019, Investors filed a Notice of Removal to the Bankruptcy Court. Then, on July 8, 2019, ADE and Debtor filed a Motion for Withdrawal of the Reference to bankruptcy, which Judge Vanessa Gilmore granted.

12. On February 3, 2020, the Investors filed a Third Amended Complaint in the U.S. District Court seeking a judgment ordering the Texas State Court to release or disburse all remaining Registry Funds to Investors. On January 20, 2021, the Investors filed their Motion for Summary Judgment in the now-removed case (the "Swonke Motion for Summary Judgment").

13. As of the Petition Date, the Swonke Litigation was set for trial on an unspecified date in July 2021, and the Swonke Motion for Summary Judgment was ripe for resolution by the federal district court.

### B. The Fraudulent Transfer Litigation

14. Because ADPI and ADT did not have the money to pay Investors' judgments because their funds had been fraudulently transferred to ADE and Debtor, Investors filed fraudulent transfer lawsuits against ADE and Debtor in Texas state courts (the "Fraudulent Transfer Litigation"). Investors identified three transfers from ADPI to ADE or Debtor totaling approximately $20,000,000 (the "Transfers") that were fraudulent transfers violative of the Texas Uniform Fraudulent Transfer Act set forth at Chapter 24 of the Texas Business and Commerce Code ("TUFTA") as a matter of law. Each Transfer occurred when ADPI forgave large loans from ADPI to ADE or Debtor.

15. While arising from the Transfers, the Fraudulent Transfer Litigation began as three adversary proceedings originally removed from Harris County district courts to the United States Bankruptcy Court for the Southern District of Texas in the ADPI Chapter 7 case. As in the Swonke Litigation, on June 24, 2019, Engelhart and Investors filed a Notice of Removal to the Bankruptcy Court. Then, on August 2, 2019, the District Court granted the Motion for Withdrawal of Reference filed by ADE and the Debtor. On January 20, 2021, Engelhart filed her Motion for Summary Judgment before the U.S. District Court. (the "Trustee Motion for Summary Judgment").

16. As of the Petition Date, the Fraudulent Transfer Litigation was set for trial on an unspecified date in July 2021. The Trustee Motion for Summary Judgment was ripe for resolution by the federal district court.

### C. Proceedings in the Debtor's Bankruptcy Case

17. Therefore, when Debtor initiated this bankruptcy case, he and his related entities faced dispositive motions in the Fraudulent Transfer Litigation and the Swonke Litigation before the U.S. District Court.

5

18. In light of these pending cases, Englehart filed her *Motion of Eva Engelhart, as Chapter 7 Trustee of the Estate of Anglo-Dutch Petroleum International, Inc., Littlemill Limited, Prosperity Settlement Funding, Inc., Andrea Lore, Individually and in her Capacities as Co-Executor of the Estate of Robert M. Press, Deceased and as Co-Trustee of the Lorraine Press Supplemental Care Trust and Anzar Settlement Funding Corp. for Relief From Stay* ("Lift Stay Motion"). Dkt. No. 16. The Lift Stay Motion sought to lift the automatic stay to proceed with the Swonke Litigation and the Fraudulent Transfer Litigation pending in federal district court.

19. This Court first took up the Lift Stay Motion on July 7, 2021. In an oral ruling, this Court granted the Lift Stay Motion, but in a limited capacity to "remove any procedural hurdles" *See Order Granting Motion of Eva Engelhart, as Chapter 7 Trustee of the Estate of Anglo-Dutch Petroleum International, Inc., Littlemill Limited, Prosperity Settlement Funding, Inc., Andrea Lore, Individually and in her Capacities as Co-Executor of the Estate of Robert M. Press, Deceased and as Co-Trustee of the Lorraine Press Supplemental Care Trust and Anzar Settlement Funding Corp. for Relief From Stay*, Dkt. No. 34 (the "Limited Order").

20. Following the issuance of the Limited Order, the Swonke Litigation and the Fraudulent Transfer Litigation were both allowed to proceed, resulting in orders granting Trustee and Investors' Motion for Summary Judgment in the Texas State Court (the Swonke Litigation was remanded back to the Texas State Court) and the Trustee Motion for Summary Judgment. *See Notice of Entry of Order on Motion for Summary Judgment*, Dkt. No. 58; *Notice of Entry of Order on Motion for Summary Judgment*, Dkt. No. 59. Englehart received a *Final Judgment* in the Fraudulent Transfer Litigation awarding $19,539,546.23 in actual damages, $678,379.55 for attorneys' fees, and $11,448,032.05 for prejudgment interest. *See Final Judgment*, No. 4:19-cv-02894, Dkt. No. 74 (S.D. Tex. Nov. 10, 2021) (the "Final Judgment"). The Final Judgment

6

specified that this award shall be recovered from Debtor, ADE, and ADT jointly and severally with post-judgment interest.

21. Then, following a hearing on October 15, 2021, this Court entered its *Order Lifting the Automatic Stay* on October 16, 2021, which lifted the automatic stay provisions provided by 11 U.S.C. § 362 with respect to the Swonke Litigation and the Fraudulent Transfer Litigation. Dkt. No. 61 ("Lift Stay Order"). The Court stated on the record that "the stay is lifted for all purposes to allow [Engelhart] to proceed . . . ." *Transcript of Hearing*, Oct. 15, 2021, at 9:16.

22. On January 11, 2022, the Debtor filed his *Debtor's Motion to Convert Case to Chapter 7*, and the Court so converted the case on January 31, 2022. *Order Converting Case to Chapter 7*, Dkt. No. 129.

## II. Relief Requested

23. Through this Motion, Engelhart, for the avoidance of doubt and out of caution and respect for this Court, seeks affirmation and/or clarification of the status of the automatic stay relative to Debtor's bankruptcy case. Particularly, Engelhart seeks to confirm the absence of the automatic stay, so that she may proceed in effectuating and enforcing the Final Judgment.

24. Specifically, Engelhart intends to enforce the Final Judgment through an action in a Texas state court to implement a constructive trust, and any assets or funds recovered by Engelhart for the benefit of the ADPI bankruptcy estate in connection with the foregoing proposed litigation shall be administered by Engelhart and will not be administered by the Trustee (Catherine Curtis) for the Van Dyke bankruptcy estate. Engelhart also agrees that any funds recovered from an administration of assets, including a settlement under 9019 approved by the bankruptcy court, in a matter brought by the Trustee (Catherine Curtis) shall be paid to the Van Dyke bankruptcy estate and disbursed in the ordinary course and in accordance with Trustee Curtis's duties and in

accordance with the Bankruptcy Code, subject to any judgment or order that the Trustee Curtis, or any party in interest, is able to obtain. Engelhart intends to enforce the Final Judgment through an action in a Texas state court to implement a constructive trust.

### III. Basis for Relief

25. The impetus of this Motion is the slight demarcation between 11 U.S.C. 362(a)(1) and 11 U.S.C. § 362(a)(2).

26. Section 362(a)(1) of the Bankruptcy Code prohibits "the commencement or continuation . . . [of an] action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). Going one step further, Section 362(a)(2) of the Bankruptcy Code extends the automatic stay to prevent the enforcement of a judgment obtained against the debtor or against property of the estate. 11 U.S.C. § 362(a)(2). Section 362(d)(1) of the Bankruptcy Code, however, provides that a Court shall terminate, annul, modify, or condition the automatic stay if the party seeking relief demonstrates cause. 11 U.S.C. § 362(d)(1).

27. In issuing its Limited Order on July 7, 2021, this Court found that cause had been demonstrated, but exercised its discretion merely to modify the automatic stay "to remove any procedural hurdles.[,]" and expressly did not intend "for folks to start filing things in other courts . . . ." *See Transcript of Hearing*, Jul 7, 2021, at 8:8,16. In a sense, this Court modified the automatic stay relative to Section 362(a)(1), allowing "the continuation . . . of an action or proceeding against the debtor[,]" but nothing more.

28. However, months later on October 15, 2021, and following a ruling on the Trustee Motion for Summary Judgment, this Court entered the Lift Stay Order. The Lift Stay Order provided that "[t]he automatic stay provisions provided by 11 U.S.C. § 362 are hereby lifted with respect to the [Swonke Litigation and the Fraudulent Transfer Litigation] and all parties thereto . .

. ." Dkt. No. 61. The Court explained further that "the stay is lifted for all purposes to allow [Engelhart] to proceed . . . ." *Transcript of Hearing*, Oct. 15, 2021, at 9:16.

29. In Englehart's view, the Lift Stay Order terminated the automatic stay completely, and for all purposes relative to the Final Judgement and the Fraudulent Transfer Litigation. Specifically, the Lift Stay Order encompassed not only a termination of the automatic stay relative to Section 362(a)(1), but terminated the stay *in toto*—including, but not limited to, Section 326(b)(2)—with respect to the Swonke Litigation and the Fraudulent Transfer Litigation pending in federal district court.

30. The Court undoubtedly possesses the authority to allow enforcement of a judgment obtained against the Debtor. *See In re Wolf Mt. Resorts L.C.*, No. 2:11-bk-30162, 2011 LEXIS 2970 (Bankr. C.D. Cal. Aug. 8, 2011) (court modified its previous order, which only granted stay relief to continue litigation, to allow enforcement of judgment with respect to setoff or recoupment rights).

## IV.  Prayer

31. Wherefore, Englehart prays this court (i) confirm, for the avoidance of doubt, that the automatic stay granted by Section 362(a) of the Bankruptcy Code was terminated by the Lift Stay Order therefore allowing Englehart to enforce the Final Judgment in state court, and (ii) grant such other relief as may be just and proper.

Dated:  May 27, 2022

Respectfully submitted,

HAGANS MONTGOMERY HAGANS

*/s/ William Fred Hagans*
William Fred Hagans
Texas State Bar No. 08685500
fhagans@hagans.law
Carl D. Kulhanek, Jr.
Texas State Bar No. 11761850
ckulhanek@hagans.law
3200 Travis, Fourth Floor
Houston, Texas 77006
Telephone: 713-222-2700
Facsimile: 713-547-4950

-and-

NORTON ROSE FULBRIGHT US LLP

William R. Greendyke (SBT 08390450)
Julie Goodrich Harrison (SBT 20492434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

**ATTORNEYS FOR EVA S. ENGELHART, CHAPTER 7 TRUSTEE, LITTLEMILL LIMITED, PROSPERITY SETTLEMENT FUNDING INC., ANDREA LORE, INDIVIDUALLY AND IN HER CAPACITIES AS CO-EXECUTOR OF THE ESTATE OF ROBERT M. PRESS, DECEASED AND AS CO-TRUSTEE OF THE LORRAINE PRESS SUPPLEMENTAL CARE TRUST AND ANZAR SETTLEMENT FUNDING CORP.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 25, 2022, I conferred with the Chapter 7 Trustee regarding the relief requested in this Motion. The Chapter 7 Trustee does not oppose the relief requested in this Motion.

*/s/ William R. Greendyke*
William R. Greendyke

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 27, 2022, a true and correct copy of the foregoing Motion was served upon the counsel and parties of record electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service and on those parties listed below:

| | |
|---|---|
| Scott Van Dyke<br>1515 South Boulevard<br>Houston, TX 77006<br><br>Anglo-Dutch Energy, LLC<br>c/o Scott Van Dyke<br>P.O. Box 22322<br>Houston, TX 77227<br><br>Jett Williams III<br>HENKE,WILLIAMS & BOLL, LLP<br>2929 Allen Parkway, Suite 3900<br>Houston, Texas 77019<br>JWilliams@HenkeLawFirm.com<br><br>Timothy L. Wentworth<br>OKIN ADAMS LLP<br>1113 Vine St., Suite 240<br>Houston, Texas 77002<br>twentworth@okinadams.com<br><br>Melissa A. Haselden<br>Haselden Farrow PLLC<br>Pennzoil Place<br>700 Milam, Suite 1300<br>Houston, TX 77002<br><br>Travis C. Badger<br>Badger Law PLLC<br>3400 Avenue H, Second Floor<br>Rosenberg, Texas 77471<br>bkcy@badgerlawoffice.com | Wayne Kitchens<br>HUGHESWATTERSASKANASE,LLP<br>1201 Louisiana, 28th Floor<br>Houston, Texas 77002<br>wkitchens@hwa.com<br><br>Susan Tran Adams<br>Brendon Singh<br>TRAN SINGH, LLP<br>2502 LaBranch St.<br>Houston, Texas 77004<br>stran@ts-llp.com<br>bsingh@ts-llp.com<br><br>Jayson B. Ruff<br>Ha Minh Nguyen<br>Office of the United States Trustee<br>515 Rusk St. Ste. 3516<br>Houston, TX 77002<br>jayson.b.ruff@usdoj.gov<br>ha.nguyen@usdoj.gov<br><br>David S. Elder<br>E-mail: dselder@foley.com<br>Michael Seely<br>E-mail: mseely@foley.com<br>FOLEY & LARDNER LLP<br>1000 Louisiana Street, Suite 2000<br>Houston, Texas 77002-2099 |

                                                */s/ William Fred Hagans*
                                                 William Fred Hagans