**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **SCOTT VINCENT VAN DYKE** | § | **Case No. 21-60052** |
| | § | |
| **Debtor.** | § | **Chapter 7 Case** |
| | § | |

---

**OBJECTION OF EVA S. ENGELHART, CHAPTER 7 TRUSTEE OF THE ESTATE OF**
**ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC., TO MOTION FOR RELIEF**
**FROM AUTOMATIC STAY AS TO 1515 SOUTH BLVD., HOUSTON, TX, 77006**
[Relates to Dkt. No. 175]

Eva S. Engelhart ("Engelhart"), in her capacity as Chapter 7 Trustee of the estate of Anglo-

Dutch Petroleum International, Inc. ("ADPI"), files this *Objection to Motion for Relief from*

*Automatic Stay as to 1515 South Blvd., Houston, TX, 77006* ("Objection")[1] in response to the

*Motion for Relief from Automatic Stay as to 1515 South Blvd., Houston, TX, 77006* [Dkt. No. 175]

(the "Lift Stay Motion") filed by Cadence Bank, as Successor by Merger to Cadence Bank N.A.

as Successor by Merger to Encore Bank, National Association ("Cadence"). In support of the

Objection, Engelhart shows as follows:

**I.     PRELIMINARY STATEMENT**

1.      The Lift Stay Motion should be denied because Cadence fails to establish cause for

relief from the automatic stay to allow Cadence to foreclose on the property located at 1515 South

Blvd., Houston, TX 77006 (the "Property"). In its Lift Stay Motion, Cadence takes a unilateral

---

[1] "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). While the Bankruptcy Code does not define "party in interest," courts consistently hold that all persons whose pecuniary interests are directly affected by the bankruptcy proceedings have standing to participate in the case. *See In re Jackson*, No. 06-36268, 2012 WL 3071218 (Bankr. S.D. Tex. Jul 27, 2012) (citing *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993)).

view of this bankruptcy case and loses sight of this Court's directive under the Bankruptcy Code—a just and equitable distribution of property. Should Cadence's Lift Stay Motion be granted, Cadence would not only realize the value of its over-secured claim at the expense of the estate and its creditors, but also the substantial equity in the Property far beyond what Cadence is owed. To avoid such an unjust result, an amicable solution must be pursued that serves the interest of all parties and maximizes the value of the Property for the benefit of *all* creditors.

2.      In pursuit of this goal, a fulsome sales process, rather than a foreclosure sale, should be pursued. A sale of the Property conducted following a full marketing process will undoubtedly yield higher value to the estate and its creditors. Such a sales and marketing process would ensure sufficient value is garnered to satisfy not just Cadence's claims, but also allow the distribution of excess funds in accordance with provisions of the Bankruptcy Code.

3.      Engelhart is one of, if not, the largest unsecured creditors in this case. Specifically, Engelhart has pursued fraudulent transfer litigation to trace proceeds of fraudulent transfers that were used to acquire the Property. Engelhart has obtained a final judgment adjudicating these fraudulent transfers, and intends to enforce that judgment through imposition of a constructive trust. But, the inevitable erosion of equity in the Property that would occur if Cadence were permitted to foreclose deprives Engelhart of this (and likely her only) means of recovery.

## II.      **BACKGROUND**

4.      This chapter 7 case,[2] along with the related Anglo-Dutch chapter 7 cases,[3] were filed amid decade-long litigation with Littlemill Limited, Prosperity Settlement Funding, Inc.,

---

[2] Although filed as a Chapter 11 case, this case was converted to a case under Chapter 7. Dkt. No. 125. Catherine Stone Curtis was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee"). Dkt. No. 138.

[3] *See In re Anglo-Dutch Energy, LLC*, Case No. 21-60036 (April 23, 2021); *In re Anglo-Dutch Petroleum International, Inc.*, Case No. 19-30797 (June 24, 2019).

Robert M. Press[4] and Anzar Settlement Funding Corp. (the "Investors") fraudulent transfers (the "Litigation").[5] When Scott Van Dyke (the "Debtor") initiated this bankruptcy case, he and his related entities faced dispositive motions in the Litigation before the United States District Court due to the prior ADPI bankruptcy filing and subsequent removal of the Litigation.

5.      Ultimately, the District Court rendered judgment against the Debtor and his related entities, finding that the Debtor fraudulently transferred $19,539,546.23 out of ADPI for his own benefit and that of his related entities. *See Final Judgment*, Case No. 4:19-cv-02894, Dkt. No. 74 (S.D. Tex. Nov. 9, 2021). A large portion of these fraudulently transferred funds were used by the Debtor to purchase the Property. *See Order Granting Judgment Creditor Gerard J. Swonke's Motion to Contest the Affidavits of Net Worth and Motion for Injunction*, Case No. 4:19-cv-02894, Dkt. No. 37, Ex. 15 (S.D. Tex. Jan. 20, 2021).  Because the Property was purchased using these fraudulently transferred funds, Engelhart intends to contest the Debtor's claim that the Property is entitled to a homestead exemption and intends to assert a constructive trust against the Property equal to the value of the fraudulent transfer proceeds used to acquire the Property and/or pay off liens against the Property.

6.      The Debtor disclosed his interest in the Property at the outset of this case and, more recently, in the Debtor's amended schedules dated April 27, 2022. Dkt. No. 162 (the "Amended Schedules"). The Debtor listed the Property with a value of $2,661,000 based on HCAD value in a civil dispute and claimed a homestead exemption over the Property. Dkt. No. 162, Sch. A/B pt.

---

[4] Mr. Press has since passed away. Andrea Lore, Individually and In Her Capacities As Co-Executor of the Estate of Robert M. Press, Deceased and As Co-Trustee of the Lorraine Press Supplemental Care Trust, was substituted in place of Mr. Press.

[5] This ancillary Litigation is described in further detail in Engelhart's *Motion to Confirm Absence of Automatic Stay*, [Dkt. No. 174], incorporated by reference herein.

1, Sch. C pt. 1. However, in a prior filing, the Debtor valued the Property at $4,215,000 and listed

liens against the Property as follows—

| Creditor | Collateral | Collateral Value | Lien |
|---|---|---|---|
| Cadence Bank | 1515 S. Blvd, Houston, TX, 77006 | $4,215,000.00 | $1,885,210.00 |
| Harris County et al | 1515 S. Blvd, Houston, TX, 77006 | $4,215,000.00 | $259,420.38 |
| Propel Financial Services | 1515 S. Blvd, Houston, TX, 77006 | $4,215,000.00 | $83,093.35 |

*See Debtor's Motion for Adequate Protection*, [Dkt. No. 46] (the "AP Motion").  Additionally, in

response to the Lift Stay Motion, the Debtor claims a "substantial equity cushion of over

$3,000,000.00." *Debtor's Response and Objection to Motion for Relief from Automatic Stay*, [Dkt.

No. 178] (the "Debtor's Lift Stay Response").

       7.      In the AP Motion, the Debtor proposed monthly payments in favor of Cadence as

adequate protection in an amount of $22,410.31. Other secured creditors were said to be adequately

protected through "retention of [an] equity cushion." Evidently, the adequate protection payments

to Cadence never materialized; according to the Lift Stay Motion, the Debtor has missed 10 such

payments, and incurred a total delinquency of $224,103.10. The Debtor concedes in the Debtor's

Lift Stay Response that he has not been current on postpetition payments but "believes he will be

able to cure the delinquency in payments to Cadence Bank shortly."  Dkt. No. 178 at 1.

       8.      All told, according to Cadence, outstanding obligations due and owing to Cadence

as of May 20, 2022 amount to **$1,981,986.50**. In the same breath, Cadence states that "[t]he

estimated value of the Property is **$6,735,016.00**" and attributes this value to the Harris County

Appraisal District. Lift Stay Motion at ¶ 8 (emphasis added). Nonetheless, Cadence alleges that

cause exists to lift the automatic stay because its "interest in the Property is not adequately

protected." *Id*. at ¶ 10. Other than this conclusory statement, Cadence offers no evidence regarding its request that the stay be lifted to allow it to foreclose on the Property.

### III.    <u>OBJECTION</u>

9.      The Court should deny the Lift Stay Motion and refuse Cadence's request to foreclose on the Property. A fire-sale of a multi-million dollar home is a nuclear option; one that only serves the interests of Cadence in disregard of the other well-situated (and some secured) creditors in this case. In fact, Cadence's proposal contravenes one of the express protections of the automatic stay: "to prevent certain creditors from gaining a preference for their claims against the debtor." *Assoc. of St. Croix Condo Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). Instead, conditioning the automatic stay to allow a fulsome sales process through a real estate professional best serves the needs of this bankruptcy estate and its creditors.

10.      Under Bankruptcy Code Section 362(d)(1), relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). However, a conclusory allegation of cause is insufficient for a party to meet its burden. *See In re Baytown Navigation, Inc.*, Civil Action No. H-12-36, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) (stating that the moving party "bears the initial burden of showing 'cause' for relief from the automatic stay.").

11.      Although the Debtor failed to provide Cadence with the promised adequate protection payments under the AP Motion, cash payments are not the only form of adequate protection offered under the Bankruptcy Code. *See* 11. U.S.C. § 361(1)-(3). Indeed, the Fifth Circuit has recognized another form of protection: an equity cushion. "In determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor

seeking relief from the automatic stay and all senior claims." *In re Las Torres Dev., LLC*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009) (quoting *Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (J. Justice concurring)). A sufficient equity cushion may satisfy an "adequate protection" requirement without the need for adequate protection payments, replacement liens, additional liens, improvement of the collateral, or other tangible means of protection.

12.     In this regard, "case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection." *Mendoza*, 111 F.3d at 1272; *Las Torres Dev*, 413 B.R. at 697 (finding that an equity cushion greater than 20% constituted adequate protection).[6] By Cadence's own admission, the Property is valued at $6,735,016.00, and Cadence's claim against the Property is only $1,981,985.50. Cadence offers no explanation for why it is not adequately protected under its own $6.735 million valuation, or even at the Debtor's alternate $2.661 million or $4.215 million valuations, all of which provide equity cushions sufficient to constitute adequate protection for Cadence. Even at the lowest valuation provided by the Debtor ($2,661,000), Cadence maintains an equity cushion of 25%. Therefore, the Lift Stay Motion is devoid of any "cause" for which the stay should be lifted.

13.     Rather than allow a value-minimizing foreclosure sale to occur, Engelhart, in conjunction with the Chapter 7 Trustee, believes that the Property should be marketed and sold through a six to nine month marketing and sales process, which would allow the sale of the Property in a manner that would maximize value to the estate for the benefit of *all* creditors, not

---

[6] While the amount of equity in the property is the primary factor that courts look to in an adequate protection analysis, other factors include the following: the value of the collateral, the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is inadequate, whether property taxes are being paid, and the prospects for successful reorganization of the debtor's affairs. *In re Mendoza*, 111 F.3d at 1272 n. 3.

just Cadence. Therefore, the Court should require the Debtor to assist the Chapter 7 Trustee with her efforts to sell the Property.

### IV.    <u>CONCLUSION</u>

Wherefore, Engelhart requests that the Court (i) deny the Lift Stay Motion; (ii) direct the implementation of a fulsome marketing and sales process of the Property conducted by the Chapter 7 Trustee; and (iii) grant such other relief as may be just and proper.

Dated:  June 14, 2022

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ William R. Greendyke*
William R. Greendyke (SBT 08390450)
Julie Goodrich Harrison (SBT 20492434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

-and-

HAGANS MONTGOMERY HAGANS

William Fred Hagans
Texas State Bar No. 08685500
fhagans@hagans.law
Carl D. Kulhanek, Jr.
Texas State Bar No. 11761850
ckulhanek@hagans.law
Richard D. Eiszner
Texas State Bar No. 24103713
reiszner@hagans.law
3200 Travis, Fourth Floor
Houston, Texas 77006
Telephone: 713-222-2700
Facsimile: 713-547-4950

**ATTORNEYS FOR EVA S. ENGELHART,
CHAPTER 7 TRUSTEE FOR THE
ESTATE OF ANGLO-DUTCH
PETROLEUM INTERNATIONAL, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 14, 2022, I attempted to confer with counsel for Cadence regarding the relief requested in the Lift Stay Motion.  As of the time of this filing, I was unable to discuss the relief requested with counsel.

*/s/ Julie Harrison*
Julie Harrison

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2022, a true and correct copy of the foregoing Objection was served upon the counsel and parties of record electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service and on those parties listed below:

Scott Van Dyke
1515 South Boulevard
Houston, TX 77006

Anglo-Dutch Energy, LLC
c/o Scott Van Dyke
P.O. Box 22322
Houston, TX 77227

Jett Williams III
HENKE,WILLIAMS & BOLL,
LLP
2929 Allen Parkway, Suite 3900
Houston, Texas 77019
JWilliams@HenkeLawFirm.com

Timothy L. Wentworth
OKIN ADAMS LLP
1113 Vine St., Suite 240
Houston, Texas 77002
twentworth@okinadams.com

Melissa A. Haselden
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002

Travis C. Badger
Badger Law PLLC
3400 Avenue H, Second Floor
Rosenberg, Texas 77471
bkcy@badgerlawoffice.com

Wayne Kitchens
HUGHESWATTERSASKANAS
E,LLP
1201 Louisiana, 28th Floor
Houston, Texas 77002
wkitchens@hwa.com

Susan Tran Adams
Brendon Singh
TRAN SINGH, LLP
2502 LaBranch St.
Houston, Texas 77004
stran@ts-llp.com
bsingh@ts-llp.com

Jayson B. Ruff
Ha Minh Nguyen
Office of the United States
Trustee
515 Rusk St. Ste. 3516
Houston, TX 77002
jayson.b.ruff@usdoj.gov
ha.nguyen@usdoj.gov

David S. Elder
E-mail: dselder@foley.com
Michael Seely
E-mail: mseely@foley.com
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002-2099

Catherine Stone Curtis
Pulman, Cappuccio & Pullen,
LLP
P.O. Box 720788
McAllen, TX 78504
956-467-1900

Randall A Pulman
Pulman, Cappuccio, Pullen &
Benson, LLP
Suite 400
2161 NW Military Highway
San Antonio, TX 78213
(210) 222-9494
Fax : (210) 892-1610
Email: rpulman@pulmanlaw.com

Lynn Hamilton Butler
Husch Blackwell LLP
111 Congress Ave
Ste 1400
Austin, TX 78701
512-479-9758
Fax : 512-226-7318
Email:
lynn.butler@huschblackwell.com

*/s/ Julie Harrison*
Julie Harrison