IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 (Converted) |
| SCOTT VINCENT VAN DYKE, | § | |
| | § | Case No. 21-60052 |
| DEBTOR. | § | Hon. Christopher M. Lopez |

**BUILDERS WEST, INC'S REPLY IN
SUPPORT OF MOTION TO DISMISS CASE**
[Relates to Doc. Nos. 145 and 152]

**TO THE HONORABLE CHRISTOPHER M. LOPEZ,
U.S. BANKRUPTCY JUDGE:**

Builders West, Inc. ("Builders West"), by and through its undersigned counsel, hereby files this *Reply in Support of Motion to Dismiss Case* (hereinafter, the "Reply").[1] In support hereof, Builders West respectfully submits the following:

**REPLY**

1. As demonstrated below, Builders West has established "cause" to justify dismissal of this Case under Section 707(a) or 707(b).

**A.    "Cause" Exists to Dismiss the Bankruptcy Case Under § 707(a).**

2. The Chapter 7 trustee (the "Trustee") asserts in her objection that "dismissal is not warranted for cause."[2] This conclusory statement to the contrary, Builders West believes the Motion establishes ample good cause to dismiss the Debtor's case.

---

[1] All capitalized but undefined terms shall have the same meaning as ascribed to in Builders West's *Motion to Dismiss* (the "Motion") [Doc. No. 145].

[2] Doc. No. 152, at ¶ 13.

3. As stated in the Motion, cause exists to dismiss the Debtor's case because he has "clearly abused the bankruptcy process."[3] As stated in the Motion, the Debtor failed to accurately report his assets and liabilities to the Court. More specifically, the Debtor failed to: (i) list Builders West as a creditor in his Petition and Amended Petition, despite having knowledge of the final judgment against him in favor of Builders West pursuant to which no less than $1,062,002.90 is owed. Additionally, the Debtor subsequently misstated the amount owed to Builder's West in his Schedules, and improperly scheduled Builders West's claim as "disputed" claim even though Builders West has a final/unappealable Judgment against the Debtor.

4. Additionally, the Trustee recently filed an *Objection to Debtor's Claimed Exemptions* [Doc. No. 186], in which the Trustee asserts, in part, that the Debtor purchased his alleged homestead with fraudulently obtained funds. More specifically, two different courts have issued orders including findings of the Debtor fraudulently transferring assets. *See, e.g.,* Doc. No. 186, at Exhibits A-B, and Exhibit C (finding that Debtor fraudulently transferred $19,539,546.23 out of ADPI for his own benefit and that of his related entities). *See In re Cisneros*, No. 21-12338-MCR, 2021 WL 4145407, at *5 (Bankr. D. Md. Aug. 25, 2021) ("a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal under § 707(a)") (quoting *In re Wilson*, 12-32715-WIL, 2016 WL 1254637, at *5 (Bankr. D. Md. Mar. 30, 2016) (considering, in part, the "debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing" and "debtor's lack of candor and completeness in his statement and schedules")). Here, there can be no doubt that the Debtor has attempted to take advantage of the bankruptcy system in a manner contrary to the

---

[3] Motion, at ¶ 21.

intended purposes of Chapter 7, in part by filing false bankruptcy schedules and, thereby, frustrating creditors.

5.  Moreover, the Debtor indicated in his schedules that he earns over *$55,000 a month*, and has a net income of more than *$25,000 per month*.[4] Despite the Debtor's substantial income, he filed a voluntary Chapter 11 petition in May 2021. In October 2021 and then in December 2021, the Debtor filed infeasible Chapter 11 plans which if approved would have enabled him to avoid paying any of such income to his creditors.  On January 11, 2022, the day after a Rule 2004 examination of the Debtor, he filed a motion to convert his case to Chapter 7.[5]  His request was granted, and the Court entered an order converting his case to Chapter 7 on January 31, 2022.[6]

6.  In essence, the Debtor is attempting to use the bankruptcy process to discharge his personal debts *without contributing any of his income to his unsecured creditors*.  He originally tried to do so by proposing Chapter 11 plans that would not touch his income, and he is now trying to do so by obtaining a Chapter 7 discharge.

7.  It is an abuse of the bankruptcy process for an individual with a reported net annual income in excess of $300,000 to obtain a Chapter 7 discharge.  In fact, the Bankruptcy Code explicitly contemplates such a scenario and presumes that giving a discharge to such an individual would be "an abuse of the provisions" of Chapter 7.  *See* 11 U.S.C. § 707(b)(2)(A)(i).[7]

8.  Although bankruptcy policy is clear that people who can afford to pay their debts should not be able to use Chapter 7, the Trustee states that "dismissal would prejudice the Debtor's creditors by facilitating a race to the courthouse approach to administering his assets, which would

---

[4] Doc. No. 27, pp. 50-56 (Schedules I & J).

[5] Doc. No. 121.

[6] Doc. No. 129.

[7] More on this in the next section.

likely result in an inequitable distribution to creditors."[8]  Distributions to the Debtor's creditors, however, are likely to be *far greater* if the creditors can be paid from the Debtor's future earnings.

9.  Accordingly, Builders West believes it has established "cause" for dismissing the Debtor's bankruptcy case.

**B.  The Presumption of Abuse Arises Under § 707(b).**

10.  The Bankruptcy Code provides that a court may dismiss a case of an individual with primarily consumer debts upon finding that "the granting of relief would be an abuse of the provisions" of Chapter 7. *See* 11 § 707(b)(1).  The Trustee's objection asserts that section 707 does not apply because the Debtor's debts are not primarily consumer debts and cites the Debtor's schedules in support of her assertion.[9]  The Debtor's schedules, however, show exactly the opposite – that the Debtor's debts are primarily consumer debts.

11.  The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).  Additionally, a debtor's debts are considered "'primarily consumer debts' if they exceed fifty percent of the debtor's total debt." *In re Fedoruk*, 605 B.R. 444, 450 (Bankr. S.D. Tex. 2019) (citing *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988)).  "The test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family, or household purposes, is whether it was incurred with an eye toward profit." *See id*.  Most courts hold that "residential mortgage loans are classified as consumer debts." *See also In re McDowell*, No. 12-31231, 2013 WL 587312, at *8 (Bankr. S.D. Tex. Feb. 14, 2013) (citing, in part, *Cox v. Fokkena (In re Cox)*, 315 B.R. 850, 855 (B.A.P. 8th Cir.2004) ("With respect to debt secured by real property, if the

---

[8] Doc. No. 152, at ¶ 15.

[9] Doc. No. 152, at ¶ 16 (citing Doc. 27, p. 58).

debtor's purpose in incurring the debt is to purchase a home or make improvements to it, the debt is clearly for family or household purposes and fits squarely within the definition of a consumer debt.")).

   12. Using the Debtor's Schedules, which the Trustee relies upon in her opposition and were signed under penalty of perjury, the Debtor's debts consist of primarily consumer debts since more than 50% of his debt was related to either the mortgage on his home or his vehicles:[10]

| Part 2: Summarize Your Liabilities | Your liabilities Amount you owe |
|---|---|
| 2. Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D) 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*....... | $2,249,862.42 |
| 3. Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F) 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*.................... | $0.00 |
| 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............... | + $1,693,495.14 |
| Your total liabilities | $3,943,357.56 |

As indicated above, Debtor has scheduled **$2,249,862.42** in secured debt his Schedule D, which consists of the following:

  (i) $1,885,210.00 on a mortgage on Debtor's homestead;[11]

  (ii) $342,513.73 in tax liens on the Debtor's homestead;[12] and

  (iii) $22,138.69 in claims on Debtor's vehicles (i.e., the 2013 Chevrolet Tahoe and 2016 Chevrolet Silverado)[13]

---

[10] Doc. 27, at p. 57.
[11] *Id.* at p. 37 (Schedule D).
[12] *Id.* at p. 38 (Schedule D).
[13] *Id.* at p. 39 (Schedule D).

The debt listed above (i.e., the Debtor's homestead and vehicles) all are debts the Debtor incurred "primarily for a personal, family, or household purpose" and are, therefore, consumer debt.

13. Meanwhile, Debtor scheduled **$1,693,495.14** in his Schedule E/F (i.e., creditors who have unsecured claims). Assuming *all* of the debts listed in Schedule E/F are business-related debts, the Debtor's debt still primarily consists of consumer debt (i.e., $2.25 million > $1.69 million). Therefore, the threshold test for application of section 707(b) has been satisfied.[14]

14. Since Debtor's debts are indeed primarily consumer in nature, he is subject to review for abuse under sections 707(b). Here, dismissal is warranted because Debtor fails the means test, as set forth in section 707(b)(2)(A)(i):

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, **the court shall presume abuse exists** if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 **is not less than the lesser of**--
> (I)   25 percent of the debtor's nonpriority unsecured claims in the case, or $9,075 [originally "$6,000", adjusted effective April 1, 2022], whichever is greater; or
> (II)  $15,150 [originally "$10,000", adjusted effective April 1, 2022].

11 U.S.C. 707(b)(2)(A)(i) (West 2022) (emphasis added).

15. As set forth in his schedules, Debtor asserts a monthly net income of $25,058.00 [Doc. No. 27, at 56]. This amount multiplied by 60 is $1,503,480.00. Clearly, this amount is not less than either (I) and (II). Therefore, the Debtor fails the means test and the Debtor has made no attempt to rebut the presumption. Accordingly, the Court should presume abuse and dismiss the Debtors' case under section 707(b)(1). Moreover, even if the presumption of abuse did not arise, the Court has ample evidence that the Debtor filed bankruptcy in bad faith or that the totality of

---

[14] The Debtor's classification of his debts as "not primarily consumer debts" [Doc. No. 27, at 58], which the Trustee cites to, is thus patently wrong.

the circumstances of the Debtor's financial situation demonstrates abuse for the reasons outlined in Builders West's section 707(a) argument.

## CONCLUSION

**WHEREFORE,** Builders West respectfully requests that the Court: (i) ) find "cause" and immediately dismiss this Case with prejudice under either Section 707 or Section 305(a), and enter the order substantially in the form filed herewith; and (iii) order any such other and just relief to which Builders West may be entitled to receive.

Dated: June 28, 2022


Respectfully submitted:


By:   */s/ Dale R. Mellencamp*
       DALE R. MELLENCAMP
       State Bar No. 13920250
       Federal Bar No. 7718
       14711 Pebble Bend Drive
       Houston, Texas 77068
       Email: mellencamp@bairhilty.com
       Telephone: (713)862-5599
       Facsimile: (713)868-9444

       ATTORNEY FOR BUILDERS WEST, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the June 28 2022, a copy of the foregoing instrument was served on the parties entitled to receive notices through the Court's electronic notification system as permitted by the Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

        */s/ Dale R. Mellencamp*
        DALE R. MELLENCAMP