UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCOTT VINCENT VAN DYKE, | § | CASE NO. 21-60052 (CML) |
| | § | (Chapter 7) |
| Debtor. | § | |

**DEBTOR'S PROPOSED FINDINGS OF FACT**
[Ref. Doc. Nos. 186, 187, and 188]

TO THE HONORABLE CHRISTOPHER M. LOPEZ, U.S. BANKRUPTCY JUDGE:

COMES NOW, SCOTT VINCENT VAN DYKE ("Van Dyke" or the "Debtor"), and files his Debtor's Proposed Findings of Fact, and would show this Court as follows:

### Introduction

1. On May 20, 2022, the Chapter 7 Trustee, Catherine Stone Curtis (the "Trustee") concluded the Debtor's meeting of creditors. On June 22, 2022, the Trustee filed her Chapter 7 Trustee's Objection to the Debtor's Claimed Exemptions (the "Trustee's Objection") (Dkt. No. 186). On that same date, Builders West, Inc. ("Builders West") and Eva S. Engelhart, Chapter 7 Trustee of the Estate of Anglo-Dutch Petroleum International, Inc. ("Engelhart") filed joinders to the Trustee's Objection. (Dkt. Nos. 187 and 188). The Trustee's Objection and the joinders were filed untimely, two days after the deadline for filing objections. Although the objections are barred as untimely, the Court makes further findings as well regarding the background of the matter.

### Findings of Fact

2. On May 2, 2000, Anglo-Dutch Petroleum International, Inc. ("ADPI") and Anglo-Dutch (Tenge), LLC ("ADT") filed a suit against Halliburton Energy Services, Inc. ("Halliburton") and Ramco Oil & Gas, Ltd. ("Ramco") for disclosing confidential information concerning the

1

development of an oil and gas field, the Tenge Field, in Kazakhstan. That case was styled *Anglo-Dutch Petroleum International, Inc., et al v. Ramco Oil & Gas, Ltd., et al*, Cause No. 2000-22588, in the 61st Judicial District Court of Harris County, Texas (the "Halliburton Suit").

3. ADPI's and ADT's business operations were crippled financially by the damages caused by Halliburton and Ramco's conduct. To finance the Halliburton Suit and stay in business, ADPI and ADT entered into contracts with certain plaintiff financers to invest in the Halliburton Suit. From 2000 through 2003, ADPI and ADT borrowed a total of $2,364,947.62 from 33 separate plaintiff financers. The funds were used to pay litigation and business expenses during the Halliburton Suit.

4. At the time the Halliburton Suit was filed, ADPI, ADT and their attorneys expected a recovery in the hundreds of millions of dollars, since the actual damages sought in the Halliburton Suit were over $600 million.

5. The form of the contracts for all 33 plaintiff financers were the same. (See Exhibits 15 – 18). Each contract provided that the plaintiff financer would be paid from the recovery proceeds if there was a recovery from a settlement or from collections. The payoff amounts had three components:

   (1) loan principal;
   (2) a bonus, which was a percentage of the loan's principal and depending on the contract, ranged between 85% to 100%.
   (3) annual interest at rates between 85% to 100%, depending on the contract, calculated from the date of the loan to the date of recovery.

By way of example, if a $100,000 loan was made to ADPI two years before the settlement with Halliburton, and if the loan carried a 90% bonus rate and a 90% annual interest rate, then upon recovery, ADPI was obligated to pay the plaintiff financer $370,000 ($100,000 for the return of principal, a $90,000 bonus, and $180,000 in annual interest).

2

6. On April 1, 2004, ADPI and ADT were awarded a final judgment in the Halliburton Suit against Halliburton and Ramco, jointly and severally, in the amount of $80,200,000.00 plus prejudgment and post-judgment interest ($64,000,000 against Halliburton and $6,400,000 against Ramco plus $9,800,000, jointly and severally against Halliburton and Ramco, in attorney's fees). (Exhibit 19).

7. On April 15, 2024, two weeks after the final judgment was entered in the Halliburton Suit, ADPI and ADT settled with Halliburton for $51 million.

8. Ramco appealed the final judgment in the Halliburton Suit, but since it did not post a supersedes bond, ADPI and ADT began actively pursuing collection remedies against Ramco in the United Kingdom to collect $16,200,000, plus prejudgment and post-judgment interest, owing on the judgment.

9. After the final judgment was entered in the Halliburton Suit, but before ADPI and ADT settled with Halliburton, the Debtor, acting on behalf of ADPI and ADT, contacted most of the 33 plaintiff financers to negotiate lower payoff amounts. During the negotiations, most of the plaintiff financers asked the amount of settlement with Halliburton. The Debtor told them that Halliburton was insisting on a confidentiality provision in the settlement agreement, and for that reason he could not reveal the settlement amount. However, the Debtor did tell them that the settlement amount was dramatically lower than the amount sued for. The plaintiff financers knew that ADPI and ADT had sued for over $600 million and knew that the final judgement in the Halliburton Suit was for $80,200,000.00. They also knew that Halliburton's portion of the award was $64,000,000 plus joint and several liability for $9,800,000 in legal fees, so they knew any settlement with Halliburton would be for less than $73,800,000. The Debtor made it clear to all of the plaintiff

3

financers that ADPI and ADT were asking each of the plaintiff financers to accept a discounted payoff.

10. Many of the plaintiff financers agreed and accepted the discounted payoffs, and ADPI paid each of them from the Halliburton Suit settlement proceeds. Anzar Settlement Funding Corp. ("Anzar"), Robert M. Press ("Press"), and Prosperity Settlement Funding, Inc. were among the plaintiff financers who accepted discounted settlement payments.

11. The discounted payoffs gave the plaintiff financers payoffs in the range of 150% to over 200% of their loan amounts.

12. At the time ADPI and ADT received its settlement recovery from Halliburton, the payoff amounts owed to the four plaintiff financers represented by Engelhart totaled $1,153,820.96. The original payoff amount owed to these plaintiff financers was:

>    Littlemill Ltd.
>    90% bonus and 90% annual interest rate
>    Loan amount:  $149,972.00
>    Original Payoff Amount Due: $439,325.47
>
>    Anzar Settlement Funding Corp.
>    95% bonus and 95% annual interest rate
>    Loan amount: $100,000
>    Original Payoff Amount Due:  $446,619.87
>
>    Robert M. Press
>    85% bonus and 85% annual interest rate
>    Loan amount:  $25,000
>    Original Payoff Amount Due:  $112,095.89
>
>    Prosperity Settlement Funding, Inc.
>    85% bonus and 85% annual interest rate
>    Loan amount:  $40,000
>    Original Payoff Amount Due:  $126,996.92

13. Before the settlement was entered with Halliburton, Prosperity agreed to a discounted payoff of $69,153.21 (Exhibit 20), Anzar agreed to a discounted payoff of $255,473.63 (Exhibit

21), and Press agreed to a discounted payoff of $59,582.19 (Exhibit 22). In April of 2004, they were paid those discounted settlement amounts. In each case, these claimants received a return in excess of 100% on their initial loan amount.

14. Of the initial 33 plaintiff financers, some accepted discounted payoff amounts outright, and some, after declining the offered discounted payoff amounts, later accepted and cashed accord and satisfaction checks tendered to them. Some plaintiff financers sued and received judgments on breach of contract claims. At the end of the day, by January of 2005, all of the 33 plaintiff financers except Littlemill, were fully paid. In April 2004, Anzar, Press, and Prosperity had also been fully paid the discounted amounts they had agreed to accept, but after receiving those payments, they subsequently sued.

15. On April 22, 2004, ADPI sued one of its prior counsel in the Halliburton Suit, Greenberg Peden, P.C., and an individual attorney who was working on the case for Greenberg Peden, P.C. named Gerald Swonke, for a declaration that ADPI's fee agreement was with the law firm of Greenberg Peden, not with Swonke personally. It also sued Swonke for breach of fiduciary duty. Swonke counterclaimed for breach of contract, asserting that he personally was party to the agreement and not Greenberg Peden. Swonke also alleged that Van Dyke had defrauded him. That case was styled *Anglo-Dutch Petroleum International, Inc. and Anglo-Dutch (Tenge), LLC vs. Greenberg Peden, LLC and Gerard J. Swonke*, Cause No. 2004-20712, in the Harris County District Court, 61st Judicial District (the "Swonke Litigation").

16. On May 7, 2004, Press, Anzar, and Prosperity and a number of other plaintiff financers filed suit in Cause No. 2004-23845, in the Harris County District Court, 127th Judicial District alleging breach of contract and fraud against ADPI, ADT, and the Debtor. (the "Plaintiff Financer Suit"). The plaintiffs' claims were based on allegations that they were fraudulently induced to

5

enter into settlement agreements with ADPI, whereby they accepted less than the full amounts owed to them under their litigation funding contracts. After filing the Plaintiff Financer Suit, Press, Anzar, and Prosperity amended their petition, dismissing the Debtor from the lawsuit individually by amendment.

17. On October 29, 2004, Littlemill filed suit in Cause No. 2004-60996, in the Harris County District Court, 152nd Judicial District, asserting claims for breach of contract and fraud. ("Littlemill Suit").

18. As of January 13, and February 11, 2005, ADPI had sufficient funds to pay all of its creditors, including the plaintiff financers.

19. Given the large amount of settlement funds ADPI received in its settlement with Halliburton, and the remaining judgment against the Ramco parties for over $16,400,000, ADPI had sufficient funds to issue a distribution to the Debtor based on his ownership interest in ADPI. The Debtor was advised by tax advisors to initially take funds as a loan, not as a distribution, and then to determine at a later date if the loan should be forgiven, making it taxable.

20. On January 13, 2005, ADPI loaned the Debtor $30,000.00. (Exhibit 23). The Debtor used $25,000.00 of those loan proceeds to make an escrow deposit towards purchase of the real property and improvements thereon at 1515 South Boulevard, Houston, Texas 77006 (the "Homestead") (Exhibit 24).

21. On January 14, 2005, the Debtor entered into an earnest money contract for purchase of the Homestead for a purchase price of $3,800,000.00 and paid the escrow deposit of $25,000.00. (Exhibit 24).

22. On February 11, 2005, ADPI's board of directors approved a loan to the Debtor of $3,800,000.00. (Exhibit 25). The loan was funded by ADPI that day. (Exhibit 23). The Debtor

executed a promissory note payable to ADPI in the principal amount of $3,800,000.00 and a deed of trust to secure the note. (Exhibits 26 and 27).

23. On February 11, 2005, the Debtor closed on purchase of the Homestead, using the loan proceeds from ADPI to pay the purchase price. (Exhibit 28). ADPI retained a vendor's lien in the warranty deed to secured its promissory note. (Exhibit 29). The deed of trust in favor of ADPI was filed in the real property records of Harris County, Texas on February 14, 2005. (Exhibit 27).

24. On June 6, 2006, the state district court in the Littlemill Suit granted Littlemill a summary judgment on its breach of contract claim against ADPI and ADT, awarding it damages of $440,315.00, plus $116,126.00 in attorney's fees for trial. (Exhibit 30). ADPI and ADT appealed that judgment. The state court severed Littlemill's tort claims against the Debtor into a separate cause, which Littlemill later dismissed. ADPI and ADT did not have the funds available at that point in time to post the supersedeas bond on appeal, so the Debtor agreed to loan the funds necessary for the bond to ADPI. The Debtor's only asset he could use to secure a loan for the bond was his Homestead. In order to obtain a home equity loan of $750,000 from Morgan Stanley secured by the Homestead, the Debtor was required to have ADPI's deed of trust against the Homestead released. Morgan Stanley did not want other liens on the property. On September 6, 2006, ADPI's board of director's approved the loan from the Debtor for the supersedeas bond and approved the release of the loan ADPI made to the Debtor for his purchase of the homestead. (Exhibit 31). On September 21, 2006, Van Dyke and ADPI signed a Full and Final Release of Liens and Security Interests stating that ADPI agreed to forgive and fully discharges all unpaid interest and principal owed pursuant to the $3.8 million Promissory Note. (Exhibit 32). On or about October 20, 2006, the Debtor obtained a home equity loan from Morgan Stanley in the original principal amount of $750,000.00 secured by his Homestead and loaned the funds to ADPI. (Exhibit

33). On October 20, 2006, ADPI posted a supersedeas (cash in lieu of) bond in the amount of $468,108.28 to supersede Littlemill's judgment against ADPI and ADT on appeal. (Exhibit 34).

25. On September 19, 2006, the state district court in the Plaintiff Financer Suit granted a summary judgment in favor of ADPI and ADT against the plaintiffs on the grounds that their claims were barred by accord and satisfaction. (Exhibit 35). However, the Court severed the fraudulent inducement claims of Anzar, Press and Prosperity to be tried separately in Cause No. 2004-23845-A (the "Anzar/Press/Prosperity Suit").

26. Throughout 2006, ADPI was involved in settlement negotiations with the Ramco parties with respect to their $16,200,000 portion of the judgment in the Halliburton Suit that was on appeal. On October 19, 2006, shortly before Ramco agreed to a settlement, the 14th Court of Appeals reversed the judgment in the Halliburton Suit against Ramco, leaving the $51 million in settlement proceeds as the only funds from the Halliburton Suit. (Exhibit 36). Up to that point, the Debtor believed that there would be sufficient funds coming from the Ramco parties to pay any remaining funds that might be owed to the plaintiff financers.

27. On January 22, 2007, the state district court in the Swonke Litigation entered its Final Judgment on the jury verdict awarding damages of $1,000,000 to Swonke against ADPI and ADT, both of which appealed the judgment. (Exhibit 37). ADPI and ADT did not at that time have sufficient funds to post a supersedeas bond to obtain a stay pending appeal. The Debtor once again agreed to borrow against the equity in his Homestead and loan the funds needed to ADPI to post the supersedeas bond. ADPI's board of directors approved the loan from the Debtor evidenced by a promissory note. (Exhibit 38). On May 22, 2008, the Debtor obtained a home equity loan from Encore Bank n/k/a Cadence Bank in the principal amount of $2,250,000. (Exhibit 1). The loan paid off the Morgan Stanley loan remaining due in the amount of $599,826.41 and paid

8

miscellaneous closing costs. (Exhibit 1). The Debtor then loaned ADPI the funds needed so that on July 8, 2008, ADPI could post a supersedeas (cash in lieu) bond in the Swonke Litigation to stay execution of the judgment pending appeal. ADPI posted its supersedeas bond using the loan proceeds from the Debtor, which came from the equity in the Homestead. (Exhibit 39).

28. On October 2, 2007, the 14th Court of Appeals reversed the trial court's award of attorney's fees in the Littlemill Suit but affirmed the award of contract damages and remanded for further findings. (Exhibit 40). On February 6, 2009, the funds from the supersedeas bond on appeal of the Littlemill Suit were ordered released and paid to Littlemill. (Exhibit 41). At that time there was a total of $516,336.35 on deposit, representing the $468,108.28 initially deposited plus accrued interest. The only remaining issue in the Littlemill case to be tried was the amount of attorney's fees. The case was presented to a jury on the amount of attorney's fees, and on July 1, 2009, the jury reached a verdict awarding Littlemill $95,000 in attorney's fees. (Exhibit 42). On August 7, 2009, the state court entered a Final Judgment on the jury's verdict. (Exhibit 43). This left only the $95,000 in attorney's fees owing to Littlemill.

29. The funds paid out of the registry of the court to Littlemill were proceeds from a loan against the equity in the Debtor's homestead.

30. On August 26, 2008, the 14th Court of Appeals affirmed the trial court's judgment in the Swonke Litigation. (Exhibit 44). ADPI and ADT filed a petition for review with the Texas Supreme Court which was granted. The Texas Supreme Court granted and heard oral argument in that case. On August 26, 2011, the Texas Supreme Court rendered its opinion reversing the Court of Appeal and remanding the case for further proceedings. The Texas Supreme Court specifically found that there was no contract between ADPI and Swonke. (Exhibit 45).

31. On May 13, 2014, the trial court in the Swonke Litigation entered its final judgment determined that nothing whatsoever was owed to Swonke individually, because the fee agreement was with Greenberg Peden, P.C. and not with Swonke. The Final Judgment in that case superseded and vacated all prior orders, providing that "[a]ll relief not expressly granted in the Final Judgment is hereby denied." The Final Judgment makes no mention of fraudulent transfers. Therefore, there is no effective judgment or finding by that court that transfers made by Anglo-Dutch to the Defendant were fraudulent. (Exhibit 46).

32. The 14th Court of Appeals later rejected the argument in another related case in Littlemill that the intent to defraud finding in the Swonke supersedeas proceeding could be used outside of that limited context. (Exhibit 47). On appeal of a motion for disbursement of registry funds in the Plaintiff Financer Suit, the 14th Court of Appeals held such findings to be meaningless outside the context of the supersedeas dispute. The Court wrote in its opinion:

> While we do not express any opinion concerning the parties' merits arguments, we note that the supreme court has held that "an alter ego finding in a post-judgment net worth proceeding may not be used to enforce the judgment against the unnamed alter ego or any other nonjudgment debtor, but only to determine the judgment debtor's net worth for the purposes of Rule 24 [of the Texas Rules of Appellate Procedure]." *In re Smith*, 192 S.W.3d 564, 568–69 (Tex. 2006).

(Exhibit 47). The 14th Court of Appeals declined to give any effect to these findings of fraud and alter ego in the very same case in which they were made.

33. On January 4, 2012, after conclusion of a trial to the bench in the Anzar/Press/Prosperity Suit, the state court judge entered his Final Judgment, which was amended on February 22, 2012, awarding Anzar, Press, and Prosperity against ADPI and ADT jointly and severally. (Exhibit 49). The state court found that ADPI and ADT committed fraud and that the Debtor did not commit fraud. (Exhibit 49). ADPI and ADT appealed the trial court's judgment,

and on May 13, 2014, the 1st Court of Appeals affirmed the trial court, making the judgment final. (Exhibit 50).

34. On February 11, 2019, ADPI filed its voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. When ADPI filed its Chapter 7 bankruptcy case, Anzar, Press, Prosperity, and Littlemill (the "Plaintiff Claimants") filed proofs of claim totaling $1,475,967.15. (Exhibit 51). After the claims were filed in the bankruptcy court, the Plaintiff Claimants were granted relief from the automatic stay to pursue funds in the registry of the state court actions. On motions for summary judgment in the Swonke Litigation, the state court entered a summary judgment ordering the following payments to the following creditors of the Anglo-Dutch estate:

| | | |
|---|---|---|
| Robert M. Press: | $176,900.83 | (from acct. 63901) |
| Prosperity Settlement Funding, Inc.: | $191,531.73 | (from acct. 63901) |
| Littlemill Limited: | $54,352.41 | (from acct. 63901) |
| Littlemill Limited: | $162,450.86 | (from acct. 64056) |
| Anzar Settlement Funding Corp.: | $744,845.60 | (from acct. 64056) |
| TOTAL | $1,330,081.43 | |

(Exhibit 52). All of these funds paid from the registry of the court came from the Debtor's equity in his Homestead through his home equity loan from Encore Bank n/k/a Cadence Bank. To recap, the total amounts originally owed under the agreement immediately after the settlement in April of 2004 was:

| | |
|---|---|
| Littlemill Ltd. | $ 439,325.47 |
| Anzar Settlement Funding Corp. | $ 446,619.87 |
| Robert M. Press | $ 112,095.89 |
| Prosperity Settlement Funding, Inc. | $ 126,996.92 |
| TOTAL DUE | $1,125,038.15 |

The total amount paid to date on these claims is:

| | |
|---|---|
| Littlemill Ltd. | $   656,128.74 |
| Anzar Settlement Funding Corp. | $1,191,465.47 |
| Robert M. Press | $   236,483.02 |
| Prosperity Settlement Funding, Inc. | $   318,528.65 |
| TOTAL PAID | $2,402,605.88 |

The Debtor has paid the claimants over $1,000,000 more than they were originally owed.

35. On May 25, 2021, the Debtor filed his voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. (Dkt. No. 1).

36. On June 22, 2021, the U.S. Trustee held the meeting of creditors under section 341(a) in the Debtor's Chapter 11 case. The U.S. Trustee continued the meeting to July 19, 2021. (Exhibit 53).

37. On June 30, 2021, the Debtor filed his schedules (including Schedule C), statement of financial affairs and related pleadings. (Dkt. No. 27). No party filed any objection to the Debtor's claimed exemptions. (Exhibit 53).

38. On July 19, 2021, the U.S. Trustee held a continued meeting and continued the meeting to August 23, 2021, on which date the meeting of creditors was concluded. (Exhibit 53).

39. On August 5, 2021, the Debtor filed his first amended Schedule A,B. (Dkt. No. 48). (Exhibit 53).

40. On January 11, 2022, the Debtor filed a motion to convert his case from Chapter 11 to a case under Chapter 7. (Dkt. No. 121). On January 31, 2022, the Court entered an order granting that motion and converting the Debtor's case to one under Chapter 7. (Dkt. No. 129). (Exhibit 53).

41. On February 11, 2022, the Trustee was appointed as chapter 7 trustee of the Debtor's Chapter 7 estate. On March 24, 2022, the Trustee conducted a meeting of creditors, which was continued to April 28, 2022. (Exhibit 53).

42. On April 27, 2022, the Debtor filed his amended Schedule A,B and Schedule C. (Dkt. No. 162). (Exhibit 53). In his amended Schedule C, the Debtor elected exemptions under the Texas Property Code and claimed as exempt the following property:

| Description | Value | Exemption Statute |
|---|---|---|
| Homestead at 1515 South Blvd. | $2,661,000.00 | Tex. Const., Art. 16 §§ 50, 51; Texas Prop. Code §§ 41.001-002 |
| 2016 Chevrolet Silverado | $18,380.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(9) |
| 2013 Chevrolet Tahoe | $16,120.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(9) |
| Black Leather Recliner | $65.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Kitchen Aid Dishwashers (2), LG Dishwasher, GE Dishwasher | $310.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| GE Microwave, Sharp Carousel Microwave (2) | $80.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| GE Profile Refrigerator, KitchenAid Built-in Refrigerator, Sub Zero Built-in Refrigerator (2) | $1,300.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Double Bed & frame | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Laminated Chester Drawers | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Laminated Side Table | $25.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Laminated Nightstand | $25.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Whirlpool Washer (2) | $70.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Whirlpool Gas Dryer | $75.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Lamps (2) | $30.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| GE Precise Simmer Gas Stove & Oven, KitchenAid Self-Cleaning Stacked Oven, Kenmore Gas Stove & Oven | $400.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Dishes, Cups, & Glasses | $400.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Fine China dinner plates, Salad Plates, Coffee Cups & Saucers | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Silver Plated Trays, Silver Plated Servers (4) & Metal utensils | $3,000.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |

| Item | Value | Code |
|---|---|---|
| Mirror | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Persian Rugs | $600.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Bathroom items | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Linens, bedsheets & towels | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Fold out sofa | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Laminated Stereo Console | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Stacked Whirlpool Washer & Electric Dryer | $400.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Magazine Table | $25.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Bookcase | $25.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| High Wooden Chairs (2) | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Kitchen Appliances (Water Distiller, 4 Slot Toaster, Breville Juicer, Cuisinart 14-Cup Food Processor, Crockpot, Scotsman Automatic Ice Machine, Knife Set (2)) | $458.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Pelonis Heater (2) & Fan (7) | $245.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Lemonade Dispenser, & Margarita Machine | $130.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Large Coffee Pots (2), Large Pots, & Glass Bowls | $70.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Table Skirts (20) | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Ninja Kitchen System 1500 Watts | $60.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Farberware Compact Oil-less Fryer | $40.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Legal Filing Cabinets | $20.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Westinghouse 14.1 Digital Photo Frame | $40.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Drafting Table | $250.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Map Rack | $15.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Trim 130 86" Trimmer | $75.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Patio Chairs, Glass Top Outdoor Tables (2), Red Patio Umbrellas (18), Tan Patio Umbrellas (4), Lounge Chairs (4), Outdoor Side Tables (2), Folding Wood Chairs (73), Folding long Tables (6), Folding Round Tables (6), Fabric Low Back Chairs (5), Low Back Fabric Conference Chairs (10), Modern Guest Chairs (11) | $1,400.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |

| | | |
|---|---:|---|
| Large Outside Urn (4), Clay Pots (11), Clay Roof Tiles | $800.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Igloos & Coolers | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Extension Cords, Shovels, Rakes, Tools, Ladders (4), Trash Cans (2), Echo Blower, Traffic Cones | $400.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Stihl Edger, Toro Mower, 5 Gallon Gasoline Containers (12) | $270.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Craftsman 5000w Generator, Champion 5000w Generator | $800.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Honda 13 HP Power Washer | $250.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Outdoor Fire Pit, Outdoor Fan (2) | $250.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Bench 6" Grinder & Tire Pump | $30.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| File Cabinets Vertical 4 Drawer (5), File Cabinets Vertical 5 Drawer (2), File Cabinet Lateral 4 drawer (16), File Cabinet Lateral 5 drawer (2), Lateral Map Cabinet 10 drawer | $75.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Office Supplies & Misc. | $300.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Pots, Pans, Mics. Cooking Items | $150.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Misc. Items | $300.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Cell phones (2) & accessories | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Televisions (32" LG TV, Small TV, 52" LG TV, 48" LG TV, 40" Bravia TV, 46" Sharp TV) | $525.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Stereo receiver & equipment | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| DVD player & CDs | $50.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Computers & Monitors (70" Sharp Computer Monitors (2), Dell Precision T1650 Computer, Dell Computer, Dell Monitor & Key Board (3), Dell 5820 Computer, Dell Monitors (3), Dell Precision Tower 3420 Computer, Dell Optiplex 3020 Computer) | $1,075.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| HP Officejet 7410 All-in-one Printer, Kyocera Ecosys W7W Printer | $126.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| JBL Speaker, BOSE Multimedia speaker System | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Camera (2) & accessories | $200.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Ativa Paper Shredder, & Fellowes 125Ci Shredder) | $80.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Dell PowerEdge T630 Server | $200.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Fujitsu fi-7160 Scanner | $125.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |
| Books | $100.00 | Tex. Prop. Code, §42.001(a); Tex. Prop. Code, § 42.002(a)(1) |

| | | |
|---|---:|---|
| Pictures | $5.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(1) |
| Art/paintings (Painting by Luke McConn (2), Crucifix, Deer Head, Mug of Winston Churchill, Small Santos, Pewter Antler Style Candlesticks) | $1,400.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(1) |
| Sports equipment (Dumbells, Hoist V5 Multi-Station Gym, Stationary Bike, Hoist Back Hyper, Walking Treadmill, Hoist Bench, Hoist Fitness Tree, Stairmaster, Punching Bag, Exercise Floor Matts, Bike Rack for Car, Trek Hybrid Bike (2), Mountain Bike, Croquet Sets, Skis, Ski Boots) | $2,870.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(8) |
| Climbing & Camping Gear | $200.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(8) |
| Glock G23 Compact .49<br>AR 15 Semi-Auto Rifle,<br>ammunition & accessories | $1,173.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(7) |
| Wearing apparel, accessories, & shoes | $750.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(5) |
| Eyewear | $100.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(5) |
| Nixon Watch, Cascio Watch, Tissot Watch | $65.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(6) |
| Cufflinks (3 Sets) | $75.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(6) |
| Dogs (3) | $600.00 | Tex. Prop. Code, §42.001(a);<br>Tex. Prop. Code, § 42.002(a)(11) |

43. At the continued meeting of creditors held on April 28, 2022, the Trustee continued the meeting again to May 20, 2022. (Exhibit 53).

44. On May 2, 2022, Engelhart filed her adversary complaint objecting to the dischargeability of the debts of Anzar, Press, Prosperity, and Littlemill. (Adv. Pro. No. 22-6002). (Exhibit 53).

45. On May 20, 2022, at 9:00 a.m. the Trustee held the continued meeting of creditors by telephone, and at the end of the meeting, the Trustee concluded the meeting of creditors. Although the record of the conclusion was entered on the Court's docket on May 23, 2022, the meeting itself was concluded on May 20, 2022, per the actual tape of the 341 meeting on file with the U.S. Trustee's office. (Exhibit 53). In the relevant portions of that tape, the Trustee states:

This is track number 0002. This is the 341 meeting of creditors for the Southern District of Texas um Victoria Division. Today's date is May the 20th 2022, the time is 9:07 a.m. Calling case number 21-60052 Scott Vincent Van Dyke.

\* \* \*

Does anyone have any questions for the Debtor today? [long pause] Alright um there being no one that I can hear on the line that has questions, I'm going to be concluding the meeting today. Thank you for your appearances.

46. On June 22, 2022, the Trustee filed her untimely objections to the Debtor's exemptions. (Dkt. No. 186). That same day, Engelhart and Builders West, Inc. filed untimely joinders to the Trustee's untimely objections. (Dkt. Nos. 187 and 188).

DATED:   October 17, 2022          Respectfully submitted,

**THE PROBUS LAW FIRM**

By:   */s/ Matthew B. Probus*
   **Matthew B. Probus**
   Tex. Bar No. 16341200
   Fed. ID No. 10915

10497 Town and Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)
matthewprobus@theprobuslawfirm.com

-and-

**TRAN SINGH LLP**

By:*/s/Susan Tran Adams*
   **Susan Tran Adams**
   TBN: 24075648
   **Brendon Singh**
   TBN: 24075646

2502 La Branch Street
Houston, Texas 77004
(832) 975-7300 (Telephone)
(832) 975-7301 (Facsimile)

17

stran@ts-llp.com

*ATTORNEYS FOR DEBTOR,*
*SCOTT VINCENT VAN DYKE*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing instrument has been served via electronic means on parties as listed on the court's PACER/ECF noticing system on this 17th day of October 2022.

                                                             */s/ Matthew B. Probus*
                                                             Matthew B. Probus