IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCOTT VINCENT VAN DYKE | § | CASE NO. 21-60052 (CML) |
| | § | (Chapter 7) |
| DEBTOR | § | |

**DEBTOR'S MOTON TO APPROVE COMPROMISE AND SETTLEMENT
PURSUANT TO FED. R. BANKR. P. 9019(a)**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, U.S. BANKRUPTCY JUDGE:

COMES NOW, Debtor Scott Vincent Van Dyke ("Van Dyke") and files this Debtor's Motion to Approve Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) to resolve the Adversary Proceeding of Michael L. Noel and Sue Noel for non-dischargeability of their debt, and, in support thereof, respectfully show as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), (N), & (O). Venue is properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 5009(a) and 9019(a) (the "Bankruptcy Rules").

## BACKGROUND

3. On May 25, 2021 (the "Petition Date"), Scott Vincent Van Dyke (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with a Subchapter V election, commencing the above-styled bankruptcy case (the "Bankruptcy Case"). On or about the same date, Melissa Haselden was appointed Subchapter V Trustee in the Bankruptcy Case.

4. The meeting of creditors was concluded on June 22, 2021. Debtor filed his Subchapter V Plan on December 11, 2021. Several creditors of the estate filed objections to confirmation on December 13, 2021.

5. On January 11, 2022, Debtor filed his Motion to Convert Case to Chapter 7 for the reasons set forth therein and on the Debtor's belief that it would not be possible for him to reorganize under the Plan.

6. On January 31, 2022, the Court entered its Order Converting Case to Chapter 7 [Dkt. No. 129] and on February 11, 2022, Catherine Stone Curtis was appointed Successor Trustee [Dkt. No. 138].

7. On July 19, 2021, Michael L. Noel filed Proof of Claim No. 6 in the Bankruptcy Case (the "Claim"). The Claim is an unsecured claim in the amount of $2,810,011.11, plus pre- and post-judgment interest and fees.

8. On August 23, 2021, Michael L. Noel and Sue Noel (the "Noels") filed their Complaint to Determine Dischargeability of Debt, Adv. Pro. No. 21-6008 (the "Adversary"). In

the Adversary, the Noels seek a determination from the Court that the Claim is not dischargeable in the Bankruptcy Case under Bankruptcy Code Section 523(a)(2).

9. On October 25, 2022, along with certain other parties, the Debtor and the Noels mediated a number of issues with the Honorable David R. Jones (the "Mediator") acting as mediator (the "Mediation"), including the Noels' the Adversary. The parties reached a settlement, as provided in the Mediated Settlement Term Sheet (the "Settlement Agreement"), attached hereto as **Exhibit A**,[1] of the Adversary and other issues as follows (hereinafter the "Settlement"):

   a. Van Dyke Debtor to pay a total of $67,000.00 (the "Settlement Payment") to the Noels on or before December 31, 2022.

   b. Noels will release the abstract of judgment on file as to the Debtor's homestead within five (5) business days of execution of the Settlement Agreement and will file a release of judgment lien in the real property records releasing the abstract of judgment lien in full within ten (10) business days of the Noels' receipt of the full Settlement Payment.

   c. Upon receipt of the full Settlement Payment, Noels to file a stipulation of dismissal with prejudice of the Adversary.

   d. Noels will retain the Claim as an unsecured claim in the Bankruptcy Case, and the Debtor shall not object to the Claim.

   e. Noels agree not to object to the motion to approve the compromise of controversy with Eva S. Engelhart, Chapter 7 Trustee of the Estate of Anglo-Dutch Petroleum International, Inc. and agree not to object to the motion to approve the compromise of controversy with Catherine Curtis, Chapter 7 Trustee of the Estate of Scott Vincent Van Dyke to be filed following the Mediation.

   f. Any disputes regarding the Settlement Agreement will be resolved by Judge Jones in his capacity as Mediator.

   g. Each party to the Settlement Agreement will pay its own attorney's fees and costs. For the avoidance of confusion, Noels do not waive any rights to payment of attorney's fees and costs from the bankruptcy estate as provided in their Claim.

The parties to the Settlement Agreement will take all actions necessary to effectuate the terms of

---

[1] Mrs. Noel was not present at the mediation to sign, but she is signing the mediation agreement and is a party to it and to this settlement.

the Mediated Settlement Term Sheet and will cooperate to complete its approval.

## RELIEF REQUESTED

A.     **Approve Compromise and Settlement Agreement**

10.    Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules, this Court may approve the compromise reached by the Parties.  "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005).  "Compromises are favored in bankruptcy" because they minimize litigation costs and further the parties' interest in expediting the administration of a bankruptcy case. *Myers v. Martin* (*In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. Rev. 1993)).

11.    Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved.  Bankruptcy Rule 9019(a) provides in relevant part that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a).  Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc.* (*In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997); *Conn. Gen. Life Ins. Co v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  Moreover, Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

12. Approval of a proposed compromise is left to the sound discretion of the reviewing court. *See, e.g., In re Hibbard Brown & Co., Inc.*, 217 B.R. 41 (Bankr. S.D.N.Y. 1998) (noting that courts should exercise their discretion "in light of the general public policy favoring settlements"). The burden of establishing the fairness of a compromise rests on the proponent(s) of the compromise; however, a trustee is not required to present a full mini-trial or evidentiary hearing to adjudicate the issues being settled. Rather, when determining whether to approve a compromise, the Court "is not to decide the numerous questions of law and fact raised" by the compromise but is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004); *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

13. In determining whether a proposed compromise is fair and equitable, a court should consider the following factors:

(a) The probability of ultimate success should the claim be litigated;

(b) An educated estimate of: (i) the complexity, expense, and likely duration of such litigation; (ii) possible difficulties of collecting on any judgment which might be obtained; and (iii) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise; and

(c) The comparison of the terms of the settlement and compromise with the likely rewards of litigation, including: (i) uncertainties of fact and law which impact the probability of success in the litigation; and (ii) delay and inconvenience which impact the complexity or duration of the litigation.

*See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.)*, 390 U.S. 414, 424-25 (1968); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-03 (5th Cir. 1980) (decided under the Bankruptcy Act).

14. The Debtor believes that there is a strong probability he would have ultimately succeeded in the Adversary. The Noels alleged that their debt, in the nature of guarantee

5

agreements, was non-dischargeable under 11 U.S.C. § 523(a), because the Debtor represented that he was a successful oil and gas businessman and that the companies he owned, including Anglo Dutch Energy, LLC, were profitable, but failed to disclose, among other things, that "he (i) he had fraudulently transferred of millions of dollars out of the reach of creditors, and (ii) he was being sued by other investors who had never received the amounts to which they were entitled." The Debtor believes that there are a number of problems with the Noels' arguments that would make it unlikely for their Adversary to succeed. Among other things, the underlying investment giving rise to the Noels' debt were notes and participation agreements for investment in drilling of an oil and gas well, which is well recognized in the industry as entailing a large measure of risk. In addition, the Debtor made payments to the Noels over time on each of the investments identified in the Claim. These payments did not satisfy the full amounts owed to the Noels for their investments, but they reflect a good-faith effort by the Debtor to fulfill his obligations to the Noels. Ultimately, the Noels' investments reflect a business deal entailing a sizeable measure of risk that unfortunately did not pan out, and the Noels' Adversary complaint contains no allegations sufficient to demonstrate otherwise.[2]

15. Notwithstanding his belief that he would likely prevail in the Adversary, the Debtor believes that the compromise is a good one, given the complexity, expense, and likely duration of the litigation. The Debtor has considered the complexity, expense, and likely duration of such litigation as being substantial considering the lengthy and acrimonious history between the Debtor and the Noels. The case is in its infancy without even a scheduling order in place. The parties would need to conduct full discovery. The trial would likely last at least 2-3 days. Attorney's fees

---

[2] The Debtor understands that while the Noels acknowledge that proving subjective fraudulent intent can be a challenging standard to satisfy, the Noels do not endorse the Debtor's view that the allegations in their Adversary complaint do not support the relief they sought under Bankruptcy Code Section 523(a)(2).

and expenses through trial alone could run as high as $150,000. After trial, no matter which side wins the judgment would almost certainly be appealed, which after the appeal to the district court and then the Fifth Circuit could cost as much as another $150,000 in fees and expenses. The time to complete the case would in all likelihood take over 3 years given the appellate time tables.

16. Difficulties of collecting on the judgment is not an issue as this is a case against the Debtor.

17. All other factors relevant to a full and fair assessment of the wisdom of the proposed compromise also weighs in favor of approval of this settlement. By resolving this adversary, the Debtor is in a position to successfully complete his case, including his settlement with the Trustee and Eva S. Engelhart, trustee of the ADPI Chapter 7 case. Given the costs and uncertainty of litigation, the Debtor believes that consensual resolution on the terms of the Agreement is the most efficient and beneficial resolution for the Parties and the Court.

18. In sum, the Debtor believes that the determination, allowance, and terms of the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer Ferry*, as expanded upon by *Jackson Brewing*.

19. In light of these considerations, the proposed compromise falls well within the range of reasonableness and meets the standards of *TMT Trailer Ferry*, *Jackson Brewing*, and other applicable law. The parties' agreement buys peace and stops the accrual of litigation expense under terms and conditions acceptable to both parties. The foregoing particularly weighs in favor of the approval of the compromise and settlement in light of the practical reality that "compromises are . . . often times desirable and wise methods of bringing to a close proceeding [that are] otherwise lengthy, complicated and costly." *Jackson Brewing*, 624 F.2d at 602 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

WHEREFORE, Debtor Scott Vincent Van Dyke respectfully requests that (1) the Court enter an order finding that the Settlement Agreement satisfies the applicable standards for such compromises and is approved in all respects; and (2) grant such other and further relief as the Court may deem just and proper.

Dated:  November 1, 2022

THE PROBUS LAW FIRM

By:/s/ *Matthew B. Probus*
Matthew B. Probus
Tex. Bar No. 16341200
Fed. ID No. 10915
10497 Town and Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)
matthewprobus@theprobuslawfirm.com
*ATTORNEYS FOR DEBTOR,*
*SCOTT VINCENT VAN DYKE*

-and-

TRAN SINGH LLP

By:/s/*Susan Tran Adams*
Susan Tran Adams
TBN: 24075648
Brendon Singh
TBN: 24075646
2502 La Branch Street
Houston, Texas 77004
(832) 975-7300 (Telephone)
(832) 975-7301 (Facsimile)
stran@ts-llp.com
*ATTORNEYS FOR DEBTOR,*
*SCOTT VINCENT VAN DYKE*

### CERTIFICATE OF SERVICE

I certify that on the 1st day of November 2022, a true and correct copy of the foregoing was served on the Debtor, counsel for the Debtor, the Trustee, the US Trustee, and all creditors and parties requesting notice in this case via regular US Mail, unless otherwise served by the CM-ECF system.

By:*/s/ Matthew B. Probus*
Matthew B. Probus