IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTT VINCENT VAN DYKE, | § | Case No. 21-60052 |
| | § | |
| Debtor. | § | Chapter 7 Case |
| | § | |

**EMERGENCY MOTION OF CHAPTER 7 TRUSTEE AND DEBTOR
PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY
<u>RULE 9019 FOR ENTRY OF AN ORDER APPROVING SETTLEMENT</u>**

**NOTICE PURSUANT TO BLR 9013-1**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

<span style="color:red">**MOVANT SEEKS EMERGENCY CONSIDERATION OF THIS MOTION SO THAT AN EXPEDITED HEARING ON THE TRUSTEE'S MOTION TO COMPROMISE CAN BE SET TO OCCUR ON OR BEFORE NOVEMBER 15, 2022.**</span>

HB: 4863-8741-9198.3

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Debtor Scott Vincent Van Dyke ("Van Dyke" or "Debtor") and Chapter 7 Trustee, Catherine Stone Curtis ("Trustee") (Collectively, the "Parties") hereby file this *Motion Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement* (the "Motion"). Debtor, Trustee, Eva Engelhart, as Chapter 7 Trustee ("Engelhart Trustee") of the Estate of Anglo-Dutch Petroleum International, Inc. ("ADPI"), Chapter 7 debtor in Bankruptcy Case No. 19-30797 pending in the Southern District of Texas, mediated before the Honorable David R. Jones, Chief United States Bankruptcy Judge and entered into a Mediated Settlement Agreement, a copy of which is attached hereto as Exhibit "A" (the "Settlement"), and now the Parties seek Court approval of the Settlement. In support of the Motion, the Parties shows as follows:

## I.
## NEED FOR EXPEDITED HEARING

1. Van Dyke is the party settling with the Trustee in this matter. Under the settlement, Van Dyke has until December 31, 2022, to obtain a cash-out home equity refinance loan to pay the Trustee the settlement funds. If he does so, he is under no obligation to list, market or sell his homestead. To arrange the loan, obtain its approval, and close on the loan timely, he must have an order approving the compromise to show the lender as the matters in controversy impact the homestead and this cash-out loan. Time is of the essence for Van Dyke. The lender's underwriter is requiring an order approving the compromise before moving forward with the loan process. Van Dyke needs this motion heard on an emergency basis so that the Court can set an expedited hearing on the Trustee's motion for compromise of controversy. In order to assure that he obtains approval and close on the loan timely, Van Dyke must have an expedited hearing on the Trustee's motion

HB: 4863-8741-9198.3

to approve the compromise no later than November 15, 2022. This Court has the power to reduce the response time to a motion under Fed. R. Bankr. P. 9006 and to hear a motion on an expedited basis under 11 U.S.C. § 105(a). Van Dyke's situation requires such an expedited hearing.

## II.
## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the requested relief in this Motion are section 105 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## BACKGROUND

**A.  Background Relating to Bankruptcy Case In re Scott Vincent Van Dyke, Case No. 21-60052**

3. On February 11, 2019, ADPI filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing chapter 7 Case No. 19-30797. with the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

4. On May 25, 2021 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with a Subchapter V election in the United States Bankruptcy Court Southern District of Texas, Victoria division (the "Bankruptcy Court"). On or about the same date, Melissa Haselden was appointed Subchapter V. Trustee.

5. The meeting of creditors was concluded on June 22, 2021. Debtor filed his Subchapter V Plan on December 11, 2021. Several creditors of the estate filed objections to confirmation on December 13, 2021.

HB: 4863-8741-9198.3

6. On January 11, 2022, Debtor filed his Motion to Convert Case to Chapter 7 [Dkt. No. 121] for the reasons set forth therein and on the Debtor's belief that it would not be possible for him to reorganize under the Plan.

7. On January 31, 2022, the Court entered its Order Converting Case to Chapter 7 [Dkt. No. 129] and on February 11, 2022, Catherine Stone Curtis was appointed Successor Trustee [Dkt. No. 138].

8. The Debtor filed amended schedules and statements claiming an interest in various property, including real property located at 1515 South Blvd, Houston, Texas 77006 (the "Property") and two (2) vehicles [Docket No. 162, Schedule A/B lines 1.1, 3.1, 3.2]. The Debtor claimed the Property and vehicles as exempt on schedule C [Docket No. 162, Schedule C].

9. The Trustee thoroughly investigated the Debtor's assets, liabilities, and claims of the Estate. First, the Trustee had an experienced auction house appraiser (Heritage Auction) review the art, jewelry, and personal property of the Debtor located at his residence and personally oversaw the inspection. Moreover, the Trustee, both directly and through her counsel's ongoing, vigorous discussions with Debtor's counsel, conducted informal discovery, reviewed publicly available records of all the Debtor's assets (including public records regarding all of the Debtor's corporate equity interests) and investigated the value of such assets of the Debtor and his entities.

10. Through this investigation, the Trustee has been unable to uncover value for the estate to date other through this settlement. While the Trustee will continue to investigate the claims of the estate, the Debtor's companies hold no mineral interests or lease rights of record. Further, as part of the earlier settlement with the Debtor, the Debtor has filed a declaration supporting the Trustee's opinion that the companies hold no recognizable value. The Trustee is relying on that Declaration in addition to her own due diligence, including the due diligence review

of state property records under all of the Debtor's companies' names. Currently, there are no funds in this Estate. The Trustee has been mindful of maximizing recovery for creditors without needlessly depleting the value of the Estate by running up administrative costs and is aware that she has the means by which to compel the Debtor's cooperation without always needing to resort to a Rule 2004 exam or deposition, as it may be, in a contested matter. The Trustee has never precluded any party from seeking those remedies available to them under the Bankruptcy Code or Bankruptcy Rules.

11. The Trustee timely filed her Objection to the Debtor's Claim of Exemptions (the "Objection") on June 22, 2022 [Docket No. 186], objecting, inter alia, to the exemptions claimed in the Property and vehicles. Other parties[1] filed joinders to the Objection in separate pleadings. [See Docket Nos. 187, 188].

12. On July 8, 2022, Debtor filed his Response to Objections to the Debtor's Exemptions Filed by Catherine S. Curtis, Chapter 7 Trustee, Builders West, Inc., and Eva S. Engelhart, Chapter 7 Trustee and Memorandum of Law in Support Thereof [Docket No. 198].

13. On September 26, 2022, the Parties filed their Joint Motion to Approve Compromise and Settlement Pursuant to Fed. R. Bank. P. 9019(a) (the "Original 9019") [Docket No. 219]. That same day, Debtor filed his Declaration of Scott Vincent Van Dyke (the "Declaration") [Docket No. 220].

14. On October 13, 2022, Debtor filed Debtor's Supplement to Response to the Trustee's Objection and the Joinder to the Objection of Builders West, Inc. and Eva S. Engelhart,

---

[1] In addition to Engelhard Trustee filing a joinder to the Objection, Engelhart Trustee filed 1) a proof of claim for the amount of the final summary judgement she obtained against Van Dyke for fraudulent transfers that he made out of ADPI, in excess of $30,000,000 [Claim 15-1]; 2) an objection to the Debtor's discharge of her claim [Docket No. 51]; and 3) an Original Petition in state district court seeking to have a constructive trust imposed against the Property.

HB: 4863-8741-9198.3

Chapter 7 Trustee (the "Debtor's Supplemental Reply"), in which Debtor argued the Objection was untimely filed [Docket No. 236].

15. On October 21, 2022, Trustee filed Chapter 7 Trustee's Objection to Debtor's Claimed Exemptions ("Trustee's Reply") [Docket No 239]. In Trustee's Reply, Trustee further clarified that she filed her Objection on June 22, 2022, which is 30 days after May 23, 2022, which is the date the meeting was officially concluded by entry of the meeting conclusion on the Court's docket. Debtor contended in his Supplemental Reply that any oral announcement made at the 341 Meeting should supersede a written docket announcement. The Trustee disagrees with the Debtor's unsubstantiated position, believing that it would frustrate the purpose of Bankruptcy Rule 4003(b) in providing a bright-line rule for objecting to exemptions. *cf. In re Cherry*, 341 B.R. 581, 585-86 (Bankr. S.D. Tex. 2006) (Isgur, J.) (citing *In re Smith*, 235 F.3d 472, 476 (9th Cir. 2000)). This dispute is resolved by the settlement.

16. On October 24, 2022, Engelhart Trustee filed her 11 U.S.C. § 522(q)(1)(B)(ii) Objection [Dkt. No. 243] to place a cap on the amount of any exemption claim the Debtor could make to his homestead. While Trustee has standing to pursue a similar action, Trustee has not filed a Section 522(q)(1)(B)(ii) objection due to the Parties entered the Settlement Agreement in that the Parties agreed to the mediation prior to the filing of the § 522(q) objection. But for this settlement, the Trustee would either join that Objection or file her own similar action.

HB: 4863-8741-9198.3

B.  **Background of Settlement Agreement**

17. The Settlement Agreement as it relates to the Van Dyke estate is straightforward and will provide a substantial benefit to the estate. The principal provisions of the Settlement are as follows: [2]

    a. Under the proposed settlement, Van Dyke must pay the Trustee within five (5) days of receipt of funds from a refinancing of the Property, but no later than December 31, 2022, the sum of $249,000. The Debtor has the option to pay the Trustee Payment in two installments of $200,000.00 no later than December 31, 2022 ("First Trustee Installment Payment") and $49,000.00 no later than February 5, 2023 ("Final Trustee Installment Payment").

    b. If the Debtor fails to make the $249,000 payment by December 31, 2022, Van Dyke shall market the Property for sale and shall have until March 30, 2023 (the "Contract Date") to obtain a sales contract and will have until May 31, 2023 to close a sale for the Property (the "Closing Date"). Within five (5) days of closing, the Debtor must pay Trustee the $249,000.

    c. If the Debtor has made the First Installment Payment and fail to pay the Final Trustee Installment Payment, Debtor shall immediately market the Property for Sale. If Debtor has a signed contract for the sale of the Property placed in a title company by May 8, 2023 (the "Later Contract Date"), Debtor shall have until July 7, 2023 to close such sale (the "Later Closing Date"). The Debtor shall fully pay the Trustee Payment no later than five (5) days after the Later Closing Date.

    d. If the Debtor fails to obtain a signed contract by the Contract Date or Later contract Date or close a sale of the Property by the Closing Date or Later Closing Date, the Debtor forfeits all claims to the Property, including any exemptions, and the Property shall be sold by the Trustee.

    e. Upon the sale of the Property, whether by the Debtor or the Trustee, if the Englehart Payment has not been paid in full, the Trustee will remit $282,000.00 to Engelhart within five (5) days of receipt of funds from the sale of the Property.

    f. If and only if the Debtor timely makes the Trustee Payment, either in whole or in installments under the terms set forth above, the Trustee shall file a Notice of Abandonment of the 2016 Chevrolet Silverado and the equity interests of the corporate entities listed in Debtor's Schedule B, #19, which are:

---

[2] The following summary is provided for convenience only and is qualified in its entirety by the Settlement. To the extent of any inconsistency with this summary and the Settlement, the terms of the Settlement govern.

  a. Trepador Energy, LLC

  b. Potomac Assets, LLC

  c. Burgoyne Investments, LLC

  d. Bashton Energy, LLC

  e. Texas Petroleum Operations, LLC

  f. Anglo-Dutch Petroleum International, Inc.

  g. Anglo-Dutch Energy, LLC

  h. Anglo-Dutch (Tenge) LLC

  i. American Oil & Gas, LLC

  j. Anglo-Dutch (Neftenge) LLC

  k. Anglo-Dutch (Everest) LLC

  l. Anglo-Dutch Energy Partners IV LLC

18. Additionally, the Settlement Agreement as it relates to the ADPI estate is also straightforward. The principal provisions of the Settlement are as follows:[3]

 g. Although, the claims docket for ADPI still shows $1,475,967.15 in unsecured claims, because of an earlier recovery in this case, the total amount due on the filed claims is now $145,706.40. Administrative expenses for professional and trustee fees and expenses are not likely to exceed $136,293.60. Under the proposed settlement, Van Dyke must pay the Trustee within five (5) days of receipt of funds from a refinancing of the property at 1515 South Blvd, Houston, Texas 77006 (the "Property"), but no later than December 31, 2022, the sum of $282,000.

 h. If the Debtor fails to make the $282,000 payment by December 31, 2022, Van Dyke shall market the Property for sale and shall have until March 30, 2023 to obtain a sales contract and until May 31, 2023 to close a sale for the Property. Within five (5) days of closing, the Debtor must pay Engelhart the $282,000.

 i. If the Debtor fails to obtain a signed contract by March 30, 2023 or close a sale of the Property by May 31, 2023, the Debtor forfeits all claims to the Property, including any exemptions, and the Property shall be sold by the Van Dyke Trustee, with the Engelhart payment secured by an equitable lien against the proceeds of sale by the Van Dyke Trustee, and the Van Dyke Trustee shall pay Engelhart the $282,000 within five (5) days of closing a sale of the Property.

---

[3] The following summary is provided for convenience only and is qualified in its entirety by the Settlement. To the extent of any inconsistency with this summary and the Settlement, the terms of the Settlement govern.

j. Upon the Trustee's receipt of the $282,000, the Trustee shall be deemed to have distributed all remaining property of the ADPI estate, not including the $282,000, pursuant to 11 U.S.C. §726 (a)(6). The $282,000 shall be used to satisfy approved administrative claims, including but not limited to professional and trustee fees and expenses with the balance distributed in full and final satisfaction of timely filed pre-petition claims. The holders of the 4 timely filed pre-petition claims agree and stipulate that the allowed amount of their claims shall be as follows:

| | | |
|---|---|---|
| Claim 1 | Anzar Settlement Funds Corp. | $82,223.19 |
| Claim 2 | The Estate of Robert Press | $18,911.17 |
| Claim 3 | Littlemill Limited | $23,827.58 |
| Claim 4 | Prosperity Settlement Funding, Inc. | $20,744.46 |

## VI.
## ARGUMENT AND AUTHORITIES

19. The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

20. To determine whether a settlement is "fair and equitable and in the best interests of the estate," courts evaluate the following four factors:

k. The probability of success in the litigation;

l. The complexity and likely duration of the litigation and any attendant expense, inconvenience or delay, and possible problems collecting a judgment;

m. The interest of creditors with proper deference to their reasonable views; and

    n.  The extent to which the settlement is truly the product of arm's length negotiations.

*In re Mirant*, 348 B.R. at 739-40 (citing *Cajun Elec.*, 119 F.3d at 355-56) (citations omitted).

  21. In deciding whether to accept a compromise, the Trustee is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation. *In re Mailman Stream Carpet Cleaning Corp.*, 212 F.3d 632 (1st Cir. 2000). The Trustee had an experienced auction house appraiser review art, jewelry, and personal property, the Property, and personally oversaw the inspection. Trustee also conducted informal discovery, reviewed publicly available records of all the Debtor's assets, and investigated the value of these claims of the Debtor and his entities. A court is not to substitute its own judgment for that of the Trustee, but rather to "canvass the issues" and determine whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983).

  22. The proposed compromise is fair, equitable, and reasonable. The Trustee alleged in her Objection that the Debtor used stolen and/or unlawfully obtained funds to purchase his homestead, which should serve as grounds to deny the homestead exemption claim under state law. The Debtor has argued in his response that the Trustee's objection is not timely filed and is barred. The Debtor has further alleged that the purchase was with lawfully borrowed funds – not stolen or unlawfully obtained funds. Resolution of the issues would require findings regarding the Debtor's state of mind, which are inherently difficult to prove. The Trustee bears the burden of proof, and while the Trustee asserts her Objection is timely, as presented to the Court within the Original 9019, the Objection, and Trustee's Reply. the burden on denying a homestead exemption is high. This makes it difficult if not impossible to determine what the likelihood of success on the merits would be. In addition, litigating the issue to conclusion, including appeal, would involve

HB: 4863-8741-9198.3

considerable cost and expense to the Estate that may abrogate the ultimate benefit to creditors. If the Debtor's arguments were to prevail, the Trustee would recover nothing. The Trustee strongly disagrees with this assertion. Further, the Trustee still has the right to assert an exemption objection under § 522(q). That objection will require a rigorous review of the underlying claims of the Debtor's judgment creditors and is sure to be contested. However, the Trustee has considered this in her business judgment. The Trustee has considered the risk to the Estate in litigating the Objection in coming to her decision on the reasonableness of the settlement. Additionally, resolving the Estate's claims brings value into the estate in a situation where additional value is speculative. The Debtor will likely appeal any order sustaining any objection to the homestead exemption, making the fees and expenses and time involved even more. The Trustee has considered the complexity, expense, and likely duration of such litigation as being substantial considering the lengthy and tortious history between the Debtor and other parties relevant to the determination of the claims.

23. Moreover, regarding the Trustee's objection to the exemptions of personal property items, the Trustee is confident that she would prevail and does not believe that expense or complexity would be factors hindering recovery in that instance. The Trustee has conducted a home inspection and had an informal appraisal of the art and jewelry in the Debtor's possession as of the date of conversion. The Trustee considered the likely value of those assets at auction, professional expenses and costs of sale, issues related to the litigation of whether those assets are property of the estate and claims of the probate estate of the Debtor's deceased mother as to that, and other, property when reaching this settlement.

24. In addition, regarding the Entity Interests, the Trustee and her professionals have undertaken an analysis of the assets of these entities and the Trustee does not believe, based on her

investigation and business judgment, that the equity interests even come close to the valuation on the Debtor's schedules. The Trustee has considered the costs associated with continuing to leave those assets in the estate, including potential tax implications. Moreover, this 9019 Motion will moot the Original 9019, ultimately providing a greater payout to the Estate.

25. Finally, the proposed settlement is the product of a day long mediation.

26. The Trustee believes that the proposed settlement satisfies the requirements established in *Cajun Electric*.

27. Accordingly, in the Trustee's business judgment, the factors weigh in favor of approving the Settlement Agreement. For this and all of the reasons set forth above, the proposed settlement should be approved.

## V.
## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court (a) enter an order approving the Settlement; (b) vacate the original 9019 Motion, and (c) grant such other relief as the Court may deem just and proper.

Dated:  November 8, 2022				Respectfully submitted,


					By */s/Catherine Stone Curtis*
						Catherine Stone Curtis
						State Bar No. 24074100
						P.O. Box 720788
						McAllen, Texas 78504
						(956) 467-1900; (956) 331-2815 fax

					**Chapter 7 Trustee**


**HUSCH BLACKWELL LLP**

By:*/s/ Lynn Hamilton Butler*
    Lynn Hamilton Butler
    State Bar No. 03527350
    111 Congress Avenue, Suite 1400
    Austin, Texas 78707
    (512) 479-9758; (512) 479-1101 fax
    Email:  lynn.butler@huschblackwell.com

**General Counsel for Chapter 7 Trustee**


**THE PROBUS LAW FIRM**

 By:*/s/ Matthew B. Probus*
    Matthew B. Probus
    Tex. Bar No. 16341200
    Fed. ID No. 10915
    10497 Town and Country Way, Suite 930
    Houston, Texas 77024
    (713) 258-2700 (Telephone)
    (713) 258-2701 (Facsimile)
     matthewprobus@theprobuslawfirm.com

**ATTORNEYS FOR DEBTOR, SCOTT VINCENT VAN DYKE**

HB: 4863-8741-9198.3

**TRAN SINGH LLP**
*By:/Susan Tran Adams*
   Susan Tran Adams
   TBN: 24075648
   Brendon Singh
   TBN: 24075646
   2502 La Branch Street
   Houston, Texas 77004
   (832) 975-7300 (Telephone)
   (832) 975-7301 (Facsimile)
   stran@ts-llp.com

**ATTORNEYS FOR DEBTOR, SCOTT VINCENT VAN DYKE**

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2022, a true and correct copy of the foregoing pleading was served to the parties on the attached Service List either *via* this Court's ECF notification system and/or *via* United States first class mail.

                                                */s/ Lynn Hamilton Butler*
                                                Lynn Hamilton Butler

## CERTIFICATE OF ACCURACY

On November 8, 2022, I hereby certify the foregoing pleading for its accuracy.

                                                */s/ Lynn Hamilton Butler*
                                                Lynn Hamilton Butler

HB: 4863-8741-9198.3