IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ANGLO-DUTCH PETROLEUM | § | Case No. 19-30797 |
| INTERANATIONAL, INC., | § | |
| | § | Hon. Jeffrey P. Norman |
| DEBTOR. | § | |
| | § | |
| | § | |
| In re: | § | Chapter 7 (Converted) |
| | § | |
| SCOTT VINCENT VAN DYKE, | § | Case No. 21-60052 |
| | § | |
| DEBTOR. | § | Hon. Christopher M. Lopez |

**BUILDERS WEST, INC.'S MOTION TO
SUBSTANTIVELY CONSOLIDATE BANKRUPTCY CASES**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THIS MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THAT THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED; IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGES:

Builders West, Inc. ("Builders West"), by and through its undersigned counsel, hereby files this *Motion to Substantively Consolidate Bankruptcy Cases* (the "Motion"). In support hereof, Builders West respectfully submits the following:

### RELIEF SOUGHT

1.      Builders' West requests the Court substantively consolidate the Chapter 7 bankruptcy cases of Anglo-Dutch Petroleum International, Inc. ("ADPI")[1] and Scott Vincent Van Dyke.[2]

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### THE ADPI CASE

3.      On February 11, 2019, ADPI filed a voluntary Chapter 7 petition, commencing the ADPI Case. Ms. Eva S. Engelhart was appointed Chapter 7 trustee (the "ADPI Trustee") in the ADPI Case, and she declared that the ADPI Case was an asset case. The ADPI case remains pending.

4.      Mr. Van Dyke is the majority owner of ADPI.[3] ADPI's schedules reflect that it has essentially no physical assets.[4]

5.      At the time ADPI commenced its bankruptcy, it was the subject of several lawsuits brought by ADPI's former investors who had obtained judgments against ADPI.  These former

---

[1]      *In re Anglo-Dutch Petroleum International, Inc.* (Bankr. S.D. Tex. Case No. 19-30797) (the "ADPI Case").

[2]      *In re Scott Vincent Van Dyke* (Bankr. S.D. Tex. Case No. 21-60052) (the "Van Dyke Case").

[3]      Van Dyke Case, Claim No. 15-1, Exhibit 2 at ¶ 3.

[4]      ADPI Case, ECF No. 5.

investors make up the entirety of the claims filed against ADPI,[5] and sought to assert fraudulent transfer claims against ADPI, Mr. Van Dyke, and several other related entities and persons.[6]

6.     In June 2019, the ADPI Trustee removed each of the investors' lawsuits against ADPI to bankruptcy court.[7] Soon thereafter, on July 31, 2019, the ADPI Trustee joined with one of the investors to assert fraudulent transfer claims on behalf of ADPI against Mr. Van Dyke.[8]

7.     The ADPI Trustee asserted that between 2005 and 2006 ADPI, at the direction of Mr. Van Dyke, had fraudulently transferred over $20 million to Mr. Van Dyke and another entity owned by Mr. Van Dyke, Anglo-Dutch Energy, LLC ("ADE").[9] The ADPI Trustee sought recovery of all the funds transferred by ADPI to Mr. Van Dyke, and to execute on any property obtained by Mr. Van Dyke with the funds that he received from ADPI.[10]

8.     On August 27, 2021, summary judgment was entered in favor of the ADPI Trustee on her claims against Mr. Van Dyke.[11] On November 9, 2021, a final judgment was entered against Mr. Van Dyke in the amount of $19,539,546.23 in actual damages, $678,379.55 in attorney's fees, $11,448,032.25 in prejudgment interest, and post-judgment interest at a rate of 1.1%.

## THE VAN DYKE CASE

9.     On May 25, 2021, while the ADPI Trustee's summary judgment motion against Mr. Van Dyke was pending, Mr. Van Dyke filed a voluntary Chapter 11 petition with a Subchapter V election, commencing the Van Dyke Case. On January 31, 2022, the Van Dyke Case was

---

[5]     ADPI Case, Claim Nos. 1, 2, 3, 4.

[6]     *See* ADPI Case, ECF Nos. 59, 60, 61, 62.

[7]     ADPI Case, ECF Nos. 59, 60, 61, 62.

[8]     *See Littlemill, Ltd. v. Van Dyke, et al.* (Bankr. S.D. Tex. Adv. Proc. 19-3544), ECF No. 9.

[9]     *Engelhart, et al. v. Van Dyke, et al.* (S.D. Tex. Civ. Action No. 4:19-cv-02894), ECF No. 22 at ¶ 34.

[10]    *Id.*, ECF No. 22 at ¶¶ 69-71.

[11]    *Id.*, ECF No. 68.

converted to a Chapter 7 liquidation. On February 11, 2022, Ms. Catherine Curtis Stone was appointed chapter 7 trustee (the "Van Dyke Trustee") in the Van Dyke Case.

10.     The only potential non-exempt asset of significant value in the Van Dyke Case is real property improved with a nearly 9,000 square foot house located in the Broadacres neighborhood in Houston, Texas (the "Real Property").[12]  The Real Property is encumbered by a Home Equity Line of Credit Deed of Trust held by Cadence Bank, N.A. and property tax liens held by various local governmental authorities.[13]  At the time of the commencement of the Van Dyke Case, Mr. Van Dyke owed Cadence Bank $1,938,889.36 and owed $257,451.51 in taxes.

11.     Each of the claimants in the ADPI Case is also a claimant in the Van Dyke Case.[14]

12.     Additionally, the ADPI Trustee has filed a $41,475,496.41 claim in the Van Dyke Case.[15]

13.     In addition to the claims secured by the Real Property and the claims from the ADPI Case, there are over $6 million in filed claims in the Van Dyke Case.

14.     Builders West is one of those creditors in the Van Dyke Case, holding a claim in the amount of $1,062,002.90.[16]

## RELATIONSHIP BETWEEN VAN DYKE AND ADPI CASES

15.     ADPI has not operated in the over 15 years since it transferred all its assets to Mr. Van Dyke and ADE.

---

[12]     Van Dyke Case, ECF No. 162.

[13]     Van Dyke Case, Claim Nos. 1-1, 11-1.

[14]     Van Dyke Case, Claim Nos. 13-1, 14-1, 16-1, 17-1.

[15]     Van Dyke Case, Claim No. 15-1.

[16]     Van Dyke Case, Claim No. 12-3.

16.     When it did operate, Mr. Van Dyke was the president, director, and majority owner of ADPI.  Moreover, at least one court found that ADPI was an alter ego of Mr. Van Dyke.[17]

17.     ADPI's only asset is a judgment against Mr. Van Dyke.  All ADPI's creditors are also creditors of Mr. Van Dyke.

18.     Thus, there appears to be an identity of ADPI's assets and liabilities with Mr. Van Dyke.

## ARGUMENT AND AUTHORITIES

19.     The Court's ability to substantively consolidate the Van Dyke and ADPI Cases derives from the equitable powers set out in 11 U.S.C. § 105(a). *See Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219 (1941); *In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1144-1145 n.2 (5th Cir. 1987) (acknowledging that the consolidation of the bankruptcies "in effect 'pierced the corporate veil' between the two entities [and that] [t]he bankruptcy court has authority to order *de facto* disregard of the corporate form through consolidation proceedings."). Interested parties may seek substantive consolidation so that the assets and liabilities of two or more separate estates are merged into a single bankruptcy estate. *Id.* at 219; *In re Coleman*, 417 B.R. 712, 725 (Bankr. S.D. Miss. 2009) (outlining the history of substantive consolidation and citing 2 Collier on Bankruptcy, P. 105.29[2][a] (15th Ed. 2005)).

20.     Substantive consolidation can be a tool to stop debtors from insulating themselves from liabilities and to treat creditors in both bankruptcies equitably.  *Id.* "The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied [and] duplicate and inter-company claims are extinguished…." *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000).

---

[17]     *Engelhart, et al. v. Van Dyke, et al.* (S.D. Tex. Civ. Action No. 4:19-cv-02894), ECF No. 22 at 54-58.

21.     No uniform criteria for substantive consolidation exists across the circuits, and the Fifth Circuit has not adopted any set of factors to be considered.

22.      There are two similar tests to determine whether cases should be consolidated. First, the test used in the Second Circuit considers whether: (i) creditors treated the entities as a single economic unit and didn't rely on their separate identities in giving credit, *see Soviero v. Franklin Nat. Bank,* 328 F.2d 446 (2nd Cir. 1964); or (ii) the debtors' affairs are so entangled that consolidation will benefit the creditor class as a whole and achieve the goal of an equality of distribution, *see Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518-19 (2nd Cir. 1988).  "The two major factors most courts, however, will consider are whether creditors dealt with the debtors prior to the bankruptcy as if they were the same entity and whether the affairs of the debtors after the bankruptcy are so intertwined that the time and expense necessary to identify and allocate their assets and liabilities would likely erode the recovery of those assets and create substantial delays in effecting a distribution to creditors." *In re Coleman*, 417 B.R. at 726. (citing *In re Augie/Restivo Baking Co.,* 860 F.2d at 518. Either element is sufficient to substantively consolidate.  *See In re Augie/Restivo Baking Co.,* 860 F.2d at 518.

23.     The second test was adopted by the D.C. Circuit in *Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.),* 810 F.2d 270 (D.C. Cir. 1987) and the Eleventh Circuit in *Eastgroup Properties v. S. Motel Ass'n, Ltd.,* 935 F.2d 245, 249 (11th Cir. 1991). In this test, the movant  must establish prima facie proof that: (i) a substantial identity exists between the entities to be consolidated; and (ii) consolidation is needed to avoid harm or realize a benefit. *See In re Auto-Train,* 810 F.2d at 276. Then, the burden shifts to the objector to show that it has relied on the separate credit of one of the entities to be consolidated and will be prejudiced by substantive

consolidation. *Id.* The court must then weigh the benefits of consolidation against the potential harm. *Id.*

24.     Other factors that courts have considered in granting motions for substantive consolidation include:

a.      whether the benefits of consolidation outweigh the harm to creditors. *In re Giller,* 962 F.2d 76, 799 (8th Cir. 1999);

b.      the prejudice resulting from not consolidating. *Id*.; and

c.      the identity of management and control of the entities where the separate identities of the entities were ignored. *In re Limited Gary of America*, Inc., 228 B.R. 275 (Bankr. N.D. Okla. 1998).

25.     After consideration of the factors noted above, the Court should grant this Motion to ensure that the creditors in both bankruptcies are treated equally.  *See Sampsell v. Imperial Paper & Color Corp.* at 219; *In re Augie/Restivo Baking Co.* at 519.  In fact, the issue of substantial identity between ADPI and Van Dyke has already been adjudicated,[18] and previous courts have already ruled that ADPI and Van Dyke are alter egos of each other.[19]

26.     Both the ADPI Trustee and the Van Dyke Trustee are focused on a single asset of Mr. Van Dyke's – the Property.  Although the Property is titled to Mr. Van Dyke, the ADPI Trustee contends that the Property was obtained with funds fraudulently obtained from ADPI.

---

[18] The factual and procedural background of the investors' litigation (the "Litigation") leading to the Final Judgment is fully detailed in Eva S. Englehart's *Motion to Confirm Absence of the Automatic Stay* and in Exhibit A.  *See* ECF No. 174,  at ¶ 5   ("[The Texas State Court] also found ADPI, ADE and Debtor were alter egos, and that ADPI fraudulently transferred almost $20,000,000 to ADE and Debtor "with the actual intent to hinder, delay, or defraud."];.

[19] *Id.*; *see also Sysco Food Servs., Inc. v. Trapnell*, 890 S.W. 2d 796, 801 (Tex. 1994) ("Doctrine of 'collateral estoppel' or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding relitigation of issues."); *Hill v. Tx-An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 423 (Tex. App.—Dallas 2014, no pet.); *see Great Am. Ins. Co. v. Hamel*, 525 S.W. 655, 69 n.10 (Tex. 2017) ("[P]rior adjudication of an issue will be given estoppel effect . . . if it was adequately deliberated and firm").

27.     Additionally, while the creditors of ADPI are not identical to the creditors of Mr. Van Dyke, *all* the creditors of ADPI are creditors of Mr. Van Dyke.

28.     Substantively consolidating these cases would benefit both estates, as it avoids the issue of whether ADPI or Mr. Van Dyke are the "true" owners of the Property.

29.     Moreover, consolidating the cases will achieve equality of the creditors among the bankruptcy cases, avoiding the "zero sum" game (or in the case of the proposed settlement, 100%-5% game) of whichever trustee obtains the Property gets fully satisfied creditors while the other trustee's creditors receive nothing.

30.     This would be a particularly unfair result where, as here, ADPI's creditors are also creditors of Mr. Van Dyke and where Mr. Van Dyke's creditors were often willing to extend him credit on the equity Mr. Van Dyke had in the Property.

31.     Accordingly, the Court should substantively consolidate the ADPI Case and Van Dyke Case to ensure the equality of the creditor class as a whole.

## CONCLUSION

WHEREFORE, Builders West respectfully requests that the Court enter an order of substantively consolidating the ADPI Case and Van Dyke Case, and that the Court grant any such other and just relief to which Builders West may be entitled to receive.

Dated: November 18, 2022

                      Respectfully submitted:

By:     */s/ Rachel T. Kubanda*
          Lloyd A. Lim
          State Bar No. 24056871
          Rachel Thompson Kubanda
          State Bar No. 24093258
          Rachel.Kubanda@keanmiller.com
          KEAN MILLER LLP
          711 Louisiana Street,
          South Tower, Suite 1800
          Houston, Texas 77002
          Telephone: (713) 844-3000
          Telecopier: (713) 844-3030

          - and -

          DALE R. MELLENCAMP
          State Bar No. 13920250
          Federal Bar No. 7718
          14711 Pebble Bend Drive
          Houston, Texas 77068
          Email: mellencamp@bairhilty.com
          Telephone: (713)862-5599
          Facsimile: (713)868-9444

          ATTORNEY FOR BUILDERS WEST, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the November 18, 2022, a copy of the foregoing instrument was served on the parties entitled to receive notices through the Court's electronic notification system as permitted by the Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

*/s/ Rachel T. Kubanda*
Rachel T. Kubanda