IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 (Converted) |
| SCOTT VINCENT VAN DYKE, | § | |
| | § | Case No. 21-60052 |
| DEBTOR. | § | Hon. Christopher M. Lopez |

**BUILDERS WEST, INC.'S OBJECTION TO: DEBTOR'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019(A); AND THE EMERGENCY MOTION OF CHAPTER 7 TRUSTEE AND DEBTOR PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING SETTLEMENT**

[Relates to Doc. No. 248 and 249]

TO THE HONORABLE CHRISTOPHER M. LOPEZ:

Builders West, Inc. ("Builders"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Debtor's Motion to Approve Compromise and Settlement Pursuant to Fed. R. Bankr. P. 9019(a)* [Doc. No. 248] (the "Noel 9019 Motion") and the *Emergency Motion of Chapter 7 Trustee and Debtor Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement* [Doc. No. 249] (the "Van Dyke 9019 Motion," together with the Noel 9019 Motion, the "9019 Motions").[1] In support hereof, Builders respectfully submits the following:

**PRELIMINARY STATEMENT**

1. Among other issues, which are set forth more fully below, Builders objects to the 9019 Motions and underlying Proposed Settlement:[2]

---

[1] Capitalized terms shall have the meaning set forth herein or in the 9019 Motions.

[2] The Noel 9019 Motion seeks approval of the Mediated Settlement Agreement (the "Noel Settlement") [Doc. No. 248-1]; the Van Dyke 9019 motion seeks approval of the Mediated Settlement Term Sheet (the "Trustee Settlement") [Doc. No. 249-1]. Together, the Noel Settlement and the Trustee Settlement are referred to as the "Proposed Settlement").

1

(i) the Proposed Settlement intends to resolve any of Builders' Objections (as defined below) in this Case;

(ii) the Proposed Settlement hinders any of Van Dyke's non-settling creditors from recovering a greater distribution, to which they are/may be entitled; and

(iii) Van Dyke and Anglo-Dutch Petroleum, Inc. ("ADPI") are alter-egos of each other, and the claims in Van Dyke's and ADPI's respective bankruptcy cases should be treated as one/singular claims pool.

2. As described in the 9019 Motions and made apparent in the Proposed Settlement, this bankruptcy case and Case No. 19-30797 (the "ADPI Case") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "ADPI Court") are closely connected. The 9019 Motions and the ADPI 9019 Motion (defined below) should not be considered separately because the Proposed Settlement[3] is between and affect the parties in both bankruptcy cases, and the very same Proposed Settlement is pending approval in the ADPI Case.

## BRIEF BACKGROUND

3. To begin, the Proposed Settlement seeks to resolve (vis-à-vis through withdrawal or dismissal with prejudice) certain objections that were filed and still remain pending in this case: (i) the Van Dyke Trustee's *Objection to Debtor's Claimed Exemptions* [Doc. No. 186]; and (ii) ADPI Trustee's *11 U.S.C. § 522(q)(1) Objection* [Doc. No. 243] (collectively, the "Trustee Objections").

4. Builders has joined in those Trustee Objections, and objected on the same basis (hereinafter, "Builders' Objections"). *See* Doc. Nos. 187 and 246.

5. Builders has also objected to the *Motion of Chapter 7 Trustee Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement* [Doc.

---

[3] The Noel Settlement will either be funded by or a precursor to the refinancing of the Real Property pursuant to the Trustees' Settlement, as the negotiated release of Noel's abstract of judgment will facilitate Van Dyke's ability to refinance.

2

4874-4074-3743 v1

No. 85] (the "ADPI 9019 Motion"), filed by Eva Engelhart, as Chapter 7 Trustee ("ADPI Trustee") of ADPI's estate in the ADPI Case. The ADPI 9019 Motion seeks approval of the very same Mediated Settlement Term Sheet (the "ADPI Settlement") [Doc. No. 85-1 in the ADPI Case],[4] as the Trustee Settlement. The ADPI Settlement is set for hearing on December 12, 2022, at 9:30 a.m. in the ADPI Court.

6. The 9019 Motions in this Case are scheduled to be heard on November 21, 2022 at 2:00 p.m.

## OBJECTIONS

7. Bankruptcy Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). The purpose of Bankruptcy Rule 9019 is to ensure that creditors be given notice of the settlement and provided with the opportunity to object and the court must be able to independently review the settlement to ensure that it is in the estate's best interest. *In re Fortran Printing, Inc.*, 297 B.R. 89, 96 (Bankr. N.D. Ohio 2003) ("The principal reason for requiring court approval is that creditors must be given notice of the agreement and an opportunity to object and the court must independently review the agreement to ensure that it is in the best interests of the estate.").

*[Continued to Next Page.]*

---

[4] The Trustee Settlement and the ADPI Settlement are the same three-party agreement and together are referred to as the "Trustees' Settlement." The Trustee Settlement, the Noel Settlement and the ADPI Settlement together are referred to as the "Proposed Settlement."

  **A. Builders objects to the extent that the Proposed Settlement is interpreted as "resolving" Builders' Objections.**

  8. Builders objects to the extent that the Proposed Settlement is interpreted as "resolving" Builders' Objections. As of the date hereof, Builders' Objections have not been formally noticed or set for a hearing [*See* Amended Joinder and Objection, filed at Doc. No. 246][5] – and Builders is entitled to a full evidentiary hearing on its pending objections. To the extent that the Debtor seeks to moot Builders' Objections (vis-à-vis through approval of the 9019 Motions), such an action is simply procedurally improper.

  9. Builders does not believe that the 9019 Motions should be considered before there is a determination on whether Van Dyke is even entitled to his homestead objection – since the homestead exemption is of critical importance to the 9019 Motions.[6]

  **B. Builders' objects to the payment of Noel pursuant to the Noel 9019 Motion and Noel Settlement.**

  10. The Noel Settlement provides that Noel will receive $67,000 on or before December 31, 2022, and keep his unsecured claim against the Van Dyke estate, in exchange for the release of the abstract of judgment on the Real Property, the dismissal of Noel's non-dischargeability adversary proceeding, and his agreement not to object to the Trustees' Settlement. Noel holds an unsecured claim in the amount of $2,810,011.11, plus pre- and post-judgment interest and fees. The preferential treatment of Noel's unsecured claim, and the fact that he does not withdraw his significant claim against the Van Dyke estate, is not in the best interest of creditors. Such preferential treatment violates Section 726(b) of the Bankruptcy Code, which requires payment of unsecured claims be made pro rata among claims of the same kind.

---

[5] Debtor's *Notice of Hybrid Hearing* [Doc. No. 250] does not list Builders' Objections [filed at Doc. No. 246].

[6] Alternatively, Builders would be willing to withdraw this objection to the 9019 Motions to the extent that all the parties of interest agree that Builders' Objections are preserved and can be heard, with an evidentiary hearing, at a later date.

4874-4074-3743 v1

    **C.**    ***Builders objects to the total consideration given by Van Dyke, when the homestead objection could result in millions of dollars to Van Dyke's estate.***

11.    Builders further objects to the total consideration given by Van Dyke pursuant to the Proposed Settlement (*i.e.*, a total of $531,000, if Van Dyke is able to refinance his property by December 31, 2022), when the homestead objection could result in millions of dollars to the Van Dyke estate.

12.    To be clear, two different courts have issued orders that include findings of the Debtor fraudulently transferring assets. *See* **Exhibit A** (MSJ Order), and **Exhibit B**. Moreover, a large portion of these fraudulently transferred funds were used by Van Dyke to purchase the Real Property as evidenced by the State Court Order:

> In February 2005, ADPI loaned Mr. Van Dyke $3,800,000 to purchase his house. This loan was forgiven by ADPI in exchange for Mr. Van Dyke advancing $400,000 to ADPI. This loan is no longer booked by ADPI as an asset.

*See* **Exhibit C** (State Court Order, at ¶ 17).

13.    Because the Real Property was purchased with fraudulently obtained funds, Builders objects to Van Dyke's homestead exemption. To the extent that any amount is attributable to fraudulent proceeds, the Real Property is not entitled to a homestead exemption.

    **D.**    ***Builders objects to the Proposed Settlement because it is not in the best interest of the creditors.***

14.    Builders does not believe the Proposed Settlement is in the best interest of the Debtor's estate or its creditors, and does not believe that the Proposed Settlement represents the prudent and proper exercise of the Van Dyke Trustee's business judgment. The Noel Settlement unfairly favors one unsecured creditor over the others – and, the Van Dyke Trustee is withdrawing her homestead objection (which could result in millions to the Van Dyke estate), while simultaneously allowing the ADPI Trustee to obtain 100% of ADPI's claims with funds derived from Van Dyke's assets. Such a settlement will result in pennies on the dollar for the creditors in Van Dyke's estate. Moreover, the

5

Proposed Settlement unfairly favors one pool of creditor over another (despite the fact that ADPI and Van Dyke are alter-egos of one another).

15. Builders further objects to the extent that 9019 Motions present matters that are unripe. To date, Builders has several pending motions, all of which should be considered *before* the approval of the 9019 Motions:

      a. Builders' *Motion to Dismiss* [Doc. No. 145, filed on March 18, 2022];

      b. Builders' Objections [Doc. Nos. 187 and 246]; and

      c. Builders' *Motion to Substantively Consolidate* [Doc. No. 258]

16. Its pending motions are substantive motions that raise legitimate non-frivolous issues regarding the Van Dyke's Case – whether the Debtor's creditors will do better outside of bankruptcy, whether the Debtor is entitled to his homestead exemption,[7] and whether the Debtor's Case should be consolidated with the case of ADPI.

17. The outcome of any of these motions will presumably change the calculus and merits of all the matters due to be heard on Monday. For example, if the Court grants the *Motion to Substantively Consolidate*, then that would drastically change the calculus for the 9019 Motions as the creditor pools of both the Debtor's and ADPI's estates would be combined.

18. The 9019 Motions (which all attach the same proposed Settlement) in both this Case and the ADPI Case each relate to each other and must be approved by both this Court and the ADPI Court. Further, Builders' *Motion to Substantively Consolidate* raises issues that should be decided by both this Court and the ADPI Court. Accordingly, the 9019 Motions in both cases should be heard together.

[*Continued to Next Page.*]

---

[7] A position that less than a month ago, both Trustee Curtis and Trustee Engelhart strongly disputed.

4874-4074-3743 v1

### E. Builders objects on the grounds that Van Dyke and ADPI are alter-egos of one another, and it would be patently unfair to treat ADPI's creditors preferentially to Van Dyke's creditors.

19. Builders objects to the priority/distribution of payments, and specifically objects to the ADPI estate receiving 100% of ADPI's remaining claims, while Van Dyke's creditors will receive pennies on the dollar.[8]

20. Van Dyke and ADPI have been previously found to be alter-egos of each other, and the claims in Van Dyke's and ADPI's respective bankruptcy cases should be treated as one/singular claims pool. Since Van Dyke and ADPI are alter-egos of one another, it would be patently unfair to treat ADPI's creditors preferentially between the two creditor class pools.

21. The Proposed Settlement is between parties in both cases and affects parties in both cases. Therefore, the Van Dyke 9019 Motion and the ADPI 9019 Motion, both of which seek approval of the same Trustees' Settlement, should be considered together. When the Chapter 7 trustees in separate bankruptcy cases of a corporation and its owner reach a proposed compromise with the respective debtors, the motions to approve the compromises should be considered together. *See In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (Judges Isgur and Steen held a joint evidentiary hearing on the 9019 motions filed in the individual and corporate debtors' cases before denying approval.).

22. Courts must scrutinize a proposed compromise under the criteria in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). As part of this analysis, the Fifth Circuit asks if a compromise serves "the paramount interest of creditors with proper deference to their reasonable views." O*fficial Comm. of Unsecured Creditors v. Cajun Elec. Power*

---

[8] *See* Van Dyke 9019 Motion, at ¶ 18(g). ("Although, the claims docket for ADPI still shows $1,475,967.15 in unsecured claims, because of an earlier recovery in this case, the total amount due on the filed claims is now $145,706,40. Administrative expenses for professional and trustee fees and expenses are not likely to exceed $136,293.60. . . .").

7

4874-4074-3743 v1

*Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir.1997). To answer the question, courts look at "the degree to which creditors object" and "the consideration offered by the settling party." *In re Roqumore*, 393 B.R. at 480 (denying approval of the settlement even though no creditors in either bankruptcy case objected and the corporate and individual bankruptcy estates would receive agreed judgments of $100,000 and $111,500, respectively).

23. Courts must compare the value of the claims being settled against the estimated value given to the estate. *In re Roqumore*, 393 B.R. at 482 (citing *In re Res. Tech. Corp.*, 356 B.R. 435, 443 (Bankr.N.D.Ill.2006)). In this case, $249,000.00 would be paid to the Van Dyke Trustee, even though the homestead objection could result in millions of dollars to the Van Dyke estate. Meanwhile, the Trustees' Settlement proposes that $282,000 be paid to the ADPI estate, which completely satisfies all unsecured and administrative claims in the ADPI Case.

24. When making an independent judgment on the fairness and reasonableness of a settlement, courts must look at all relevant facts and information. *See In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir.1980) ("To assure a proper compromise the bankruptcy judge must be apprised of all the necessary facts for an intelligent, objective and educated evaluation.").

25. The Proposed Settlement will have a devastating effect Van Dyke's estate. While the ADPI Trustee and the ADPI creditors would have their expenses and claims paid in full, the projected distribution to non-settling creditors in the Van Dyke bankruptcy case, including Builders, would be an infinitesimal fraction of their claims. The Proposed Settlement cannot be considered through the lens of only one bankruptcy case. To ignore the detriment borne by the Van Dyke estate would go against the purpose of Section 105 in giving the Court the power and authority to carry out the provisions of the Bankruptcy Code.

4874-4074-3743 v1

## CONCLUSION

Accordingly, Builders requests that the Court either deny the 9019 Motions, or, in the alternative, set the 9019 Motions for a joint evidentiary hearing with the ADPI Motion or abate the 9019 Motions until after an order is issued on Builders' Objections and Motion to Consolidate.

Dated: November 18, 2022

Respectfully submitted:

      By:    */s/ Rachel T. Kubanda*
             Lloyd A. Lim
             State Bar No. 24056871
             Rachel Thompson Kubanda
             State Bar No. 24093258
             Michelle Friery
             State Bar No. 24040934
             KEAN MILLER LLP
             711 Louisiana Street,
             South Tower, Suite 1800
             Houston, Texas 77002
             Telephone: (713) 844-3025
             Telecopier: (713) 844-3030

             *and*

             DALE R. MELLENCAMP
             State Bar No. 13920250
             Federal Bar No. 7718
             14711 Pebble Bend Drive
             Houston, Texas 77068
             Email: mellencamp@bairhilty.com
             Telephone: (713)862-5599
             Facsimile: (713)868-9444

             ATTORNEY FOR BUILDERS WEST, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the November 18, 2022, a copy of the foregoing instrument was served on the parties entitled to receive notices through the Court's electronic notification system as permitted by the Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

*/s/ Rachel T. Kubanda*
Rachel T. Kubanda