IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 (Converted) |
| | § | |
| SCOTT VINCENT VAN DYKE | § | Case No. 21-60052 |
| | § | Hon. Christopher M. Lopez |
| DEBTOR. | § | |

**BUILDERS WEST, INC.'S MOTION TO INTERPRET AND
ENFORCE SETTLEMENT AGREEMENT**

[Relates to Doc. No. 267]

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ:

Builders West, Inc. ("Builders West"), by and through its undersigned counsel, hereby files this *Motion to Interpret and Enforce Settlement Agreement* (the "Motion"). In support hereof, Builders West respectfully submits the following:

**PRELIMINARY STATEMENT**

1. Builders West respectfully requests that this Court interpret the court-approved Settlement Agreement in light of the Debtor's "Non-Homestead Affidavit"[1] (as hereinafter

---

[1] A copy of the Debtor's Non-Homestead Affidavit is attached hereto as **Exhibit A**.

defined) in which the Debtor voluntarily renounces his homestead rights in the property located at 1515 South Blvd. (hereinafter, the "Property").

2. On February 7, 2023, the Debtor executed and recorded his Non-Homestead Affidavit, thereby putting all creditors and parties-of-interest on notice that the Debtor no longer asserts homestead rights to the Property.

3. In the Non-Homestead Affidavit, the Debtor attested to the following:

> I do not now reside upon, use in any manner, nor claim as either a business or residence homestead, nor have any present intention of ever in the future residing upon, using or claiming as either a business or residence homestead, the following described property, and I further hereby renounce and disclaim any homestead and/or community property right, interest or claim in [. . . the Property.]

*See* **Exhibit A** (emphasis added).

4. The Non-Homestead Affidavit makes it clear that the Debtor has voluntarily renounced his homestead rights to the Property, and has elected to do so before the ultimate sale of the Property. Notably, the Debtor further swore that he had no "present intention *of ever in the future* residing upon, using or claiming [ . . . the Property as a] homestead." *See* Exhibit A (emphasis added). Because the Property has now been converted into nonexempt property, the Debtor is not entitled to any portions of the sales proceeds until all of his creditors have been paid in full. The Court, therefore, should order that all proceeds from the sale of the Property by turned over to the Trustee pending further order of the Court regarding distribution of such proceeds.

5. To be clear, Builders West is not requesting that the Settlement Agreement be altered or modified in any way. Rather, Builders West is simply asking the Court to interpret and enforce the Settlement Agreement in light of the Debtor's decision to voluntarily renounce his alleged homestead rights.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. As set forth in the Agreed Settlement Order (defined below), this Court "shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order." [Doc. No. 267, at 3].

## BRIEF BACKGROUND

### A.   *Global Mediation and Settlement Agreement*

8. On October 25, 2022, the Debtor participated in an all-day mediation with the Chapter 7 Trustee and certain parties, including Builders West. At all times during that mediation—and, in fact, at all times during the pendency of this Case—the Debtor has asserted his alleged homestead rights in the Property.

9. On November 22, 2022, the Court entered its *Agreed Order Granting Emergency Motion of Chapter 7 Trustee and Debtor Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement* [Doc. No. 267] ("Agreed Settlement Order"), which approved the mediated agreement between, among other parties, the Debtor and the Chapter 7 Trustee ("Settlement Agreement").

10. As part of this Agreed Settlement Order, and in an effort to work cooperatively with the other major parties of this Case, Builders West agreed to several concessions, including, but not limited to, releasing its recorded abstract of judgment against the Debtor. *See* Agreed Settlement Order, at 2.

11. Pursuant to the Settlement Agreement, the Debtor was required to take certain steps by specific deadlines to pay specific amounts to the Chapter 7 Trustee, as well as the Chapter 7 trustee of Estate of Anglo-Dutch Petroleum International, Inc.

12. The Settlement Agreement set forth a December 31, 2022 deadline by which the Debtor was to obtain a refinancing of his alleged homestead to make the required payments to the Trustees. The Debtor failed to meet this deadline.

13. Since the Debtor failed to meet the December 31st deadline, the Settlement Agreement required that the Debtor "immediately market the Property for sale using Colleen Sherlock of Greenwood King Properties under the same terms and conditions contained in the court order approving her retention."[2] Upon information and belief, the Debtor has finally retained Ms. Sherlock; however, such retention only occurred in the week of March 13, 2023, and only after the Court held a status conference related to the Debtor's failure to comply with the Settlement Agreement.

14. Finally, under the Settlement Agreement, the Debtor has until March 30, 2023, to have "a signed contract for the sale of the Property placed in a title company." In the event that the Debtor fails to meet this March 30th deadline, the Debtor "shall forfeit all claims to the Property, including any exempt property claims, such that all funds resulting from the ultimate sale of the Property shall revert to the Trustee." [*See* Doc. No. 267, at ¶ h]. Builders West shall also "have a judicial lien against the sales proceeds realized by the Trustee's sale of the Property, which judicial lien shall for all purposes be deemed the same as the Abstract in all respects and have the same validity, priority and extent of the Abstract." [*See* Doc. No at 3].

---

[2] On information and belief, the Debtor appears to have finally posted the Property for sale on or around Tuesday, March 14, 2022.

15. Neither the Agreed Settlement Order nor the Settlement Agreement address how proceeds should be distributed in the event that the Debtor voluntarily renounces his homestead rights *before* the sale of the Property. Nevertheless, it is undisputable that the Settlement Agreement expressly contemplates that the Debtor's entitlement to proceeds from the sale of the Property wholly arises from the Debtor's claim that the Property is exempt property.

### B. *Debtor's Breach of the Settlement Agreement and Voluntary Renouncement of his Alleged Homestead Rights*

16. As noted above, the Debtor failed to refinance the Property by the Dec. 31st, 2022 deadline. Accordingly, the Debtor was required to *immediately* market the Property for sale with a specified real estate agent. The Debtor failed to follow the terms of the Settlement Agreement, and the Court's Order approving the Settlement Agreement. Not only was the Property not listed for sale immediately, but the Debtor also failed to immediately engage Ms. Sherlock or her company.

17. On February 7, 2023, the Debtor executed and recorded his Non-Homestead Affidavit, renouncing his homestead rights in the Property.

18. On March 7, 2022, the Chapter 7 Trustee filed its *Emergency Motion for Telephonic Status Conference* [Doc. No. 295], outlining, in part, the following: (i) the Debtor's failure to immediately market the property, (ii) the Debtor's failure to retain Ms. Sherlock; and (iii) the Debtor's attempt to refinance the property *after* the Dec. 31st deadline.

19. The Chapter 7 Trustee also discussed the Debtor's executed and recorded Non-Homestead Affidavit. Specifically, the Trustee's Motion provides that:

> By his actions, **the Debtor has breached the Settlement Order**. Not only did he fail to obtain a "contract for sale" with the realtor as specifically outlined in the Agreement, **but he also now has fully disclaimed any homestead property right in the house at 1515 South Blvd.** [. . . .] The Debtor has acted in a manner that, if allowed to proceed, directly violates the Settlement Order, would deprive the estate

of the benefit of its bargain regarding the mediated Settlement Agreement, as well as deprive Ms. Sherlock and her company of the ability to market and sell the Property and to earn the commission under the terms and conditions approved by this Court. It bears repeating that the Settlement Order was the product of an agreement by the parties (guided by Judge Jones as mediator) for whom counsel was present both in the mediation and in front of this Court when the terms of the agreement were presented and approved by the Court.

Doc. No. 295, at ¶ 5 (emphasis added).

## RELIEF REQUESTED

20. The Debtor continues to play games. The Debtor has, without question, violated the terms of the Settlement Agreement and Agreed Settlement Order. Moreover, by executing his Non-Homestead Affidavit, the Debtor has also now (despite numerous representations to the contrary) testified that the Property is not subject to any homestead rights.

21. To be clear, the Debtor has no homestead rights as a matter of law and in fact because he does not reside on the Property.[3] *See Matter of Bradley*, 960 F.2d 502, 507–08 (5th Cir. 1992) (It is well settled that to establish homestead rights in Texas, a claimant must "show a combination of both overt acts of homestead and the intention on the part of the owner to claim the land as a homestead."); *see also First Interstate Bank v. Bland,* 810 S.W.2d 277, 286 & 314 (Tex. App.—Fort Worth 1991, no writ) (emphasis added) (Possession and use of land by one who owns it and who resides upon it makes it the homestead *in law and in fact*."); *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 315 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) ("[I]nvestigation of intention need not be made when the land is actually put to homestead use. Such actual use is the most satisfactory and convincing evidence of intention."). Because the

---

[3] *See* Exhibit A ("I do not now reside upon, use in any manner, nor claim [the Property as a] residence homestead.").

Debtor does not reside on the Property, the Debtor does not actually "possess and use" the land, which is required for homestead rights to arise.

22. Moreover, and to the extent that the Debtor ever had homestead rights in the Property, the Debtor has elected to abandon those alleged homestead rights.[4] "Once a property is characterized as a homestead under Texas law, its homestead character is lost only after death, *abandonment*, or alienation." *In re Whitcomb*, 617 B.R. 553, 563 (Bankr. S.D. Tex. 2020) (emphasis added) (citing TEX. CONST. ART. 16, § 50(a)). "Abandonment occurs when the homestead claimant stops using the property and forms an intent to forsake it as a homestead." *See Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 455 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing in part *Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App.–Austin 2006, pet. denied) ("Proof of intent not to use the property as a home again is required to show abandonment.")).

23. Here, the Debtor executed and recorded his Non-Homestead Affidavit, in which he clearly and unequivocally renounces his homestead rights in the Property. The Debtor specifically avers that he does "not now reside upon, use in any manner, nor claim" — nor does he have "any *present intention of ever in the future* residing upon, using or claiming" — the Property as his homestead. *See* Ex. A (emphasis added). The execution and recording of this instrument was a voluntary act. The Debtor, therefore, should be bound by his sworn statements.

24. Moreover, the Debtor's Non-Homestead Affidavit was intended to be and was seemingly relied on by the lender who was allegedly ready to provide a refinancing loan. *See* Ex. A (The Debtor states that, "this affidavit is made to Fairview Investment Fund 6, LP ('Lender') to make a loan to me pledging the non-homestead property first described above."). In fact, and as

---

[4] During this Case, the Debtor has made numerous written and verbal representations (including sworn bankruptcy schedules and pleadings), asserting a homestead right in this Property. These previous representations now directly contradict the Debtor's Non-Homestead Affidavit. Builders West reserves the right to further object and/or argue that Debtor has fraudulently misrepresented or otherwise committed fraud on this Court and against his creditors.

indicated by the Trustee's *Emergency Motion for Telephonic Status Conference* [Doc. No. 295], the lender was ready to fund the refinancing loan, in direct violation of the Settlement Agreement:

> [Y]esterday, Debtor's counsel emailed Ms. Curtis and her counsel requesting wiring instructions for a Wednesday closing of some sort. . . . . No further information has been given and no sale motion has been filed. Debtor's counsel emailed counsel for Chapter 7 trustee of Estate of Anglo-Dutch Petroleum International, Inc. and also requested wiring instructions for a *refinancing* of the Debtor's house. . . . . However, no motion has been filed with the Court to approve this refinancing. The Trustee has not been provided with a copy of an escrowed contract for sale.

[*See* Doc. No. 295, at ¶ 3 (citing Exhibits C and D therein)]; *see also Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 591 (Tex. App.—Austin 2013, pet. denied) (finding that lender "was justified in relying on [debtor]'s representation that he was disclaiming any constitutional homestead rights in the Property [by signing a non-homestead affidavit]. Upon review of the record, we conclude that [debtor] is estopped from denying the truth of his homestead disclaimer. Consequently, we also conclude that the evidence conclusively establishes that [debtor] abandoned any homestead rights in the Property at the time of the loan agreement.")

25. Since the Debtor has voluntarily renounced his alleged homestead rights, he is no longer entitled to the proceeds from the sale of the Property. More specifically, the Settlement Agreement and Order unquestionably contemplate that the sale proceeds would be flow to the Debtor on account of his alleged homestead rights. Without such homestead rights, the Debtor's entitlement to sales proceeds under the Settlement Agreement vanishes. The Property is now wholly non-exempt; accordingly, the Court should order that all sales proceeds from the sale of the Property be paid to the Trustee and held pending further order of this Court regarding distribution.

26. In the alternative, the Debtor is not entitled to enforce the Settlement Agreement on account of his numerous breaches of the contract. Builders West, on the other hand and as the

non-breaching party, is entitled to relief on account of the Debtor's breaches. More specifically, Builders West is entitled to invoke the Settlement Agreement's default provisions, which require that the Trustee market and sell the Property upon the Debtor's breach of the Settlement Agreement. Such sale should be free and clear of the Debtor's alleged homestead rights, but subject to Builders West's springing judicial lien.

## PRAYER

27.     Builders West respectfully requests that this Court: (i) find that the Debtor has no homestead rights to the Property and is no longer entitled to any sale proceeds of the Property (in the event that Debtor is able to put the Property under Contract by March 30, 2023) in light of the Debtor's decision to voluntarily renounce his homestead rights; (ii) find that the Debtor has breached the Settlement Agreement, and that the remedy for such breach be that the Trustee (a) market and sell the Property for the benefit of the Estate, and (b) hold all sales proceeds pending further Order of the Court regarding distribution; (iii) order that proceeds be distributed according to the terms of Settlement Agreement, as if the Debtor has already forfeited his homestead rights; and (iv) grant any other just and equitable relief to which it may be entitled.

Dated: March 24, 2023  Respectfully submitted:

By: */s/ Lloyd A. Lim*
Lloyd A. Lim
State Bar No. 24056871
Rachel Thompson Kubanda
State Bar No. 24093258
Michelle Friery
State Bar No. 24040934
KEAN MILLER LLP
711 Louisiana Street,
South Tower, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3025
Telecopier: (713) 844-3030

*and*

DALE R. MELLENCAMP
State Bar No. 13920250
Federal Bar No. 7718
14711 Pebble Bend Drive
Houston, Texas 77068
Email: mellencamp@bairhilty.com
Telephone: (713)862-5599
Facsimile: (713)868-9444

ATTORNEY FOR BUILDERS WEST, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the March 24, 2023, a copy of the foregoing instrument was served on the parties entitled to receive notices through the Court's electronic notification system as permitted by the Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

*/s/ Rachel T. Kubanda*
Rachel T. Kubanda
