United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 28, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| Scott Vincent Van Dyke | § | |
| | § | Case No. 21-60052 |
| Debtor. | § | **Christopher M. Lopez** |

<u>**ORDER AUTHORIZING SALE**</u>

It is **ORDERED**:

Pursuant to the *Agreed Order Granting Emergency Motion of Chapter 7 Trustee and Debtor Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement Agreement* [Docket No. 267] attached hereto as **Exhibit 1**, the Debtor is authorized to sell property located at 1515 South Blvd., Houston, TX 77006 and execute documents necessary for the closing of the sale substantially in the form of the attached Sale Contract for sale attached as **Exhibit 2.**

Signed:  April 28, 2023

Christopher Lopez
United States Bankruptcy Judge

EXHIBIT
1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 22, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTT VINCENT VAN DYKE, | § | Case No. 21-60052 (CML) |
| | § | (Chapter 7 Case) |
| Debtor. | § | |

**AGREED ORDER GRANTING EMERGENCY MOTION OF CHAPTER 7 TRUSTEE
AND DEBTOR PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 9019 FOR ENTRY OF AN
ORDER APPROVING SETTLEMENT AGREEMENT**
**[Relates to Dkt. No. 187, 219, 246, and 249]**

After consideration of the *Emergency Motion Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order Approving Settlement* (the "Motion")[1] filed by Debtor Scott Vincent Van Dyke ("Van Dyke") and Catherine Stone Curtis, chapter 7 Trustee ("Trustee"), together with (i) the arguments and representations of counsel at the hearing on the Motion; (ii) all evidence submitted in connection with the Motion; (iii) all papers on file in this bankruptcy case; (iv) the evidence presented at the hearing on the Motion; and (v) the findings of fact and conclusions of law announced on the record at the hearing, if any, on the Motion, the Court, after due deliberation and good and sufficient cause appearing therefore, and having found and determined, among other things, that the terms of the Settlement Agreement (the "Settlement Agreement") attached to the Motion and hereto as Exhibit "A" satisfies the Fifth Circuit's applicable standards for approving a settlement under Bankruptcy Rule 9019, and after finding that proper and sufficient notice of the Motion has been given, and it appearing that no other or further notice need be given, hereby GRANTS the Motion. Accordingly, it is HEREBY

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Case 21-60052   Document 267   Filed in TXSB on 04/28/23   Page 3 of 27

**ORDERED** that the Motion is **GRANTED** for the reasons set forth therein; and it is further

**ORDERED** that all objections, responses and/or reservation of rights, if any, to the Motion, the relief requested therein and approval of the Settlement Agreement that have not been resolved, withdrawn, waived or settled, are overruled on the merits; and it is further

**ORDERED** that, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement attached as Exhibit A to the Motion is hereby approved in all respects; and it is further

**ORDERED** that the parties to the Settlement Agreement are hereby authorized to implement the Settlement Agreement and take any such other actions as may be necessary and appropriate to effectuate the Settlement Agreement and transactions contemplated therein; and it is further

**ORDERED** that the Joint Motion to Approve Compromise and Settlement Pursuant to Fed. R. Bank. P. 9019(a) [Docket No. 219] is hereby vacated and withdrawn; and it is further

**ORDERED** that Builders West, Inc. shall execute a release of its abstract of judgment, file number RP-2020-402884 (the "Abstract"), on or before November 30, 2022, and file the release of the Abstract in the real property records of Harris County, Texas; and it is further

**ORDERED** that Builders West, Inc. withdraws its joinder to the objection to the Debtor's claimed exemptions at Dkt. No. 187 and its amended joinder to the objection to the Debtor's claimed exemptions at Dkt. No. 246 without prejudice; and it is further

**ORDERED** that if the Debtor either fails to obtain a signed contract by the Contract Date or the Later Contract Date, as applicable and as defined in the Settlement Agreement, or fails to close a sale of the Property by the Closing Date or the Later Closing Date, as applicable and as

defined in the Settlement Agreement, and as a result the Debtor forfeits all claims to the Property, including any exempt property claims, such that all funds resulting from an ultimate sale of the Property revert to the Trustee, then Builders West, Inc. shall have a judicial lien against the sales proceeds realized by the Trustee's sale of the Property, which judicial lien shall for all purposes be deemed the same as the Abstract in all respects and have the same validity, priority and extent of the Abstract; and it is further

ORDERED that Catherine S. Curtis, Chapter 7 Trustee, may object to the validity, priority and extent of Builders West, Inc.'s claim and the limitations period set forth in Bankruptcy Code § 546 for the Trustee to bring an action to avoid the lien shall be tolled until July 7, 2023, with the parties reserving all rights, arguments and defenses as to Builders West, Inc.'s claim; and it is further

ORDERED that if the Debtor does not pay off Cadence Bank in full on or before December 31, 2022, the Debtor shall make monthly adequate protection payments in the amount of $15,000 with the first such payment due on January 15, 2023, and each subsequent payment thereafter on the 15th of each month until Cadence is paid in full or until July 7, 2023, whichever is first; and further it is

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order; and it is further

ORDERED that this Order shall be effective immediately upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising

3

from the implementation of this Order.

Signed:  November 22, 2022

Christopher Lopez
United States Bankruptcy Judge

AGREED TO BY:

**THE PROBUS LAW FIRM**

*/s/ Matthew B. Probus*
Matthew B. Probus
Tex. Bar No. 16341200
Fed. ID No. 10915
10497 Town and Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)
matthewprobus@theprobuslawfirm.com

- and -

**TRAN SINGH LLP**
Susan Tran Adams
TBN: 24075648
Brendon Singh
TBN: 24075646 2502 La Branch Street
Houston, Texas 77004
(832) 975-7300 (Telephone)
(832) 975-7301 (Facsimile)
stran@ts-llp.com
*ATTORNEYS FOR DEBTOR,*
*SCOTT VINCENT VAN DYKE*

**HUSCH BLACKWELL LLP**

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
State Bar No. 03527350
111 Congress Avenue, Suite 1400
Austin, Texas 78707
(512) 479-9758; (512) 479-1101 fax
lynn.butler@huschblackwell.com
*ATTORNEYS FOR CHATHERINE STONE CURTIS,*
*CHAPTER 7 TRUSTEE*

**BADGER LAW, PLLC**

/s/ Travis C. Badger
Travis C. Badger
TXSBN: 24082646
3400 Avenue H, Second Floor
Rosenberg, Texas 77471
Tel. (281) 633-9900
Fax (281) 633-9916
*ATTORNEY FOR CADENCE BANK,*
*AS SUCCESSOR BY MERGER TO CADENCE BANK, N.A.*
*AS SUCCESSOR BY MERGER TO ENCORE BANK,*
*NATIONAL ASSOCIATION*

*/s/ Rachel T. Kubanda*
Lloyd A. Lim
State Bar No. 24056871
Rachel Thompson Kubanda
State Bar No. 24093258
Rachel.Kubanda@keanmiller.com
KEAN MILLER LLP
711 Louisiana Street,
South Tower, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030

and

DALE R. MELLENCAMP
State Bar No. 13920250
Federal Bar No. 7718
14711 Pebble Bend Drive
Houston, Texas 77068
Email: mellencamp@bairhilty.com
Telephone: (713)862-5599
Facsimile: (713)868-9444
*ATTORNEY FOR BUILDERS WEST, INC.*

Norton Rose Fulbright US LLP

*/s/ William R. Greendyke*

William R. Greendyke (SBT 08390450)

Julie Goodrich Harrison (SBT 20492434)

1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
*ATTORNEYS FOR EVA S. ENGELHART,*
*CHAPTER 7 TRUSTEE OF THE ESTATE OF*
*ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC.*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-60052** |
| **Scott Vincent Van Dyke** | § | Chapter 7 |
| | § | |
| | § | |
| DEBTOR. | § | |

## MEDIATED SETTLEMENT TERM SHEET

1.  <u>Parties:</u>  The Parties to this settlement are the following:

    a.  Scott Van Dyke (the "<u>Debtor</u>");

    b.  Catherine S. Curtis, as chapter 7 trustee for the estate of Scott Van Dyke, (the "<u>Trustee</u>")

    c.  Eva S. Engelhart, as chapter 7 trustee for the estate of Anglo-Dutch Petroleum, Inc. ("<u>Engelhart</u>", and collectively with the Debtor and the Trustee, the "<u>Parties</u>").

2.  <u>Pending Action:</u>  In re Scott Van Dyke, Case No. 21-60052 (the "<u>Chapter 7 Case</u>").

3.  <u>Pending Matters:</u>  The below matters are collectively referred to as the "<u>Claims</u>".

    a.  The Trustee's Objection to Debtor's Claimed Exemptions [Dkt. No. 186];

    b.  Engelhart's Joinder to the Trustee's Objection to Debtor's Claim Exemptions [Dkt. No. 188];

    c.  Engelhart's Original Complaint to Deny Dischargeability of Debt Pursuant to 11 U.S.C. § 523 [Adv. No. 22-06002] and any motions pending in Adv. No. 22-06002;

    d.  Engelhart's Original Petition [Cause No. 2022-68697 in the 164th District Court of Harris County, Texas]; and

    e.  Engelhart's 11 U.S.C. § 522(q)(1)(B)(ii) Objection [Dkt. No. 243].

4.  <u>Mediation:</u>  The Parties agreed to attempt to settle the Claims through mediation before the Honorable David R. Jones (the "<u>Mediator</u>").  The Parties acknowledge and agree that this is a compromise of the Claims and nothing contained herein shall be construed as an admission of liability of any Party, all such liability being expressly denied.

1

5. Disputes Resolved: The Parties attended the mediation and reached a settlement, as provided in this Term Sheet, of the Claims.

6. Settlement Terms: The Parties have agreed to the following terms to settle the Claims:

    a. The Parties will execute a formal Settlement Agreement, in a form mutually agreeable, incorporating these settlement terms and agreed upon mutual releases, which releases shall not become effective until payment in full has been received by the Trustee and Engelhart.

    b. Upon execution of the formal Settlement Agreement, the Trustee and Engelhart shall abate the pending Claims and, within five (5) days following receipt of payment in full, shall withdraw or dismiss with prejudice, as applicable, the Claims.

    c. The Debtor shall complete a cash-out refinancing (the "Refinancing") of his mortgage on the property located at 1515 South Blvd., Houston, Texas 77006 (the "Property"). The Trustee and Engelhart shall provide any documentation necessary to facilitate the closing of the Refinancing.

    d. The Debtor shall pay $282,000.00 by wire transfer made payable to Engelhart (the "Engelhart Payment") within five (5) days of receipt of funds from the Refinancing, and in no event later than December 31, 2022.

    e. The Debtor shall pay $249,000.00 by wire transfer made payable to Trustee (the "Trustee Payment") within five (5) days of receipt of funds from the Refinancing, and in no event later than December 31, 2022. The Debtor has the option to pay the Trustee Payment in two installments of $200,000.00 no later than December 31, 2022 ("First Trustee Installment Payment") and $49,000.00 no later than February 5, 2023 ("Final Trustee Installment Payment").

    f. If the Debtor fails to pay both the Engelhart Payment and the First Trustee Installment Payment by December 31, 2022, the Debtor shall immediately market the Property for sale using Colleen Sherlock of Greenwood King Properties under the same terms and conditions contained in the court order approving her retention. If Debtor has a signed contract for the sale of the Property placed in a title company by March 30, 2023 (the "Contract Date"), the Debtor shall have until May 31, 2023 to close such sale (the "Closing Date"). The Debtor shall fully pay the Engelhart Payment and the Trustee Payment no later than five (5) days after the Closing Date.

    g. If the Debtor has paid both the Engelhart Payment and the First Trustee Installment Payment, but fails to pay the Final Trustee Installment Payment by February 6, 2023, the Debtor shall immediately market the Property for sale using Colleen Sherlock of Greenwood King Properties under the same terms and conditions contained in the court order approving her retention. If Debtor has a signed contract for the sale of the Property placed in a title company by May 8, 2023 (the "Later

2

Contract Date"), Debtor shall have until July 7, 2023 to close such sale (the "Later Closing Date"). The Debtor shall fully pay the Trustee Payment no later than five (5) days after the Later Closing Date.

h.    If the Debtor either fails to obtain a signed contract by the Contract Date or the Later Contract Date, as applicable, or fails to close a sale of the Property by the Closing Date or the Later Closing Date, as applicable, the Debtor shall forfeit all claims to the Property, including any exempt property claims, such that all funds resulting from an ultimate sale of the Property shall revert to the Trustee. If such reversion occurs, the Engelhart Payment shall be secured by an equitable lien on the Property. The Trustee shall be entitled to immediate market the Property.

i.    Upon the sale of the Property, whether by the Debtor or the Trustee, if the Englehart Payment has not been paid in full, the Trustee will remit $282,000.00 to Engelhart within five (5) days of receipt of funds from the sale of the Property.

j.    Upon Engelhart's receipt of the Engelhart Payment, whether through the Refinancing or the sale of the Property, Engelhart will distribute all remaining property of the Anglo-Dutch Petroleum International, Inc. estate in accordance with 11 U.S.C § 726(a)(6).

k.    Engelhart shall file a motion to approve the settlement in *In re Anglo-Dutch Petroleum International, Inc.*, Case No. 19-30797, notifying parties in interest that Engelhart's Claims have been settled pursuant to the terms of the Settlement Agreement.

l.    The Trustee shall file a motion to approve the settlement in *In re Scott Van Dyke*, Case No. 21-60052, notifying parties in interest that the Trustee's Claims have been settled pursuant to the terms of the Settlement Agreement.

m.    The Settlement does not include any Chapter 5 causes of action held by the Trustee.

n.    If and only if the Debtor timely makes the Trustee Payment, either in whole or in installments under the terms set forth above, the Trustee shall file a Notice of Abandonment of the 2016 Chevrolet Silverado and the equity interests of the corporate entities listed in Debtor's Schedule B, #19, which are:

    a.    Trepador Energy, LLC
    b.    Potomac Assets, LLC
    c.    Burgoyne Investments, LLC
    d.    Bashton Energy, LLC
    e.    Texas Petroleum Operations, LLC
    f.    Anglo-Dutch Petroleum International, LLC
    g.    Anglo-Dutch Energy, LLC
    h.    Anglo-Dutch (Tenge) LLC
    i.    American Oil & Gas LLC

3

         i.     Anglo-Dutch (Neftenge) LLC

         j.     Anglo-Dutch (Everest) LLC

         k.    Anglo-Dutch Energy Partners IV LLC

7.    Each signatory hereto warrants and represents that:

    a.    He or she has authority to bind the Party or Parties for whom that signatory acts, provided, however, that, as described above in Section 6, Engelhart and the Trustee shall file motions in the Bankruptcy Court seeking approval of the settlement; and

    b.    The claims, suits, rights and/or interests that are the subject matter hereto are owned by the Party asserting same, have not been assigned, transferred or sold, and are free of encumbrance, except for attorneys' fees in this case, if applicable.

8.    This agreement is made and performable in Harris County, Texas, shall be construed in accordance with the laws of the State of Texas, and is enforceable under Texas Rule of Civil Procedure 11 or the applicable Federal Rules of Civil Procedure.

9.    Each signatory to this Term Sheet has carefully read each and every provision of this agreement and has entered into same freely and without duress after having consulted with professionals of his or her choice. EACH SIGNATORY UNDERSTANDS THAT **THIS IS A BINDING AND IRREVOCABLE SETTLEMENT TERM SHEET.**

SIGNED THIS 25th DAY OF OCTOBER 2022.

Scott Van Dyke:                   Catherine S. Curtis, Chapter 7 Trustee of the Estate of Scott Van Dyke:

Eva S. Engelhart, Chapter 7 Trustee of the
Estate of Anglo-Dutch Petroleum International, Inc.:

4

DocuSign Envelope ID: 8AE87356-5377-4182-89F9-5A02410BC4FB
DocuSign signature verification:

**EXHIBIT**

**2**



TREC
TEXAS REAL ESTATE COMMISSION

11-07-2022

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
**ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)**
NOTICE: Not For Use For Condominium Transactions



EQUAL HOUSING
OPPORTUNITY

**1. PARTIES:** The parties to this contract are Scott Van Dyke
(Seller) and Fairview Investment Fund VI, LP                                                                 (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).

A. LAND: Lot_____ Block_____, TR 6 BROADACRES
Addition, City of Houston_____, County of Harris_____,
Texas, known as 1515 South Boulevard, Houston, TX 77006
(address/zip code), or as described on attached exhibit.

B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:  The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. EXCLUSIONS: The following improvements and accessories will  be  retained  by  Seller  and must be removed prior to delivery of possession: N/A
_____.

E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing............................$3,250,000
The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.

B. Sum of all financing described in the attached: ☐  Third Party Financing Addendum,

☐   Loan Assumption Addendum, ☐   Seller Financing Addendum ..........$_____

C. Sales Price (Sum of A and B) .............................................................$3,250,000.00

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☑A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

☐B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.

☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases.  Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer  may terminate the contract within_____days  after  the  date  the  Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

Initialed for identification by Buyer____ and Seller____

TREC NO. 20-17

Rene Sorola      Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056      7136218001      TXR 1601

Contract Concerning <u>1515 South Boulevard, Houston, TX 77006</u>          Page 2 of 11   11-07-2022
                        (Address of Property)

## 5. EARNEST MONEY AND TERMINATION OPTION:

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to <u>Capital Title A Shaddock Company</u>      (Escrow Agent) at <u>21021 Springbrook Plaza drive Suite 150</u> <u>Spring, TX 77379</u>        (address): $ <u>32,500</u>         as earnest money and $<u>100</u> as the Option Fee. The earnest money and Option Fee shall be made payable to Escrow Agent and may be paid separately or combined in a single payment.

  (1) Buyer shall deliver additional earnest money of $<u>0</u>                to Escrow Agent within <u>N/A</u>     days after the Effective Date of this contract.

  (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

  (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

  (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within <u>20</u>     days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by <u>Capital Title A Shaddock Company</u>           (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

  (1) Restrictive covenants common to the platted subdivision in which the Property is located.

  (2) The standard printed exception for standby fees, taxes and assessments.

  (3) Liens created as part of the financing described in Paragraph 3.

  (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

  (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

  (6) The standard printed exception as to marital rights.

  (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

  (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

    ☑ (i) will not be amended or deleted from the title policy; or

    ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer  ☐ Seller.

  (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer [initials]  and Seller [initials]          TREC NO. 20-17

Contract Concerning 1515 South Boulevard, Houston, TX 77006                    Page 3 of 11    11-07-2022
                        (Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the
   Title Company and Buyer's lender(s). (Check one box only)
☐(1) Within N/A____ days after the Effective Date of this contract, Seller shall furnish to Buyer and
   Title Company Seller's existing survey of the Property and a Residential Real Property
   Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails
   to furnish the existing survey or affidavit within the time prescribed, Buyer shall
   obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.**
   If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s),
   Buyer shall obtain a new survey at ☐Seller's ☐Buyer's expense no later than 3 days prior
   to Closing Date.
☐(2) Within N/A____ days after the Effective Date of this contract, Buyer shall obtain a new survey
   at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or
   the date specified in this paragraph, whichever is earlier.
☐(3) Within N/A____ days after the Effective Date of this contract, Seller, at Seller's expense shall
   furnish a new survey to Buyer.
D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title:
   disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
   Commitment other than items 6A(1) through (9) above; or which prohibit the following use or
   activity: residential use_____.
   Buyer must object the earlier of (i) the Closing Date or (ii) 5____ days after Buyer receives the
   Commitment, Exception Documents, and the survey. Buyer's failure to object within the time
   allowed will constitute a waiver of Buyer's right to object; except that the requirements in
   Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to
   incur any expense, Seller shall cure any timely objections of Buyer or any third party lender
   within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be
   extended as necessary. If objections are not cured within the Cure Period, Buyer may, by
   delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this
   contract and the earnest money will be refunded to Buyer; or (ii) waive the objections.    If
   Buyer does not terminate within the time required, Buyer shall be deemed to have waived the
   objections.   If the Commitment or survey is revised or any new Exception Document(s) is
   delivered, Buyer may object to any new matter revealed in the revised Commitment or survey
   or new Exception Document(s) within the same time stated in this paragraph to make
   objections beginning when the revised Commitment, survey, or Exception Document(s) is
   delivered to Buyer.
E. TITLE NOTICES:
   (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the
       Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or
       obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly
       reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to
       object.
   (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☑is ☐is not subject
       to mandatory membership in a property owners association(s). If the Property is subject to
       mandatory membership in a property owners association(s), Seller notifies Buyer under
       §5.012, Texas Property Code, that, as a purchaser of property in the residential community
       identified in Paragraph 2A in which the Property is located, you are obligated to be a
       member of the property owners association(s). Restrictive covenants governing the use and
       occupancy of the Property and all dedicatory instruments governing the establishment,
       maintenance, or operation of this residential community have been or will be recorded in
       the Real Property Records of the county in which the Property is located. Copies of the
       restrictive covenants and dedicatory instruments may be obtained from the county clerk.
       **You are obligated to pay assessments to the property owners association(s). The
       amount of the assessments is subject to change. Your failure to pay the
       assessments could result in enforcement of the association's lien on and the
       foreclosure of the Property.**
       Section 207.003, Property Code, entitles an owner to receive copies of any document that
       governs the establishment, maintenance, or operation of a subdivision, including, but not
       limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a
       property owners' association.  A resale certificate contains information including, but not
       limited to, statements specifying the amount and frequency of regular assessments and the
       style and cause number of lawsuits to which the property owners' association is a party,
       other than lawsuits relating to unpaid ad valorem taxes of an individual member of the
       association.   These documents must be made available to you by the property owners'
       association or the association's agent on your request. **If Buyer is concerned about
       these matters, the TREC promulgated Addendum for Property Subject to
       Mandatory Membership in a Property Owners Association(s) should be used.**
   (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily
       created district providing water, sewer, drainage, or flood control facilities and services,
       Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory
       notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to
       final execution of this contract.

Initialed for identification by Buyer [initials]  and Seller [initials]              TREC NO. 20-17

dotloop signature verification:

Contract Concerning 1515 South Boulevard, Houston, TX 77006                                    Page 4 of 11   11-07-2022
                                          (Address of Property)

    (4) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.

    (5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

    (6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

    (7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

    (8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

    (9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

   (10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

   (11) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, MUD, WCID, PID notices): Harris County Flood Control District

**7. PROPERTY CONDITION:**

  A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

  B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

    ☑ (1) Buyer has received the Notice.

    ☐ (2) Buyer has not received the Notice.  Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

    ☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

  C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

  D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

Initialed for identification by Buyer [signature] and Seller [signature]                    TREC NO. 20-17
                                                                                              TXR 1601
Rene Sorola     Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056        7136218001

er may
terminate this contract and the earnest money will be refunded to Buyer.
F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall
complete all agreed repairs and treatments prior to the Closing Date and obtain any required
permits. The repairs and treatments must be performed by persons who are licensed to
provide such repairs or treatments or, if no license is required by law, are commercially
engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer
with copies of documentation from the repair person(s) showing the scope of work and
payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any
transferable warranties with respect to the repairs and treatments to Buyer at closing. If Seller
fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may
exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for
Seller to complete the repairs and treatments.
G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances,
including asbestos and wastes or other environmental hazards, or the presence of a threatened
or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer
is concerned about these matters, an addendum promulgated by TREC or required by the
parties should be used.
H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a
provider or administrator licensed by the Texas Department of Licensing and Regulation. If
Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the
cost of the residential service contract in an amount not exceeding $0_____. Buyer
should review any residential service contract for the scope of coverage, exclusions and
limitations. **The purchase of a residential service contract is optional. Similar coverage
may be purchased from various companies authorized to do business in Texas.**

**8. BROKERS AND SALES AGENTS:**
A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales
agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business
entity in which the broker or sales agent owns more than 10%, or a trust for which the
broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or
sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing
before entering into a contract of sale. Disclose if applicable:N/A
                                                                                                                   .
B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in
separate written agreements.

**9. CLOSING:**
A. The closing of the sale will be on or before 04/28/2023_____, or within 7 days
after objections made under Paragraph 6D have been cured or waived, whichever date is later
(Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting
party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to
Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish
tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits,
releases, loan documents, transfer of any warranties, and other documents reasonably
required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will
not be satisfied out of the sales proceeds unless securing the payment of any loans
assumed by Buyer and assumed loans will not be in default.
(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code)
will be the obligation of Seller unless provided otherwise in this contract. Transfer fees
assessed by a property owners' association are governed by the Addendum for Property
Subject to Mandatory Membership in a Property Owners Association.

Initialed for identification by Buyer [ ] and Seller [ ]   TREC NO. 20-17
Rene Sorola   Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056   7136218001   TXR 1601

DocuSign Envelope ID: 6AE87356-5377-4189-89F9-5A02410BC1FB
dotloop signature verification:

Contract Concerning <u>1515 South Boulevard, Houston, TX 77006</u>                    Page 6 of 11    11-07-2022
(Address of Property)

**10. POSSESSION:**
    A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
        (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
        (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.)

Lessee has the option to buy the property pursuant to the terms and conditions of the VanDyke Residential Contract Addendum.

**12. SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing:
        (1) Expenses payable by Seller (Seller's Expenses):
            (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
            (b) Seller shall also pay an amount not to exceed $<u>N/A</u>        to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
        (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
    B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money

Initialed for identification by Buyer  [  ] and Seller [  ].

DocuSign Envelope ID: 6AE87359-F377-4189-89F0-5A02410BC1FB
dotloop signature verification:

Contract Concerning <u>1515 South Boulevard, Houston, TX 77006</u>       Page 7 of 11    11-07-2022
(Address of Property)

will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
   A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
   C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

---

Initialed for identification by Buyer   *Obn*   and Seller,         TREC NO. 20-17

Contract Concerning 1515 South Boulevard, Houston, TX 77006 _____ Page 8 of 11    11-07-2022
(Address of Property)

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:** Fairview Special Purpose Entity TBD          **To Seller at:** Scott Van Dyke

_____          1515 South Blvd, Houston, TX 77006

Phone:   310 804-3922                   Phone:   713-955-2700

E-mail/Fax: nels@fpinvest.com           E-mail/Fax: svandyke@txpollc.com

E-mail/Fax: rosann@fpinvest.com         E-mail/Fax: _____
With a copy to Buyer's agent at:        With a copy to Seller's agent at:

renesorola@renesorola.com               sherlock@greenwoodking.com

**22. AGREEMENT OF PARTIES:**  This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.  Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☑ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☑ Other (list):
VanDyke Residential Contract Addendum - Schedule 1
Lease Agreement between Fairview Investment Fund VI, LP and Scott VanDyke

**23. CONSULT AN ATTORNEY BEFORE SIGNING:**  TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                 Seller's
Attorney is: _____           Attorney is: _____

_____        _____

Phone: _____                 Phone: _____

Fax: _____                   Fax: _____

E-mail: _____                E-mail: _____

Initialed for identification by Buyer _____       Seller _____        TREC NO. 20-17
                                                                      TXR 1601
Rene Sorola    Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056       7136218001

DocuSign Envelope ID: 6AF87356 5377 4439 89F9 5A02419BC458
dotloop signature verification:

Contract Concerning 1515 South Boulevard, Houston, TX 77006 _____ Page 9 of 11   11-07-2022
                                    (Address of Property)

EXECUTED the _____ day of _____3/30/2023_____, 20____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_Carine Rasmussen, member, Fairview Investment Fund, VI, LP_        dotloop verified
                                                                   03/30/23 12:15 PM
                                                                   PDT
                                                                   DTJI-UTJY-ATGS-IOBG          _____ 3/30/2023
Buyer                                                              Seller

_____                                                      _____
Buyer                                                             Seller



The form of this contract has been approved by the Texas Real Estate Commission.   TREC forms are
intended for use only by trained real estate license holders. No representation is made as to the legal
validity or adequacy of any provision in any specific transactions. It is not intended for complex
transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000
(http://www.trec.texas.gov) TREC NO. 20-17. This form replaces TREC NO. 20-16.

TREC NO. 20-17
TXR 1601

Rene Sorola          Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056     7136218001

DocuSign Envelope ID: 6AE87356-5377-4439-89F0-5A02410BC45B
dotloop signature verification:

Contract Concerning __1515 South Boulevard, Houston, TX 77006_____ ge 10 of 11    11-07-2022
                              (Address of Property)

---

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| | | |
|---|---|---|
| Keller Williams Metropolitan | 460373 | |
| Other Broker Firm | License No. | |

☑ Buyer only as Buyer's agent
represents
☐ Seller as Listing Broker's subagent

Rene Sorola                                          525976
Associate's Name                                     License No.

Team Name

renesorola@renesorola.com                            832-816-4673
Associate's Email Address                            Phone

Lori Tillman                                         403587
Licensed Supervisor of Associate                     License No.

5050 Westheimer, Suite 266
Other Broker's Address                               Phone

Houston, TX 77056
City                        State                    Zip

---

0411758

Greenwood King Properties
Listing Broker Firm                                  License No.

☐ Seller and Buyer as an intermediary
represents
☑ Seller only as Seller's agent

217959
Colleen Sherlock
Listing Associate's Name                             License No.

Team Name

colleen@greenwoodking.com                            7138586699
Listing Associate's Email Address                    Phone

Elaine                                               0162594
Ellender
Licensed Supervisor of Listing Associate             License No.

3201 Kirby Dr                                        7135240888
Listing Broker's Office Address                      Phone

Houston                      TX                      77008
City                        State                    Zip

Selling Associate's Name                             License No.

Team Name

Selling Associate's Email Address                    Phone

Licensed Supervisor of Selling Associate             License No.

Selling Associate's Office Address

City                        State                    Zip

---

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (3% of sales price _____). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

TREC NO. 20-17
TXR 1601

DocuSign Envelope ID: 6AF87356-5377-4429-89FD-5A02410BC15B
dotloop signature verification

Contract Concerning 1515 South Boulevard, Houston, TX 77006 _____ Page 11 of 11    11-07-2022
                        (Address of Property)

---

### OPTION FEE RECEIPT

Receipt of $100.00 _____ (Option Fee) in the form of _____
is acknowledged.

_____
Escrow Agent                                                                    Date

### EARNEST MONEY RECEIPT

Receipt of $ 32,500.00 _____ Earnest Money in the form of _____
is acknowledged.

_____
Escrow Agent                          Received by    Email Address                 Date/Time

_____
Address                                                                          Phone

_____
City                          State                  Zip                          Fax

### CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____
Escrow Agent                          Received by    Email Address                 Date

_____
Address                                                                          Phone

_____
City                          State                  Zip                          Fax

### ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $.00 _____ additional Earnest Money in the form of _____
is acknowledged.

_____
Escrow Agent                          Received by    Email Address                 Date/Time

_____
Address                                                                          Phone

_____
City                          State                  Zip                          Fax

---

Rene Sorola    Keller Williams - Houston Metropolitan 5050 Westheimer Rd. 200 Houston, TX 77056    7136218001    TREC NO. 20-17
                                                                                                                  TXR 1601

DocuSign Envelope ID: 6AE87356-5377-4429-89F0-5A02410BC45B
dotloop signature verification.

> Van Dyke - Residential Contract Addendum
>
> Schedule 1

Date:            March 29, 2023

By and Between:  Scott V. Van Dyke, an individual ("*Seller*") and Fairview Investment Fund VI, LP, a Delaware limited partnership ("*Buyer*")

Premises:        1515 South Blvd., Houston, TX 77006

This Addendum ("*Addendum*") to One to Four Family Residential Contract (Resale) (the "*Contract*") shall modify and amend the Contract as set forth below. Except as expressly amended herein, the Lease remains in full force and effect. In the event of any conflict or inconsistency between the terms of the Contract and this Addendum, this Addendum shall prevail. The defined terms set forth in this Addendum shall have the same meanings as the defined terms set forth in the Contract.

**24.    Leaseback.**    Effective upon the date of closing set forth in the Contract at Section 9, Seller, as tenant ("*Tenant*") and Buyer, as landlord ("*Landlord*") shall enter into a post-closing lease agreement ("*Lease*") in the form of a standard residential lease for a single family house in the geographic area. The term of the Lease shall be for 12 months, with rent due and payable each month at the rate of **Thirty Thousand and 0/100 Dollars** per month (**$30,000.00/month**).

**25.    Option to Purchase.**    Tenant shall have the option to purchase the Premises in the form of the provisions attached hereto as **Schedule 1**.



DocuSign Envelope ID: 6AE87356-5377-4439-89F0-5A02410BC15B
dotloop signature verification:

## SCHEDULE 1

### 25.    Option To Purchase.

**25.1**    Tenant shall have the option to purchase the Premises ("**_Purchase Option_**") at any time during the Lease Term for a purchase price equal to the Purchase Current Market Value (as defined herein) and upon the following terms and conditions set forth in this Section.

(a)    Tenant may provide written notice to Landlord ("**_Option Notice_**") of its intention to purchase the Premises at any during the Lease Term. The purchase price shall be equal to **Three Million Nine Hundred Thousand and 0/100 Dollars ($3,900,000.00)**, plus any fees, costs and expenses related to the purchase and ownership of the Property paid by the Landlord in excess of the $3,250,000 purchase price, less the total amount of any rent Tenant has paid to Landlord pursuant to the Lease at the time of closing.

(b)    Closing shall occur on the fifteenth (15th) day following the satisfaction of the contingencies and conditions set forth in this Section. If the proposed closing date falls on a weekend or holiday, the closing shall occur on the next following business day.

(c)    The closing shall occur at the office of such title company as may be mutually agreeable to the Parties ("**_Title Company_**"). The Title Company shall act as the escrow agent with respect to the closing of the transaction. The transfer of the Premises shall be closed through a "New York Style" deed and money escrow with the Title Company. The cost of the escrow shall be divided equally between the parties. If the closing date falls after the termination or expiration of the Lease Term, the Lease Term shall be automatically extended on the same terms and conditions until closing.

(d)    Landlord shall convey, or cause to be conveyed, to Tenant, or its assignee or nominee, at closing, title to the Premises by delivery of a special warranty deed ("**_Deed_**"), subject only to the Permitted Exceptions (as defined herein). The term "**_Permitted Exceptions_**" shall be: (i) covenants, conditions, restrictions, easements, rights-of-way and other matters of record affecting the Premises that Tenant accepts and do not impair Tenant's use of the Premises; and (ii) real estate taxes not yet due and payable.

(e)    As soon as practicable after the Option Notice is sent, Tenant, at Tenant's cost and expense, shall obtain a current title insurance commitment and copies of the vesting deed and underlying title documents of record from the Title Company and deliver same to Landlord. Tenant, at Tenant's cost and expense, may also obtain and deliver to Landlord and the Title Company, in a form satisfactory to Tenant and the Title Company, a current ALTA/ASCM survey of the Premises. Tenant shall have ten business (10) days from receipt of the title commitment, vesting deed, underlying title documents of record and survey, to notify Landlord, in writing, of any title or survey defects or objections that Tenant may have to the title commitment or survey. Landlord shall then have ten business (10) business days from receipt of Tenant's written notice to satisfy or cure the title and survey defects or objections raised by Tenant. Landlord shall use good efforts to satisfy or cure any objections to title or survey that Tenant may raise. If there are any liens of an ascertainable amount affecting title to the Premises that may be cured or satisfied by the payment of money, Tenant may use all or any portion of the closing proceeds to cure title. If Landlord is unable to cure the title and survey objections that the Tenant may have and which Landlord is obligated to cure hereunder or any of the other conditions contained herein are unable to be satisfied by Landlord, and Landlord is unable to close this transaction, then Tenant shall have the right, without limitation of any other rights and/or remedies it may have, to terminate its obligation to



CRu
03/30/23
12:35 PM PDT
dotloop verified

DocuSign Envelope ID: 6AE87356-5377-4439-89F9-5A02410BC15B
dotloop signature verification:

Case 21-60052 Document 35-2 Filed in TXSB on 04/28/23 Page 26 of 27

purchase the Premises under the Option Notice, without liability, and in such case, this Lease shall remain in full force and effect in accordance with the terms and conditions contained herein.

(f)     Landlord shall deliver to the Title Company, on or prior to the closing date, the following documents mutually and reasonably satisfactory to Landlord and Tenant (all of which shall be duly executed and acknowledged where required): (i) the Deed conveying fee simple title to the Premises free and clear of all liens, encumbrances, easements, and restrictions, except for the Permitted Exceptions; (ii) a title affidavit executed by Landlord in a form reasonably satisfactory to the Title Company and containing the minimum representations that the Title Company shall require in order to issue an owner's policy of title insurance insuring Tenant's, or Tenant's nominee's or assignee's, fee simple title to the Premises with extended coverage over the general exceptions; (iii) completed Form 1099-S, or effective equivalent thereof, describing the sale of the Premises; (iv) an affidavit that Landlord is not a "foreign person" as such term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended; (v) a closing or settlement statement; (vi) state, county and local transfer declarations; and (vii) any other documents that are reasonably required by Tenant or the Title Company to consummate the transactions contemplated hereunder. Tenant shall be liable for the recording costs of the Deed and Landlord shall be liable for the recording costs of any documents necessary to clear title.

(g)     Tenant shall deliver to the Title Company, on or prior to the closing, the following documents mutually and reasonably satisfactory to Landlord and Tenant (all of which shall be duly executed and acknowledged where required): (i) a closing or settlement statement; (ii) state, county and local transfer declarations; and (iii) any other documents that are reasonably required by Landlord or the Title Company.

(h)     As a condition to closing, Landlord shall cause the Title Company to issue to Tenant, or Tenant's assignee or nominee, an owner's policy of title insurance with extended coverage over the general exceptions, in the amount of the purchase price, subject only to Permitted Exceptions. Tenant shall be liable for the premium amount for the owner's policy of title insurance.

(i)     Landlord shall pay the amount of any state and county transfer or transaction taxes, imposed on the transfer of title to the Premises. Local or municipal transfer or transaction taxes, if any, imposed on the transfer of title to the Premises shall be allocated and paid as set forth in the applicable ordinance. Landlord shall provide any paid water bills or water certifications as may be required by law. The parties shall jointly furnish completed transfer declarations at closing as required by law.

(j)     Proratable items, if any, shall be prorated as of the closing date to the extent applicable.

(k)     Landlord represents and warrants to Tenant as of closing as follows: (i) Landlord is duly organized and existing under the laws of the state of its formation; (ii) the individuals executing this closing documents, including the Deed, on behalf of Landlord have the authority to execute same, and no further consents or approvals from any person or entity, are necessary in order to consummate the transaction contemplated hereby; (iii) Landlord has the right, power and authority to consummate the transaction contemplated hereby; (iv) the Purchase Option agreement and all other agreements contemplated hereby constitute binding obligations of Landlord and are enforceable against Landlord in accordance with the terms hereof; (v) Landlord has good and marketable title to the property; (vi) there are no unrecorded covenants, conditions, restrictions, agreements, easements or other documents affecting the Premises; (vii) Landlord is not in default under any covenants, conditions, restrictions, agreements, easements or other documents affecting the Premises; (viii) Landlord has received no notice of any special assessment, eminent domain, condemnation, zoning change, zoning, building, fire, health, environmental or other violations relating to the Premises; (ix) there is no pending or threatened litigation that would in any way affect the Premises or Tenant's rights with respect to the Premises or this Purchase



CRw
03/30/23
12:35 PM PDT
dotloop verified

DocuSign Envelope ID: 6AF87356-5377-4439-89F8-5A02410BC458

dotloop signature verification:

Option; and (x) to Landlord's knowledge, the Premises is in compliance with all applicable federal, state and local laws. These representations and warranties shall survive closing.

(l)       In the event of a casualty or condemnation affecting the Building or the Premises prior to closing, Tenant shall have the right to terminate its obligation to purchase the Premises under the Option Notice, without liability.

(m)      Any broker's commissions, if any, in connection with the sale of the Premises pursuant to the Purchase Option hereunder shall be the responsibility of Landlord.

**25.2**     If the closing does not occur by reason of Landlord's default, Tenant shall have all rights and remedies available to Tenant at law and/or in equity, including, without limitation, the right of specific performance.

**25.3**     The Memorandum of Lease, if any, shall contain notice of the Purchase Option set forth in this Section and such Purchase Option shall be binding upon Landlord, its successors, assigns and future grantees.

Signed:

3 - 30 - 2023

Scott V. Van Dyke, an Individual ("*Seller*")

*Carson Rasmussen, member Fairview Investment Fund,*    dotloop verified
*VI, LP*                                                03/30/23 12:35 PM PDT
                                                        C5KA-7ENP-LA4N-1CJO

Fairview Investment Fund VI, LP, a Delaware limited partnership ("*Buyer*")