IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SCOTT VINCENT VAN DYKE, | § | CASE NO. 21-60052 (CML) |
| | § | (Chapter 7) |
| Debtor. | § | |

**DEBTOR'S REPLY TO RESPONSE OF MARY KATHERINE ALONSO, RUDOLPH M. CULP, AND SARAH PATEL PACHECO TO <u>MOTION FOR AN ORDER TO APPEAR AND SHOW CAUSE</u>**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, U.S. BANKRUPTCY JUDGE:

COMES NOW, SCOTT VINCENT VAN DYKE, Debtor in the above styled Chapter 7 bankruptcy case, and makes this his *Debtor's Reply to Response of Mary Katherine Alonso, Rudolph M. Culp, and Sarah Patel Pacheco to Motion for an Order to Appear and Show Cause*, and would respectfully show the Court as follows:

<u>HISTORY OF THE DISPUTE</u>

1. To fully appreciate the issue at hand, this Court must understand the history and background behind the probate litigation.

2. The Respondents contend in the probate litigation that the Debtor breached his fiduciary duty to his mother and her probate estate by taking money from her for his own benefit both while she was alive and while the Debtor was acting for her under her Power of Attorney. Respondents contend that from 2014 through 2021 the Debtor diverted a total of $513,767.00 from his mother to Anglo-Dutch Energy, LLC, to himself, and to another one of his companies. What the Respondents fail to disclose is that the funds that were paid to Debtor only partially reimbursed him for the over $1.7 million Debtor paid out of his own money during the same period to support his mother and to pay for her obligations, as follows:

1

a. The Debtor's mother owned a 35% membership interest in Anglo-Dutch Energy LLC ("Anglo-Dutch"), and the Debtor owed a 65% membership interest. From December 2016 through September 2020, Anglo-Dutch needed an infusion of $730,818.24 to meet its obligations. The Debtor's mother did not have the funds to meet her 35% share of the capital requirements, so the Debtor lent Anglo-Dutch $255,786.38 on her behalf.
b. Anglo-Dutch paid $1,152,066.62 for the Debtor's mother's healthcare workers and other related expenses. Of these funds, $748,843.30 represented the Debtor's 65% membership interest and were moneys that could have otherwise been distributed to the Debtor.
c. In addition to a. and b. above, the Debtor personally paid a total of $715,074.20 for his mother's expenses that included, but were not limited to living expenses, medical, caretakers, mortgage, utilities, taxes, and travel.

(Exhibit 1, ¶ 2).

3. After paying for years all his mother's expenses with almost no assistance from his sisters, on April 11, 2021, the Debtor met with Respondent Mary Katherine Alonso and her husband, Pedro Alonso to ask for help. (Exhibit 1, ¶ 3). Mary Katherine Alonso and Pedro Alonso are retired and spend a large amount of time travelling and staying at their homes across the country. (Exhibit 1, ¶ 3). The Debtor explained how the ongoing Covid-19 pandemic had caused their mother and the Debtor to lose their oil and gas revenue. (Exhibit 1, ¶ 3). He explained his need to be able to make short business trips to raise investments but could not travel since their mother had emergencies from time-to-time which required him to stay in Houston. (Exhibit 1, ¶ 3). Since they were retired, he asked if Mary Katherine Alonso and her husband would help by staying in Houston from time to time to be available in the event their mother had an emergency so he could travel and raise investments. (Exhibit 1, ¶ 3). He also explained that he needed to put Anglo-Dutch into voluntary Chapter 11 and needed $50,000 to pay for Okin Adams LLP's bankruptcy representation. (Exhibit 1, ¶ 3). Mary Katherine and Pedro Alonso said the following:

a. They were willing to lend the $50,000 but they wanted their mother to be the borrower, not the Debtor or Anglo-Dutch. (Exhibit 1, ¶ 3; Exhibit 2)

    b. They were not willing to come to Houston to be available to assist their mother in the event of an emergency. Instead, they recommended that the Debtor place their mother in a senior living facility. They were willing to pay the cost of a senior living facility but only for the short term.

    c. They wanted the Debtor to sell their mother's townhouse. From the sale proceeds, they wanted to be reimbursed for the $50,000 loan for the bankruptcy engagement of Okin Adams LLP, and they wanted to be fully reimbursed any money they paid to support their mother.

    d. They advised the Debtor that their mother's furniture and antiques should also be sold and that any excess proceeds from sale of the townhouse and personal items should be used to support their Mother and to give the Debtor some reimbursement for all the money that he had supported their Mother with so that he could start a new business and again be the one who would again fully support their Mother.

(Exhibit 1, ¶ 3).

4. On May 3, 2021, Mary Katherine and Pedro Alonso loaned $25,000 to their mother so that the Debtor could use the loan proceeds to hire Tran Singh LLP as his personal bankruptcy counsel and file for Chapter 11 bankruptcy. (Exhibit 1, ¶ 4; Exhibit 3). The terms of the note also provide that the proceeds from the sale of the townhouse would be used to fully pay the note.

### DEBTOR BROUGHT DISCHARGE TO PROBATE COURT'S ATTENTION QUICKLY

5. The Respondents accuse the Debtor of laying behind the log in Probate Court by not bringing his discharge to the parties' and the court's attention for 18 months. This is false, and the Respondents know this is false. The Debtor's discharge order was entered on December 6, 2022, and on January 26, 2023, the Debtor filed his Scott Vincent Van Dyke's Brief on the Court's Continuing Jurisdiction Following Discharge (the "Discharge Order Brief"). (Exhibit 4). The Debtor brought his discharge order before Mary Katherine Alonso and the Probate Court in the starkest of terms in the first paragraph of the brief:

I.

Introduction

1. There is no genuine issue of material fact that the Defendant is a debtor in a bankruptcy case pending under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") and has received a discharge order discharging him of all prepetition debts. Mary Katherine brought suit against Scott in this proceeding alleging breach of fiduciary duty and other causes of action. These claims are prepetition claims and have been discharged in Scott's Chapter 7 bankruptcy case. As Mary Katherine's claims were discharged through Scott's bankruptcy the Court should not enter orders compelling Scott to produce further discovery in this proceeding for use in Mary Katherine's discharged claims.

(Exhibit 4).

The Debtor expanded on the impact of the Discharge Order in the first paragraph of the argument section in the Discharge Order Brief, explaining:

V.

Applicable Argument

12. Under Rule 94 of the Texas Rules of Civil Procedure, a discharge in bankruptcy is an affirmative defense to a claim. TEX. R. CIV. P. 94. There is no question that the Debtor has received his order of discharge in his Chapter 7 bankruptcy case. (Exhibits 1 and 12). There is also no question that Mary Katherine's claims against Scott re "pre-

> petition claims" subject to discharge by Scott in his Bankruptcy Case. Mary Katherine filed her Ancillary Petition on December 17, 2021, well before Scott's Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code. (Exhibits 1 and 4). The conduct that Mary Katherine alleges as grounds for her claim in the Ancillary Petition occurred prior to December 17, 2021. (See Exhibits 1 and 4). Scott's Bankruptcy Case was filed on May 25, 2021 and converted to a case under Chapter 7 of the Bankruptcy Code on January 31, 2022. (Exhibits 1, 2, and 6). The Bankruptcy Court entered an order of discharge on December 6, 2022, discharging the Defendant of all debts not excepted from discharge. (Exhibits 1 and 12).

(Exhibit 4, p. 4-5).

And as if this were not enough to put Mary Katherine Alonso on notice that their actions were in violation of the post-discharge injunction, the Debtor's point-blank explanation of it on page 6 of the Discharge Order Brief certainly put her on notice:

> 14. Further, a discharge in a bankruptcy case "operates as an injunction against the . . . continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Thus, the Plaintiff's claim is not only discharged, but the Plaintiff is enjoined from pursuing her claims.

(Exhibit 4, p. 6).

In the Debtor's last paragraph of the Discharge Order Brief, the Debtor again pointed out that Mary Katherine Alonso had not filed an adversary objecting to discharge of the claims and the claims were discharged:

> 15. The Court should, therefore, find that Mary Katherine had the right to object to the discharge of her claims against Scott by appearing before the Bankruptcy Court and requesting that relief, but did not do so and, as a result, her claims against Scott were discharged by the Bankruptcy Court on December 6, 2022. The Court should further find that the Bankruptcy Court's order of discharge is effective as to the claims Mary Katherine pursues against Scott in this proceeding and bars her from pursuing discovery against Scott for the purpose of advancing those claims. The Court should, therefore, decline to enter an order compelling Scott to further respond to bankruptcy or enter any orders awarding Mary Katherine damages for the claims the Bankruptcy Court discharged on December 6, 2022.

(Exhibit 4, p. 6).

6. So, the Respondents statement that "The Debtor himself waited over eighteen months to raise this issue" is just flat out false. It is frankly a shameful attempt by Respondents to mislead this Court. What makes this statement even more deplorable is that Mary Katherine Alonso joined issue with the Discharge Order Brief. And she was not only represented by her probate counsel, but by one of the Southern District of Texas' most prominent bankruptcy attorneys – Shelby Jordan of Jordan & Ortiz in Corpus Christi. Alonso submitted an 18-page response brief. (See Exhibit 5). There is no question that Alonso was aware of the Debtor's contention that her claims were discharged and that she was barred from proceeding by the post-discharge injunction.

7. But the Debtor did not stop at this. The Debtor filed a reply to Alonso's response brief, and in the opening paragraph boiled the issue down to its salient point:

> **I.**
> **INTRODUCTION**
>
> 1. The simple question this Court is asked to determine is whether the claims brought by Mary Katherine Alonso ("Alonso")[1] have been discharged by the Bankruptcy Court's December 6, 2022, Order of Discharge (the "Order") and are now barred. The answer is a simple yes, the claims are barred. Alonso's briefing about jurisdiction, although interesting, is irrelevant. In fact, Alonso does not explain or make any argument as to why her claims are not discharged—the core purpose of her brief.[2] Her arguments should be disregarded.

(Exhibit 6, p. 1).

The Debtor explained in this reply why this Court's order lifting the automatic stay had no impact on discharge of the claims. The Respondents cannot claim ignorance of all these events in the probate court and the impact of the discharge order. Mary Katherine Alonso is now represented by probate counsel at Jackson Walker and before this Court by bankruptcy counsel at Jackson Walker.

8. The Respondents try to paint their intentional violation of the post-discharge injunction by mischaracterizing other events in the Probate fiduciary litigation. Respondents boldly claim:

> In the meantime, the Debtor filed his original answer in the Probate Court, engaged in discovery in the Probate Court, [MC1]severed the claims related to Debtor's fraudulent conduct in the pretend sale of his mother's homestead from the administration of the Probate Estate, and subsequently continued litigating in the Probate Court. In so doing, Debtor himself demonstrated a subjective belief that all claims concerning his fraudulent conduct were not actually discharged in bankruptcy, which is the reasonable belief of Respondents.

(Mary Katherine Alonso, Rudolph M. Culp, And Sarah Patel Pacheco's Joint Response To Debtor's Show Cause Motion, Dkt. No. 357, p. 5 ¶ 23).

9. First, take the Debtor's original answer – it was filed the same day as the Discharge Order Brief, January 26, 2023. (Exhibit 7). In the Original Answer, the Debtor pleads his discharge as a defense, stating:

7

> **Affirmative Defense**
>
> 6. Scott is not liable as alleged by Plaintiff because Scott has been discharged in bankruptcy. *Exhibit 1.* Rule of Procedure 94 provides that a defendant may plead the discharge in bankruptcy of a plaintiff's claims as an affirmative defense in a civil proceeding. Plaintiff's purported claims against Scott were discharged pursuant to the December 6, 2022 order of discharge entered in Scott's bankruptcy and Scott cannot be held liable for those purported damages. *Exhibit 1.*

(Exhibit 7, p. 3).

It was necessary for the Debtor to file his answer and raise discharge as an affirmative under Tex. R. Civ. P. 94, or he would have waived that defense. Discharge in bankruptcy is an affirmative defense specified in Tex. R. Civ. P. 94 that must be pleaded. Tex. R. Civ. P. 94; *Monk v. Westgate Homeowners' Ass'n, Inc.*, 2009 WL 2998985, at *3 (Tex. App. - Houston [14th Dist.] Aug. 11, 2009, no pet.); *Sparks v. Booth,* 232 S.W.3d 853, 871 (Tex. App. - Dallas 2007, no pet.). "An affirmative defense that is not pleaded or proved and on which finding are not obtained is waived." *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App. – Houston [1st Dist.] 2005, rev. denied), *cert. denied*, 549 U.S. 888 (2006).

10. Second, take the discovery. The Debtor filed his Discharge Order Brief because Alonso was continuing to seek discovery from the Debtor and had filed a motion to compel production of documents. The Probate Court compelled the Debtor to produce the documents. This was the only discovery that the Debtor has participated in – discovery actions brought by Alonso.

11. Third, take the severance motion. Alonso brought the lawsuit against the Debtor in the main probate cause, which was procedurally incorrect. On March 24, 2023, the Debtor, realizing the Probate Court was not going to stop Alonso from proceeding, moved to procedurally sever the litigation claims into a separate cause. (Exhibit 8). This was not an admission that Alonso's conduct pursuing claims against the Debtor was somehow acceptable.

8

12. The Debtor did not continue litigating as much as he continued to be the brunt of the Respondents' litigation actions. On February 9, 2024, the Respondents filed their Second Amended Petition. In May of 2024, the Debtor demanded that the Respondents dismiss their claims against him with prejudice. At no time has the Debtor laid behind the log in asserting his discharge of the Respondents' claims against him, and he has always insisted that the post-discharge injunction bars continuation of those claims.

### NO CLAIMS IN PROBATE REQUIRE DEBTOR AS A PARTY

13. The Respondents cannot continue prosecuting claims against the Debtor just because the Respondents have claims against other non-debtor parties that arise out of the same nucleus of operative facts. The Respondents argue they should be permitted to continue prosecuting their claims against the Debtor "to determine the Debtor's liability solely for the purpose of prosecuting and proving claims against non-debtors." (Mary Katherine Alonso, Rudolph M. Culp, And Sarah Patel Pacheco's Joint Response To Debtor's Show Cause Motion, Dkt. No. 357, p. 7 ¶ 29). The Respondents argue that they need discovery from the Debtor to determine "the scope of his actions in order to determine the scope of liable parties and the liability of those parties." *Id.* Finally, the Respondents contend that certain of their claims against non-debtors are dependent on the Debtor's liability so that if the Debtor is dismissed, the claims against these non-debtors may fail." *Id.* Although a debtor may be compelled to provide documents or provide testimony as a witness, the plaintiff cannot keep a debtor as a party to the case. There is nothing whatsoever about the claims against the non-debtor defendants in the probate case that requires the Debtor to remain a party in the case.

14. The non-debtor defendants in the probate lawsuit are Payton Boomer Investments, LLC ("Payton Boomer") and Patten Title Holdings #1, LLC ("Patten Title"). The Respondents claims

9

against these non-debtor defendants in the Second Amended Petition are: (1) Assisting or Encouraging Breach of Fiduciary Duty against Payton Boomer (Exhibit 9, p. 9 ¶ 38-41) and against Petten Title (Exhibit 9, p. 10 ¶ 42-45), (2) Violations of the Texas Deceptive Trade Practices Act against Payton Boomer (Exhibit 9, p. 11-12 ¶ 46-49), (3) Usury against Payton Boomer, and (4) Declaratory Judgment (Exhibit 9, p. 13-14 ¶ 56-60).

15. The "assisting a breach of fiduciary duty" claim does not require the person who committed the breach of fiduciary duty to be a party. The Houston Court of Appeals recently discussed the elements of such a claim:

> Texas law does recognize a knowing-participation claim. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."); *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (op. on reh'g) (recognizing cause of action "in which a third party knowingly participates in an employee's breach of fiduciary duty during his employment and the third party improperly benefits from it"). The elements of this claim are: (1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty. *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied); *Darocy v. Abildtrup*, 345 S.W.3d 129, 137–38 (Tex. App.—Dallas 2011, no pet.). This is precisely what the Sanchez parties' earlier pleadings alleged: (1) the individual appellants owed fiduciary duties to the Sanchez parties; (2) all appellants knew that the individual appellants owed these fiduciary duties; (3) all appellants knowingly participated in the individual appellants' breaches of fiduciary duties; and (4) the breaches caused damage. *See Straehla*, 619 S.W.3d at 804.
>
> *Reynolds v. Sanchez Oil & Gas Corp.*, 2023 WL 8262764, at *10 (Tex. App. – [14th Dist.] Nov. 30, 2023, no pet.) (opinion after remand from 635 S.W.3d 636 (Tex. 2021).

Given these elements of the cause of action, there is no need to have the Debtor as a party in the case. The Respondents can present evidence to prove that the Debtor owed a fiduciary duty to the

10

Respondents, present evidence that Payton Boomer and Patten Title knew of the fiduciary relationship, and present evidence that Payton Boomer and Patten Title were aware of their participation in the Debtor's breach of his fiduciary duty. These elements do not require the Respondents to have a cause of action against the Debtor for the breach of the fiduciary duty.

16. The Deceptive Trade Practice Act claim against Payton Boomer certainly does not require the Debtor as a party. On the face of the Respondents' petition, this claim is based on Tex. Prop. Code, § 41.006(b), which makes "the taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale." Tex. Prop. Code, § 41.006(b). Payton Boomer was the party who took the deed and is the only party against whom the claim could be brought. In addition, the Respondents specifically plead in this cause of action "Accordingly, Payton Boomer committed false, misleading, and deceptive acts or practices, which were the producing cause of damage to Mrs. Van Dyke and her Estate." (Exhibit 9, p. 11-12 ¶ 48). There is no mention of the Debtor or any conduct of the Debtor in this cause of action.

17. The usury cause of action against Payton Boomer is based on the charges that Payton Boomer charged Mrs. Van Dyke under the contract and the allegation that those charges constitute usurious interest under the Texas Finance Code. This cause of action has nothing to do with the Debtor.

18. The last cause of action is the declaratory judgment cause of action. That action does not require the Debtor. In that cause of action, the Respondents are asking the probate court to declare that the loan by Payton Boomer to Mrs. Van Dyke could not attach to the homestead property under Tex. Prop. Code, § 41.006(b) and Tex. Const. Art. XVI, § 50. The Debtor does not

need to be a party for the probate court to declare the rights of Mrs. Van Dyke's estate under the loan documents with Payton Boomer.

### RESPONDENTS' ACTIONS WERE INTENTIONAL

19. The upshot of the Respondents' arguments throughout their response is that they "acted on a good faith belief that the Discharge Order did not alter the Stay Order, which was entered and final long before the Discharge Order." (Mary Katherine Alonso, Rudolph M. Culp, And Sarah Patel Pacheco's Joint Response To Debtor's Show Cause Motion, Dkt. No. 357, p. 7 ¶ 30). There can be no good faith where Alonso knew about the Debtor's discharge and post-discharge injunction and litigated with the Debtor over the issues just over a month after the discharge order was entered, then continued prosecuting their causes of action against the Debtor for a year and a half.

20. Respondent Rudy Culp cannot claim his conduct was unintentional either. As a dependent administrator and an attorney, he had a duty to investigate the file in the probate litigation and the facts and law before filing claims on behalf of the estate. Any cursory review of the docket shows the Discharge Order Brief and related pleadings. Any investigation would involve discussing the background, procedural history, and facts with Respondent Mary Katherine Alonso, which would have uncovered the existence of the discharge order and the bar to prosecuting the claims against the Debtor.

21. The Respondents' conduct was intentional and in violation of the post-discharge injunction. This Court should hold a show cause hearing and after presentation of evidence, award sanctions against the Respondents for their contempt of that injunction.

Respectfully submitted,

**THE PROBUS LAW FIRM**

By:/s/ *Matthew B. Probus*
    **Matthew B. Probus**
    State Bar No. 16341200
    Fed. I.D. No. 10915

10497 Town & Country Way, Suite 930
Houston, Texas  77024
(713) 258-2700 – Telephone
(713) 258-2701 – Telecopy
matthewprobus@theprobuslawfirm.com

*ATTORNEYS FOR DEBTOR,
SCOTT VINCENT VAN DYKE*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 24, 2024, a true and correct copy of the foregoing was served electronically on all parties registered to receive notices through the PACER CM/ECF system, and on the following respondents via United States regular mail, first class, postage prepaid and via email as follows:

Mary Katherine Alonso
c/o Sarah Pacheco
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
via email at spacheco@jw.com

Mary Katherine Alonso
2305 Barton Creek Blvd.#48
Austin, Texas 78735

- and -

Mary Katherine Alonso
P.O. Box 93069
Austin, Texas, 78709

- and -

13

Mary Katherine Alonso
4407 Bee Caves Road, Suite 121
Austin, Texas, 78746
Via email at mkalonso@reversegravity.com

Sarah Pacheco
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
via email at spacheco@jw.com

Rudolph M. Culp
Horrigan, Goehrs, Edwards & Culp, L.L.P.
1401 Truxillo Street
Houston, Texas 77004
via email at rudy@hgprobate.com

By: /s/ *Matthew B. Probus*
Matthew B. Probus